# Exhibit "A"

REGISTERED AGENT SERVICES AGREEMENT

BETWEEN

FFP (BVI) LIMIITED

AND

PEAK HOTELS AND RESORTS GROUP, LIMITED



**THIS REGISTERED AGENT SERVICES AGREEMENT** is made the   day of July 2017.

**BETWEEN**

**FFP (BVI) LIMITED,** a company incorporated in the British Virgin Islands and having its registered office at
Craigmuir Chambers, PO Box 71, Road Town, Tortola, VG 1110, British Virgin Islands (**"FFP");**

**AND:**

**PEAK HOTELS AND RESORT GROUP, LIMITED.,** a company currently having its registered office at Nemours Chambers, Qwomar Complex 4/F, P.O. Box 3170, Road Town, Tortola VG1110, British Virgin Islands (the **"Company").**

**WHEREAS**

A. the Company has requested that FFP provide the Company's Registered Agent and Registered Office and perform certain administrative and other corporate services in the British Virgin Islands; and

B. that FFP has agreed to do so subject to the terms and conditions of this Agreement.

**IT IS AGREED** as follows:

1.    **DEFINITIONS AND INTERPRETATION**

1.1   In this Agreement, unless the context otherwise requires:-

**Accounting Period** means the period of 12 months ending on 31 December in each year;

**Agreement** means this agreement and the Schedule;

**Articles** means the Memorandum and Articles of Association of the Company, as amended from time to time;

**Commencement Date** means the date of this Agreement;

**Directors** means directors, from time to time, of the Company and **Director** means any one of them;

**Law** means the International Business Companies Act of the British Virgin Islands, as amended from time to time**;**

**Members** means members, from time to time, of the Company and **Member** means any one of them.

**Officers** means officers, from time to time, of the Company and **Officer** means any one of them;

**Registrar** means the registrar of companies in and for the British Virgin Islands;

**Schedule(s)** means the schedule(s) to this Agreement;



**Services** means the services set out in part 1 of the Schedule; and

**Shares** means shares in the capital of the Company and **Share** means any one of them.

1.2 Reference to any statute or statutory provision shall include a reference to any statute or statutory provision which amends, extends, consolidates or replaces the same (save to the extent that any amendment, extension, consolidation or replacement would impose more onerous obligations than otherwise exist at the date of this Agreement) or which has been amended, extended, consolidated or replaced by the same and shall include any orders, regulations, instruments or other subordinate legislation made under the relevant statute or statutory provision.

1.3 The singular includes the plural and vice versa and any gender includes all genders.

1.4 Save as otherwise provided herein or as the context may otherwise require, expressions in this Agreement which are defined in the Law or the Articles shall have the meanings given to them therein.

1.5 The clause headings are inserted for convenience only and shall not affect the construction of this Agreement.

## 2.   APPOINTMENT OF FFP

With effect from the Commencement Date, the Company appoints FFP to provide the Services and such other services **("Additional Services")** as the parties agree from time to time to the Company and FFP undertakes to do so in accordance with the terms of this Agreement.

## 3.   DUTIES OF THE COMPANY

3.1 The Company shall promptly deliver to FFP, to allow FFP to comply with its obligations pursuant to this Agreement, all documents, notices and information (in original form or duplicates of the validly executed originals) including, without limitation, notices and minutes of meetings of the Directors or Members, resolutions (including written resolutions) passed by the Directors or Members, notices of appointment as, or letters of resignation from, any Director or Officer, notice of any changes in the particulars relating to any Director or Officer, offering documents relating to all or part of the Shares, charges or mortgages affecting any property of the Company, instruments of transfer, cancelled share certificates, powers of attorney and financial statements (if any).

3.2 The Company shall promptly deliver to FFP, from time to time as FFP may request, such documents (including, without limitation, notarised copies of original documents, notarised affidavits and letters of reference) as FFP may regard as necessary, in its absolute discretion, to:-

   3.2.1   establish the identity of each Member or beneficial owner of 10% or more of the Shares, each person having or exercising control or significant influence over the assets of the Company, the Directors and any other person authorised by the Company to provide instructions to FFP in relation to the Company and its assets;

   3.2.2   establish the source of funds received or receivable by the Company and the nature of the Company's business; and

3.2.3    verify that any funds received or receivable by the Company do not represent the proceeds of criminal conduct and that the Company's business activities are lawful.

3.3    FFP may refuse to perform its obligations under the Agreement, if, in its reasonable judgment, it would be improper or unlawful to do so.

3.4    The Company shall, no later than December 31st in each year, pay to FFP an amount equal to the annual fees payable to the Registrar in respect of the Company for the following calendar year and FFP shall not be responsible for any late payment penalties which the Company may incur as a result of any failure by the Company to render payment pursuant to this clause to FFP on a timely basis.

3.5    Without prejudice to any other provision of this Agreement, the Company shall:-

3.5.1    promptly deliver to FFP copies of all amendments made to the Articles;

3.5.2    procure that, in the event of it being registered as an exempted company, its business shall be carried on mainly outside the British Virgin Islands and that it shall not trade with any person, firm or corporation within the British Virgin Islands except in furtherance of its business outside the British Virgin Islands;

3.5.3    not issue bearer Shares; and

3.5.4    be deemed, in the absence of written instructions to FFP delivered prior to January 1st in each year, to authorize and instruct FFP to execute and deliver to the Registrar, on the Company's behalf, any annual return to be made by the Company pursuant to the Law and unless otherwise advised by the Company in accordance with this clause; and

3.5.5    FFP shall be entitled to assume that the Company has complied with its obligations pursuant to this Agreement without further enquiry and the Company shall indemnify FFP, on demand, against any loss or liability arising from any such assumption or the actions of FFP in reliance of it.

3.6    The Company acknowledges that FFP may, at its absolute discretion, decline to execute and/or deliver any annual return required to be made by the Company pursuant to the Law without incurring any penalty for doing so provided that the FFP shall serve written notice on the Company to that effect not less than 7 days prior to the last date on which the annual return in question can be filed on a timely basis.

**4.    REMUNERATION OF FFP**

FFP shall be remunerated in accordance with part 2 of the Schedule.



5.  **UNDERTAKINGS AND CONFIDENTIALITY**

5.1  Each party undertakes to the other to use its reasonable endeavours to procure that no breach of any law or regulation of the British Virgin Islands occurs in connection with the operation of the Company's business.

5.2  The Company undertakes to FFP that it shall use its reasonable endeavours to procure that its business is not carried on in breach of any applicable laws of any other jurisdiction and that it shall keep FFP informed on a timely basis of all material developments in its business and other activities.

5.3  FFP shall keep confidential all documents, materials and other information relating to the business, financial position or state of affairs of the Company and it shall not, without the prior written consent of the Company, disclose any of the aforesaid unless:-

    5.3.1  the disclosure is in respect of any information already known to the recipient;

    5.3.2  the information concerned is or becomes a matter of public knowledge otherwise than as a result of a breach by FFP of its obligations pursuant to this clause 5.3;

    5.3.3  FFP shall determine, in good faith, that such disclosure is required by any law, order of court or pursuant to any direction or demand made by a government or regulatory body, compliance with which is within the general practice of persons to whom it is addressed; and

    5.3.4  such disclosure is made to other professional advisers who receive the information subject to a duty of confidentiality.

6.  **TERMINATION**

6.1  This Agreement shall be terminated by either party giving to the other not less than one month's written notice to that effect provided always that such termination shall be without prejudice to:-

    6.1.1  the due performance by the terminating party of all of its obligations:-

        (a)  up to the date of such termination (whether those obligations are then actual or contingent); and
        (b)  without prejudice to paragraph (a) above, pursuant to clause 5;

    6.1.2  the remedies of the other party in respect of any breach thereof; and

    6.1.3  the terms of clause 7 which, together with all rights and remedies thereunder, shall survive the termination of this Agreement, howsoever arising, in perpetuity.

6.2  Upon termination of this Agreement:-

    6.2.1  FFP shall promptly deliver up to the Company all documents, papers, records and registers belonging to the Company in its possession;



6.2.2    the Company shall reimburse to FFP any fees, charges, taxes, duties, imposts and expenses of the type set out in part 2 of the Schedule not previously reimbursed; and

6.2.3    the Company shall not wrongfully represent itself as continuing to receive the Services from, or being connected with, FFP.

6.2.4    The Company shall, on the termination of the appointment of FFP under the Agreement, if still in existence, procure the passage of a board resolution to transfer the registered office and agent of the Company to an alternative service provider and FFP shall be entitled to serve notice on the Registrar stating that it is no longer providing the registered office and registered agent services to the Company.

## 7.    INDEMNIFICATION

7.1  FFP shall be entitled to assume that the approval and authorisation of the Company of any act, deed, document, matter or thing has been given if FFP shall have been notified, whether in writing, verbally, by telephone, facsimile, E-mail, telex or cable, by any Director, Officer or authorised signatory of the Company or by any legal adviser, manager or administrator appointed by the Company and FFP shall not be obliged to make further enquiry thereafter of the Company and shall be under no liability or obligation whatsoever to the Company for so assuming and relying, whether or not such approval or authorisation has, in fact, been given.

7.2  The Company shall indemnify FFP, its affiliates and their respective directors, officers, employees and agents, on demand, in respect of all liabilities, actions, proceedings, claims, demands, costs and expenses whatsoever which it or any of them may incur or be subject to as a consequence of providing the Services to the Company except to the extent that the same are incurred as a result of the wilful default, dishonesty, fraud or gross negligence of FFP, its affiliates, their respective directors, officers, employees or agents. This indemnity shall survive termination of the Agreement. No person shall be found to have committed actual fraud or wilful default under the Agreement unless or until a court of competent jurisdiction shall have made a finding to that effect.

7.3  Without prejudice to clause 7.2, FFP shall not be liable for any liabilities, actions, proceedings, claims, demands, costs and expenses incurred by the Company as a result of any failure by the Company to give any instructions, authorisations, approvals, information and/or documents to FFP on a timely basis to allow FFP to fulfil its obligations pursuant to this Agreement.

7.4  The benefit of the indemnity and waiver set out in clauses 7.2 and 7.3 respectively shall expressly inure to the benefit of any director, officer, or employee or agent of FFP existing or future and to the benefit of any successor of FFP hereunder.

## 8.    NON-EXCLUSIVE AGREEMENT

8.1  FFP shall not, by virtue of this Agreement, be prevented or restricted from providing the Services to or carrying on any other business with any other person.

8.2  Nothing in this Agreement shall be deemed to constitute a partnership between the parties nor constitute any party the agent of the other party for any purpose other than as expressly provided for and neither FFP nor any person affiliated with it shall, by virtue of this Agreement, be liable to



account to the Company for any profit which may accrue to it or them from, or by virtue of, any transaction entered into between the Company and FFP or its affiliates.

## 9.  ASSIGNMENT

9.1  This Agreement shall not be capable of being assigned by either party without the prior written consent of the other party, provided that FFP shall be entitled, without consent of or notice to the Company, to assign the benefit of this Agreement subject always to the burden thereof, or to sub-contract the provision of any of the Services, in either case, to any other person with which it is affiliated.

## 10.  NOTICES

Any notices permitted or required pursuant to this Agreement shall be deemed validly served if served by hand, e-mail, facsimile or pre-paid airmail (in the case of hand delivery, e-mail and facsimile, at 10.00am local time at the place of receipt on the business day following the date of transmission or delivery and in the case of mail, fourteen days after the date of posting) as follows:

10.1 in the case of the Company, to:

the address specified beneath its name on the execution page of this Agreement or by facsimile or by email to, respectively, the facsimile number or email address there appearing;

10.2 in the case of the FFP, to:

FFP (BVI) Limited
2nd Floor, TICO Building
Wickhams Cay II, Road Town
Tortola VG1110
British Virgin Islands
Telephone: +1 284-494-2714
Fax: +1 284-494-2715
E-mail: Stephen.briscoe@ffp.vg

10.3 and to such other address or for the attention of such other person as may from time to time be notified by one party to the other party by notice given in accordance with the provisions of this Agreement.

## 11.  GENERAL

11.1 Time is of the essence as regards any date or period mentioned in this Agreement, save to the extent that any such date or period is varied by agreement between the parties when time shall be of the essence as regards any date or period as so varied.

11.2 FFP is authorised to maintain the statutory registers of the Company and any other records relating to the Company or its affairs on computer and to produce at any time during the course of legal proceedings, copies or reproductions of these documents made by photographic, photostatic or data processing procedures as juridical proof of the contents thereof.



11.3 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same instrument. An executed counterpart of this Agreement delivered by facsimile shall be as effective as a manually executed and delivered counterpart of this Agreement.

11.4 If any clause or provision of this Agreement is found to be invalid or unenforceable for any reason whatsoever, such invalidity or unenforceability shall not, of itself, affect the remaining clauses or provisions.

11.5 This Agreement constitutes the entire agreement between the parties in respect of the subject matter hereof and supersedes any prior agreement, arrangement or understanding between the parties in respect thereof.

## 12.  GOVERNING LAW

12.1 This Agreement shall be governed by and construed in accordance with the laws of the British Virgin Islands and the courts of the British Virgin Islands shall have exclusive jurisdiction to resolve any disputes relating to the terms of this Agreement.

13. Bankruptcy Court approval. This agreement is subject to the approval of the U.S. Bankruptcy Court for the Southern District of Florida.



**IN WITNESS WHEREOF** the parties have executed this Agreement as a deed the day and year first before written.

**SIGNED** for and on behalf of
**PEAK HOTELS AND RESORTS GROUP, LIMITED.**

By

Name: Jacqueline Calderin, solely in her capacity as
Title: Chapter 7 Trustee
Address: 501 Brickell Key Dr) Suite 300, Miami, FL 33131
Email: JC@ecclegal.com
Tel: 305-722-2002
Fax:

In the presence of:

Witness Name *(please print in Block Capitals)* Esbelia Jimenez

---

**SIGNED** for and on behalf of
**FFP (BVI) Limited**

By

---

In the presence of:

---

Witness Name *(please print in Block Capitals)*

---

**SCHEDULE**

**Part 1**

**The Services**

FFP shall provide the following services to the Company:

**1.   Registered Office**

The maintenance of the registered office of the Company at the offices of FFP including the display, at all times, of the name of the Company in satisfaction of the Company's obligations under the law.

**2.   Company Secretary**

The services of Company Secretary, where engaged.

**3.   Statutory Records and Registers**

The maintenance, at FFP's offices, of:-

3.1   the minute books of the Company containing the certificate of incorporation, a copy of the Articles, the undertaking as to tax issued by the Governor in Council (if any), the statutory registers maintained pursuant to paragraphs 3.2 to 3.4 below, copies of all annual returns and other filings made with the Registrar and all other documentation received at the registered office, from time to time, which would ordinarily be contained in the minute books including, without limitation, copies of all notices, minutes and resolutions of meetings of the Directors and/or Members, all letters of resignation from Directors or Officers, instruments of transfer, cancelled share certificates, powers of attorney and financial statements (if any);

3.2   the registers of Directors and Officers containing the name, address, date of appointment and date of resignation of each Director and Officer, respectively;

3.3   the register of Members containing the name and address of each Member, the number of Shares held, the amount paid in respect of each Share, any number allocated to each Share, the date of registration of the issue or transfer of each Share and the name of any applicable transferee; and

3.4   the register of mortgages and charges containing details of each mortgage and charge specifically affecting property of the Company including, without limitation, a short description of the property affected, the amount of the charge created and the name of the mortgagee or person entitled to such mortgage or charge.

3.5   Financial Records required to be kept pursuant to section 98 of the BCA (Financial Records) at the registered office address.

3.6   Such information as is necessary to be kept regarding the beneficial ownership of the Company, such details to be specified in legislation yet to be enacted in the British Virgin Islands.

## 4. Returns to the Registrar

Subject to receipt by FFP of all relevant documents, information and instructions, the submission to the Registrar of:-

4.1 all filings and returns required by the Law including, without limitation, such filings with respect to any amendment to the Articles (including any change to the Company's name, its authorised share capital or the location of its registered office), the appointment to or resignation/removal from office of any Director and/or Officer, any change in the particulars relating to any Director and/or Officer and the passing by the Members of any special resolution;

4.2 an annual return, in accordance with the Law, duly executed by or on behalf of the Company; and

4.3 such filing and/or registration fees as may be prescribed pursuant to the Law, from time to time, as applicable to the Company in respect of any filings or returns made or to be made including, without limitation, any annual registration fee payable to maintain the Company in good standing in the register of companies of the British Virgin Islands, provided that, without prejudice to any other term of this Agreement, FFP shall not be required to make any such payment out of its own funds and shall be entitled to require that sufficient funds be delivered to it by, or on behalf of, the Company to allow each such payment to be made.

## 5. Payments on Account

Any monies received by FFP on behalf of the Company may, at the sole discretion of FFP, be used firstly to settle outstanding fees payable to FFP or any affiliate of FFP prior to such amounts being used to settle fees with the Registrar.

## 6. Information

The provision, as soon as may reasonably be procured by FFP, from time to time, to the Company, its Directors, Officers and Members (as the case may be) of information in connection with all substantive matters necessary to maintain the Company in good standing pursuant to the Law.

## 7. Communications

FFP shall use all reasonable endeavours to forward to the Company all correspondence and other communications addressed to the Company by such method as it considers appropriate. FFP shall not be liable to the Company for the late receipt by the Company of any such correspondence and other communications which FFP receives on behalf of the Company from third parties and of details of all correspondence or other communications received at the registered office of the Company relating to the affairs of the Company.

## 8. Other Services

FFP shall provide the Additional Services (as defined in clause 2 of this Agreement) at the cost shown in part 2 of the Schedule.

**Part 2**

**FFP's Remuneration**

1. In consideration for the provision by FFP to the Company of the Services, the Company shall pay to FFP the following fees:-

   The Services                                                    US$5,000 per year (or part
   year)

2. The first payment of the annual fee pursuant to paragraph 1 above shall be due and payable on the Commencement Date and shall be equal to the annual fee for the period from the Commencement Date to the end of the Accounting Period then in effect and each subsequent payment shall, subject as hereinafter provided, be due and payable in advance on 1 January of each year. The annual fee will include up to four hours of time charged in connection with the statutory duties of FFP in relation to the Services provided to the Company under this Agreement.

3. In the event that FFP is requested to provide Services for an existing British Virgin Islands registered entity, the following fees will be applied:-

   3.1 subject to the entity's circumstances fees will also be charged on a time spent basis at the hourly rate of US$500 per hour in addition to the administration fee charged above and are to be charged at FFP's discretion; and

4. In the event of FFP receiving instructions to provide Additional Services (as defined in clause 2 of this Agreement) to the Company, the Company agrees to pay to FFP such additional fees which shall be charged on a time spent basis at the hourly rate of US$500 per hour. Any additional fees calculated pursuant to this clause shall be payable by the Company in arrears at the end of the month in which they were incurred.

5. In the event of the termination of this Agreement, the annual fee paid or payable in respect of the Accounting Period in which termination occurs shall be pro-rated and FFP shall refund any sum due by it to the Company as soon as reasonably practicable after the date of termination. In addition, FFP in its sole discretion may charge the following fees where termination is not at the request of FFP:

   5.1 a service fee of US$1,000 in respect of dealing with the transfer of the registered office of the Company;

6. Unless otherwise agreed in writing between the Company and FFP, within 30 days of each anniversary of this Agreement the parties shall negotiate in good faith with a view to determining whether, and if so, by how much, the fees thereafter payable to FFP pursuant to this Agreement should be decreased or increased.

7. The Company shall reimburse FFP, on demand, in respect of all expenses and imposts whatsoever (including, without limitation, registration and filing fees, charges, taxes, duties and telephone, facsimile, E-mail, telex, postage, photocopying and stationery expenses) properly incurred by  FFP on behalf of the Company or otherwise in the performance of its obligations

under this Agreement and FFP shall be entitled to make provision in each invoice issued to the Company, from time to time, for such expenses and imposts.

8. In the event of the Company breaching its obligations pursuant to clause 3.3 of the Agreement, an additional fee of US$500 shall become immediately due and payable by the Company to FFP for processing and submitting to the Registrar the late payment of the annual registration fees provided always that the terms of this paragraph are without prejudice to clause 3.3.

9. FFP reserves the right to charge interest on a daily basis on any sums 30 days past due and payable by the Company at a rate not exceeding the rate charged from time to time by Fidelity Bank (Cayman) Limited or such other bank in the Cayman Islands as FFP may from time to time notify in writing to the Company on unauthorised overdrafts.

10. Notwithstanding any other provision of this Agreement, the obligations of the Company pursuant to clause 4 and the terms of this part 2 of the Schedule may be discharged or satisfied by any third party.

The fees set forth above shall be subject to an annual review and are revised annually on 15th January each year to reflect price index increases and market rate changes. FFP shall give the Company not less than 3 months' notice of its intention to increase fees.

# Exhibit "B"



## Invoice

Peak Hotels and Resorts Group, Limited
Nemours Chambers
Qwomar Complex 4/F
PO Box 3170
Road Town
Tortola VG1110
British Virigin Islands

**Invoice Date:**  20 July 2017
**Invoice #:  BVI-S215**

**Matter**

Acting as Registered Agent as per Engagement Letter dated 20 July 2017          5,000.00

**Sub total:**                                                        **US $    5,000.00**

**Disbursements:**

| | |
|---|---:|
| Printing, phone, telecom costs | 150.00 |
| 2016 License Fee | 350.00 |
| 50% Penalty | 175.00 |
| 2017 License Fee | 350.00 |
| 10% Penalty | 35.00 |
| Restoration | 775.00 |
| Appointment of Registered Agent | 100.00 |
| Incoming Wire Transfer Fee | 15.00 |

**Sub total:**                                                                1,950.00

**Total Amount Due:**                                              **US $    6,950.00**

---

**Contact:**
If you have any queries or would like to discuss your
account please contact:

Stephen Briscoe
FFP (BVI) Limited
2nd Floor TICO Building
Wickhams Cay II
Road Town, Tortola
British Virgin Islands, VG 1110

T: +1 284 494 2714
E: stephen.briscoe@ffp.vg

**Bank Details:**
Correspondent Bank:  Bank of New York, Mellon
Address:  225 Liberty Street, New York, NY 10286
SWIFT/BIC CODE: IRVTUS3N
ABA Routing #: 021000018
Account Number: 8901319104

Beneficiary Bank:  VP Bank (BVI) Ltd
Bank Address: 156 Main Street, Road Town, Tortola, BVI
SWIFT BIC CODE:   VPBVVGV1

Beneficiary Account name: FFP (BVI) Limited
Beneficiary Account: 15.203.597

**Invoice due upon presentation**

# Exhibit "C"



1 August 2017

EHRENSTEIN CHARBONNEAU CALDERIN
Attorneys at Law
501 Brickell Key Drive
Suite 300
Miami,
Florida 33131


Dear Sirs,

**Madison Director Services Limited**

We, Kalo, are a leading restructuring and insolvency practice in the Caribbean
with offices in the British Virgin Islands ("BVI") and Grand Cayman.  From these
locations, we cover the whole of the Caribbean, although the majority of our work
involves companies incorporated in these two jurisdictions.

BVI is a developed jurisdiction which regulates its restructuring and insolvency
practitioners and has a bespoke Insolvency Act 2003 (legislation) and Insolvency
Rules 2004 which support the primary legislation.  Our licensed insolvency
practitioners are Stuart Mackellar and Paul Pretlove who have a combined
experience in excess of 50 years and are regulated by the BVI Financial Services
Commission.  Bios are attached.  Both Stuart and Paul are also licensed insolvency
practitioners in the United Kingdom.  Our case load comprises liquidations
(bankruptcies in the USA), receiverships, examinerships, and other forms of
restructuring appointments permitted under our legislation.

Madison Director Services Limited ("Madison") is a wholly owned BVI subsidiary
of Kalo which is used to provide director services in connection with restructuring
and insolvency work with which Kalo's practitioners are involved.  Its directors are
Stuart Mackellar and Paul Pretlove.  BVI allows the appointment of companies as
directors of BVI incorporated companies like many other jurisdictions.  Madison's
Professional Liability Insurance and that of Kalo significantly exceeds the US$5m
minimum required in the BVI jurisdiction and is commensurate with the work
which we carry out.  The cover is provided by a syndicate of insurers headed by

PO Box 4571
Palm Grove House
Road Town, Tortola
British Virgin Islands
VG1110
1 284 393 9600



AXIS Specialty Insurance, a well known insurer rated A+ by Standard & Poor and all our insurers meet our regulator's strict criteria.

Madison has been providing directorship services for some 12 years and its directors have substantial experience in the commercial, restructuring and insolvency areas.  Madison has been appointed as a director in excess of 150 occasions and it is currently appointed in 39 cases.  Madison is a director of companies operating in BVI, Brazil, USA, China, Hong Kong, Ukraine and Russia. Madison has been appointed at the behest of liquidators/bankruptcy trustees, financial institutions and family offices.

If you require any further information about Madison, please contact Stuart Mackellar on +1 284 346 4220 or email smackellar@kaloadvisors.com.

Yours faithfully

Stuart Mackellar
Managing Director





## STUART MACKELLAR
## MANAGING DIRECTOR

Stuart applies three decades of experience to realise value for entity stakeholders through recognized restructuring and insolvency processes, often overseeing complex and contentious cross-border cases. He manages organizations through difficult times by guiding financially stressed entities through reviews, restructurings, and formal insolvencies. An insolvency practitioner with experience on five continents and licensed in both the British Virgin Islands and the United Kingdom, Stuart has a Master of Arts in economics and accountancy from the University of Dundee and is a member of the Institute of Chartered Accountants of Scotland.

### RECENT MAJOR ENGAGEMENTS

» Serves as joint liquidator of the Kingate funds, two Madoff feeder funds that have sustained total losses in excess of $3.5 billion; currently involved in litigation, pursuing recoveries for stakeholders.

» Serves as joint liquidator of the Bank of Antigua, leading multiple cross-border asset recovery strategies.

» Serves as liquidator of many British Virgin Islands companies with interests in Hong Kong, China, and Singapore; currently seeking to recover millions of dollars for stakeholders.

» Serves as liquidator of British Virgin Islands companies with significant interests in Russia and the Commonwealth of Independent States; currently pursuing claims against individuals for misfeasance and recovering misappropriated assets for stakeholders.

» Successfully restructured a five-star resort in Anguilla as joint liquidator of Leeward Isles Resorts Limited; currently managing other hospitality and leisure assets across the Caribbean.

### STUART'S EXPERTISE INCLUDES: Business reviews, wind-down projects, contingency planning, cross-border restructuring, domestic and international insolvency appointments





## PAUL PRETLOVE
## MANAGING DIRECTOR

Paul applies his offshore asset-tracing and fraud investigation experience to assist stakeholders in achieving financial recovery through formal insolvency appointments and complex cross-border litigation. During more than 15 years in the insolvency profession in the British Virgin Islands, the Cayman Islands, and the United Kingdom, he has overseen the tracing and recovery of assets from the United States, Hong Kong, mainland China, Singapore, Panama, Russia, and Switzerland. Paul is a fellow of the Association of Chartered Certified Accountants and a licensed insolvency practitioner in both the British Virgin Islands and the United Kingdom.

### RECENT MAJOR ENGAGEMENTS

» Served as joint liquidator of two British Virgin Islands registered Madoff feeder funds, pursuing extensive and complex cross-border litigation on behalf of investors that suffered multibillion-dollar losses.

» Advised US court-appointed receivers of listed entities in securing and recovering assets held through companies in the British Virgin Islands, Hong Kong, and mainland China, effecting control through various directorship appointments.

» Served as liquidator of a British Virgin Islands company with significant interests in Russia; pursued funds misapplied through Swiss accounts as part of misfeasance claim.

» Led investigations into a transfer of proceeds of crime to Mauritius; bankruptcy of the convicted fraudster resulted in a multimillion-pound recovery for the bank.

» Liquidated the treasury function of a multinational milk and dairy producer with losses of more than $10 billion.

» Liquidated corporate offshore vehicle for hedge fund requiring litigation against fund manager; scheme of arrangement applied to alter the permissible method of distribution due to a disputed net asset value.

**PAUL'S EXPERTISE INCLUDES: Cross-border asset tracing and recovery, regulatory enforcement, commercial and shareholder disputes, contentious director and trustee appointments, solvent liquidations**