# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

*In re:*                                             Case No.: 17-15041-AJC

PEAK HOTELS AND RESORTS GROUP, LTD,        Chapter 7

_____Debtor._____/

## NOTICE OF FILING

Jacqueline Calderin, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Peak Hotels and Resorts Group, LTD (the "Debtor"), by and through undersigned counsel, gives notice that the attached documents have been filed in the Southern District of New York dismissed case of *In re: Aman Resorts Group Limited* – Case No.: 16-10517-SCC:

1. *Response of Aman Resorts Group Limited and Jacqueline Calderin, Chapter 7 Trustee for the Estate of Peak Hotel Resorts Group Limited, in Opposition to the Motion to Transfer Venue* [Dkt # 104];

2. *Declaration of Robert P. Charbonneau in Support of Response of Aman Resorts Group Limited and Jacqueline Calderin, Chapter 7 Trustee for the Estate of Peak Hotel Resorts Group Limited, in Opposition to the Motion to Transfer Venue* [Dkt # 105];

3. *Declaration of Jacqueline Calderin in Support of Response of Aman Resorts Group Limited and Jacqueline Calderin, Chapter 7 Trustee for the Estate of Peak Hotel Resorts Group Limited, in Opposition to the Motion to Transfer Venue* [Dkt # 106];

4. *Declaration of Michael Fay in Support of Response of Aman Resorts Group Limited and Jacqueline Calderin, Chapter 7 Trustee for the Estate of Peak Hotel Resorts Group Limited, in Opposition to the Motion to Transfer Venue* [Dkt # 107]; and

5. *Affidavit of Russell B. Adler* [Dkt # 108].

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing served via Notice of

Electronic Filing CM/ECF to those parties registered to receive electronic notices of filing in this

case on August 30, 2017.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and am qualified to practice in this Court as set forth in Local Rule 2090-1(A).*

EHRENSTEIN CHARBONNEAU CALDERIN
*Counsel for Chapter 7 Trustee*
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002      F. 305.722.2001
www.ecclegal.com

By: _____

Jacqueline Calderin
Florida Bar No: 134414
jc@ecclegal.com

**Hearing Date and Time: September 6, 2017 at 4:00 p.m. E.D.T.**

Robert P. Charbonneau (*pro hac vice*)
Jacqueline Calderin (*pro hac vice pending*)
EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002

*Proposed Counsel for Aman Resorts Group Limited*
*and Counsel for Jacqueline Calderin, Chapter 7*
*Trustee for Peak Hotel Resorts Group Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | Chapter 11 |
| AMAN RESORTS GROUP LIMITED, | Case No. 16-10517 (SCC) |
| Former Debtor. | |

**RESPONSE OF AMAN RESORTS GROUP LIMITED AND**
**JACQUELINE CALDERIN, CHAPTER 7 TRUSTEE FOR THE ESTATE**
**OF PEAK HOTEL RESORTS GROUP LIMITED, IN OPPOSITION**
**TO THE MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND AND DISCRETE ISSUES OF LAW ........................... 6

    A.   The Dismissed Proceeding ........................................................ 6

    B.   The Pending Cases ..................................................................... 8

          i.    The PHRGL Case ..................................................... 8

          ii.   The Pending ARGL Case........................................... 11

    C.   Prior New York State Court Litigation ..................................... 12

    D.   The Fraudulent Transfer of ARGL's Assets to Doronin's Affiliates ........................ 13

    E.   The Motion to Transfer Venue ................................................. 15

RESPONSE.................................................................................................... 15

I.    The Motion to Transfer Venue Is Not Properly Before this Court ................................. 16

    A.   The Court Lacks Authority to Determine the Proper Venue of the Pending Cases Under Bankruptcy Rule 1014(b) Because No Petition with Respect to ARGL or Its Affiliates Is Pending in this District............................. 16

          i.    Bankruptcy Rule 1014(b) Requires that a First-Filed "Petition" Involving the Debtor or Its Affiliates Be "Pending" in this District......... 17

          ii.   No "Petition" Involving the Debtor or Its Affiliates Is "Pending" Before the Court Because All Involuntary Petitions Regarding the Former Debtor Were Dismissed Over A Year Ago............................... 18

          iii.  The Florida Bankruptcy Court Is the Proper Court to Determine Any Transfer of Venue of the Pending Cases.................................... 23

    B.   The Court Lacks Jurisdiction to Transfer Venue of the Pending Cases ............... 24

II.   Even if the Court Has Authority to Decide the Motion to Transfer Venue, the Florida Bankruptcy Court is the Proper Venue for the Pending Cases...................... 27

    A.   Maintaining the Pending Cases in the Florida Bankruptcy Court Is in the Interest of Justice ............................................................. 29

    B.   Maintaining the Pending Cases in the Florida Bankruptcy Court Is Far More Convenient for the Parties ............................................. 33

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aheong v. Mellon Mortg. Co. (In re Aheong),*
   276 B.R. 233 (B.A.P. 9th Cir. 2002)......................................................................... 24

*Canute S.S. Co. v. Pittsburgh & W. Va. Coal Co.,*
   263 U.S. 244 (1923)........................................................................................................ 19

*Commodity Futures Trading Comm'n v. Weintraub*
   471 U.S. 343 (1985)........................................................................................................ 9

*Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.),*
   596 F.2d 1239 (5th Cir.1979) ..................................................................................... 28

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*
   896 F.2d 1384 (2d Cir. 1990)........................................................................... 28, 29, 30

*Iannini v. Winnecour,*
   487 B.R. 434 (W.D. Pa. 2012) .................................................................................... 22

*In re Consol. Equity Prop., Inc.,*
   136 B.R. 261 (D. Nev. 1991) ....................................................................................... 18

*In re Dunmore Homes, Inc.,*
   380 B.R. 663 (Bankr. S.D.N.Y. 2008)........................................................... 28, 30, 31

*In re Enron Corp.,*
   274 B.R. 327 (Bankr. S.D.N.Y. 2002)............................................................... 28, 30

*In re Enron Corp.,*
   317 B.R. 629 (Bankr. S.D.N.Y. 2004)............................................................... 29, 30

*In re Garnett,*
   303 B.R. 274 (E.D.N.Y. 2003) ................................................................................... 20

*In re Interlink Home Health Care, Inc.,*
   283 B.R. 429 (Bankr. N.D. Tex. 2002)...................................................................... 23

*In re Linares,*
   No. 10-26453-BKC-JKO, 2010 WL 2788248 (Bankr. S.D. Fla. July 12, 2010)...................... 20

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

*In re Love B. Woods & Co.*,
   222 F. Supp. 161 (S.D.N.Y. 1963) ........................................................ 24

*In re Lundquist*,
   371 B.R. 183 (Bankr. N.D. Tex. 2007) ................................................. 22

*In re Malden Mills Indus., Inc.*,
   361 B.R. 1 (Bankr. D. Mass. 2007) .................................................. 20, 21

*In re Maruki USA Co., Inc.*,
   97 B.R. 166 (Bankr. S.D.N.Y. 1988) .................................................... 24

*In re Moore*,
   337 B.R. 79 (Bankr. E.D.N.C. 2005) ................................................... 22

*In re Oversight & Control Commission of Avanzit, S.A.*,
   385 B.R. 525 (Bankr. S.D.N.Y. 2008) .................................................. 20

*In re Patriot Coal Corp.*,
   482 B.R. 718 (Bankr. S.D.N.Y. 2012) .................................................. 35

*In re Pruitt*,
   910 F.2d 1160 (3d Cir. 1990) ............................................................. 19

*In re S. Land Title Corp.*,
   301 F. Supp. 379 (E.D. La. 1968) ............................................. 17, 18, 19

*In re Sweports, Ltd.*,
   777 F.3d 364 (7th Cir. 2015) .............................................................. 25

*In re Westgate Nursing Homes, Inc.*,
   518 B.R. 250 (Bankr. W.D.N.Y. 2014) ................................................ 25

*In re Williams*,
   363 B.R. 786 (Bankr. E.D. Va. 2006) .................................................. 20

*Kujawa v. Kujawa (In re Kujawa)*,
   224 B.R. 104 (E.D. Mo. 1998) ........................................................... 25

*Leon v. Couri*,
   No. 98CIV5029, 1999 WL 1427724 (S.D.N.Y 1999) ...................... 25, 26

*Near v. Great Am. First Sav. (In re Reddington Inv. Ltd. P'ship-VIII)*,
   90 B.R. 429 (B.A.P. 9th Cir. 1988) ............................................... 18, 19

*Porges v. Gruntal & Co. (In re Porges)*,
   44 F.3d 159 (2d Cir. 1995) ................................................................ 25

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

*Sinclair v. Bank of Am., N.A. In re Sinclair),*
No. BAP CC-12-1373, 2013 WL 2303729, at *3 (B.A.P. 9th Cir. May 28, 2013)...... 24, 25, 26

*United States v. Sabbeth,*
262 F.3d 207 (2d Cir. 2001).................................................................................................. 18

## Statutes

11 U.S.C. § 101(42) ........................................................................................................... 17

11 U.S.C. § 349.................................................................................................................. 27

11 U.S.C. § 350.................................................................................................................. 22

28 U.S.C. § 1408................................................................................................................ 18, 23

## Rules

Fed. R. Bankr. P. 1014(a) ................................................................................................. 23, 24

Fed. R. Bankr. P. 1014(b) ................................................................................................. 2, 17, 24

Fed. R. Bankr. P. 2004....................................................................................................... 18

Fed. R. Bankr. P. 5005....................................................................................................... 18

Fed. R. Bankr. P. 9001(4) ................................................................................................. 18

## Books and Other Nonperiodic Materials

COLLIER ON BANKRUPTCY ¶ 1014.04.............................................................................. 17

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

Aman Resorts Group Limited N/K/A AHL Hotels (2017) Limited ("ARGL"), debtor in possession under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") in Case No. 17-20114-AJC (the "Pending ARGL Case"), currently pending in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Florida Bankruptcy Court"), by and through undersigned proposed counsel,[1] and Jacqueline Calderin, as the Chapter 7 Trustee (the "Trustee," and together with ARGL the "Respondents") of the bankruptcy estate of Peak Hotels and Resorts Group Limited ("PHRGL"),[2] a debtor under chapter 7 of the Bankruptcy Code in Case No. 17-15041-AJC (the "PHRGL Case", and together with the Pending ARGL Case, the "Pending Cases") currently pending in the Florida Bankruptcy Court, by and through undersigned counsel, file this response (the "Response") in opposition to the motion to transfer venue of the Pending Cases from the Florida Bankruptcy Court to this Court [Dkt. No. 93] (the "Motion to Transfer Venue") filed (i) purportedly by ARGL and (ii) by Tarek Investments Limited ("Tarek", and together with ARGL to the extent that it is a proper movant, the "Movants"), the investment vehicle controlled by Vladislav Doronin ("Doronin"). In support of the Response, the Respondents submit the declarations of the Trustee, Jacqueline Calderin (the "Calderin Decl."), Michael Fay (the "Fay Decl."), Robert P. Charbonneau (the "Charbonneau Decl."), and the affidavit of Russel B. Adler (the "Adler Decl."), and respectfully represent as follows:

## **PRELIMINARY STATEMENT**

The Movants' request that this Court transfer venue of the Pending Cases to this Court pursuant to 28 U.S.C. § 1412 and Rule 1014(b) of the Federal Rules of Bankruptcy Procedure

---

[1]    ARGL has retained undersigned counsel in connection with the Pending ARGL Case and has filed an application in that case to approve the retention [ECF # 9 in Pending ARGL Case].  As of the date of this Response, the Florida Bankruptcy Court has not yet scheduled a hearing on such retention application.

[2]    PHRGL is the sole shareholder of ARGL.

(the "Bankruptcy Rules") is flawed, based on false premises and innuendo, and should be denied for one simple reason—there is no *petition pending* before this Court with respect to the above-captioned former debtor (the "Former Debtor") or any of its affiliates, as required under Bankruptcy Rule 1014(b) for this Court to properly consider the Motion to Transfer Venue. *See* Fed. R. Bankr. P. 1014(b) ("[T]he court in the district in which the first-filed *petition is pending* may determine . . . the district or districts in which any of the cases should proceed.") (emphasis added). Moreover, the Court lacks post-dismissal jurisdiction over the Motion to Transfer Venue, and any request to transfer Venue of the Pending Cases is therefore in the sole discretion of the Florida Bankruptcy Court—the only court with petitions relating to ARGL and PHRGL pending before it.

The Movants attempt to gloss over this Court's lack of authority to rule on their request to transfer venue of the Pending Cases by distracting the Court with unsupportable conspiracy theories and misrepresentations regarding the propriety and circumstances of the Pending Cases. More specifically, the Movants attack the underlying commencement of the Pending Cases (which has no bearing on whether the Florida Bankruptcy Court is the proper venue for the Pending Cases) and improperly and without foundation conflate or attribute associations in this Dismissed Proceeding with those in the Pending Cases. The facts and circumstances surrounding the Dismissed Proceeding, however, bear no relation to the Pending Cases:

- High-Def Zone, Inc. ("High-Def"), a creditor of PHRGL, commenced the PHRGL Case by filing an involuntary petition under Chapter 7 of the Bankruptcy Code in the Florida Bankruptcy Court and serving the involuntary petition and summons on PHRGL in accordance with the law of the British Virgin Islands ("BVI Law").

2

- The Florida Bankruptcy Court entered an order for relief for PHRGL, and the Office of the United States Trustee, a sub-department of the Department of Justice, randomly appointed the Trustee to serve as the Chapter 7 Trustee for the PHRGL estate.

- The Trustee, in investigating causes of action and causing the commencement of the Pending ARGL Case, has exercised her business judgment in good faith and in accordance with her fiduciary duties to creditors to investigate and preserve causes of action for both the PHRGL estate and ARGL, of which PHRGL is the sole member, and has done so transparently and with notice to all parties entitled to notice under the Bankruptcy Code and the Bankruptcy Rules.

- In the course of her investigation, the Trustee has uncovered that Doronin and entities controlled by him engaged in suspect pre-petition transactions regarding ARGL and/or PHRGL, and are potential targets of litigation that could yield significant recoveries for the ARGL and PHRGL estates.

Any suggestion by the Movants otherwise is wholly unfounded and unsupported by the facts.

Conversely, the Movants, who are admittedly acting in the ultimate interest of Doronin and neglecting to inform the Court of the many "hats" he wears in the transactions under the Trustee's investigation, feign outrage at the Pending Cases in Florida, which they allege occurred without proper notice to them. Tarek, however, an equity holder in PHRGL, abandoned PHRGL and allowed it to be "stricken off" of the BVI corporate registry. If Doronin and Tarek are genuinely concerned about PHRGL and ARGL, rather than Doronin's own self-interest in retaining his potentially ill-gotten gains, they would not attempt to thwart the Trustee's investigation of potentially valuable assets and substantial recoveries that would inure to the benefit of the estates in the Pending Cases (and possibly even equity holders). Instead,

3

recognizing that he and other entities under his control are the subject of the Trustee's investigation, Doronin seeks to attack the Pending Cases, which can only benefit the creditors and stakeholders of the PHRGL and ARGL estates.  In reviewing the allegations of the Motion to Transfer Venue, it is apparent that the Movants are merely a proxy for Doronin and other entities controlled by him that are or could soon be the targets of litigation, and are not acting in the best interests of PHRGL or ARGL.

Putting the Movants' charades and motives aside, the Court should deny the Motion to Transfer Venue because the Motion to Transfer Venue is not properly before it and the Court lacks jurisdiction to transfer the Pending Cases.  As this Court is aware, it dismissed the Former Debtor and above-captioned involuntary chapter 11 case (the "Dismissed Proceeding") nearly a year and a half ago after determining that "the Petitions failed to satisfy 11 U.S.C. § 303 and were improperly filed."[3]  Although the Court retained jurisdiction over certain limited matters related to the Dismissed Proceeding, and the above-captioned case has remained administratively open for the sole purpose of determining fees, costs, and sanctions awards, the Court unequivocally found that the Former Debtor was not entitled to relief under the Bankruptcy Code and dismissed the involuntary case.  Accordingly, how can a petition with respect to ARGL be "pending" before this Court for purposes of Bankruptcy Rule 1014(b) when (i) the Court found that the involuntary petition in this case was never properly filed in the first place, (ii) no valid order of relief was entered with respect to the Former Debtor, and (iii) the Court dismissed the Former Debtor and the Dismissed Proceeding with prejudice over a year ago?  The plain language of the Bankruptcy Rules and applicable authorities are clear: after the Court dismissed the Former Debtor and the involuntary case, no petition remained pending in this District with

---

[3]    *See Order Dismissing Involuntary Chapter 11 Case* [Dkt. No. 35] (the "Dismissal Order"); *Notice of Dismissal* [Dkt. No. 35-1] ("Aman Resorts Group Limited was dismissed from the case on March 29, 2016.").

4

respect to ARGL.  Moreover, although the Court has retained limited post-dismissal jurisdiction in the Dismissed Proceedings to award fees and sanctions against parties entirely unrelated to the Pending Cases, it lacks jurisdiction over the Motion to Transfer Venue.  The Motion to Transfer Venue is a thinly-veiled and improper attempt to forum shop through Bankruptcy Rule 1014(b) and must fail.

Even if the Court were to find that it may consider the Motion to Transfer Venue notwithstanding that there is no petition with respect to the Former Debtor pending before it, maintaining venue in the Florida Bankruptcy Court best serves the interests of justice and convenience of the parties.  First, as vociferously argued by the Former Debtor in the Dismissed Proceeding and in other litigation, neither PHRGL nor ARGL have assets in the Southern District of New York or even minimum contacts for purposes of New York's long arm statute. In fact, the only assets of either PHRGL or ARGL in the United States are located in the Southern District of Florida. Additionally, Kasowitz Benson Torres LLP ("Kasowitz" or the "Kasowitz Firm"), which purports to represent ARGL, has a Miami office and can easily participate in the Pending Cases in the Southern District of Florida with relatively minimal expense.  Moreover, during the August 25, 2017 telephonic conference scheduled by the Court, the Court indicated that resolution of the Motion to Transfer Venue could be protracted due to this Court's busy calendar.  But as it is often said, justice delayed is justice denied,[4] and delaying the Trustee's investigation into the prepetition conduct of Doronin and his affiliates serves the interest of justice for no one, other than Doronin.  It would be inequitable to remove the Pending Cases from an otherwise proper district in favor of a district in which all parties agree no assets

---

[4]    Most often attributed to British statesman and politician William Gladstone, with some commentators attributing the phrase to William Penn.

5

are located, solely because a potential target of litigation (Doronin and his affiliates) prefers the latter venue for defending himself.

## FACTUAL BACKGROUND AND DISCRETE ISSUES OF LAW

### A.  The Dismissed Proceeding

1.      On March 4, 2016, Omar Amanat ("Amanat"), Peak Venture Partners, and Carpenteria Management Services Limited (collectively, the "Prior ARGL Petitioning Creditors"), initiated the above-captioned case upon the filing of an involuntary petition with respect to the Former Debtor under chapter 11 of the Bankruptcy Code [Dkt. No. 1] (the "Involuntary Petition").   The Involuntary Petition was subsequently amended to provide for additional petitioning creditors, Ms. Carolyn Turnbill, Mr. George Robinson, Fonde Investment Capital SA, and Adrian Zecha (collectively, the "ARGL Petitioning Creditors").

2.      On March 7, 2016, the Former Debtor purported to file an *Answer to Involuntary Petition and Consent to Entry of Order for Relief* [Dkt. No. 4] (the "Answer and Consent"), and the Court thereafter entered an *Order for Relief* on March 9, 2016 [Dkt. No. 6] (the "Order for Relief"), based on the assumption that the Former Debtor had consented to its entry.

3.      On March 11, 2016, the Former Debtor, then represented by Kasowitz, filed a motion to strike the consent to entry of the Order for Relief, which it alleged was obtained through fraud, and should have never been entered in the first place.  *See Aman Resorts Group Limited's Memorandum of Law in Support of Motion to Strike the Answer to Involuntary Petition and Consent to Entry of Order for Relief, (B) Dismiss the Chapter 11 Case, and (C) Impose Attorneys' Fees, Costs, and Sanctions* [Dkt. No. 10] (the "Motion to Dismiss") ¶ 61 ("Furthermore, it is clear that the Order for Relief would not have been entered had the Court not been led falsely to believe by Carpentaria and Brown Rudnick that 'the Debtor [has] consented

6

to the entry of an Order for Relief.'"). In support of its request to strike the Order for Relief and to dismiss the case, the Former Debtor further argued, in part, that the Former Debtor was not eligible to be a debtor in this Court because it has no assets or employees in the United States, *see id.* at ¶ 65 ("ARGL, however, has no domicile or assets in the U.S. . . . ARGL has never conducted any other business with the United States and has no employees."), and that the consent to entry of the Order for Relief should be stricken because it was fraudulently consented to without proper authority, *see id.* ¶ 61.

4.      On March 29, 2016, the Court entered the *Order Dismissing Involuntary Chapter 11 Case* [Dkt. No. 35] (the "Dismissal Order"), which unequivocally dismissed the above-captioned chapter 11 case with prejudice after "having found and determined that the Petitions failed to satisfy 11 U.S.C. § 303 and were improperly filed . . . ." *See* Dismissal Order at 1 ("ORDERED that the Involuntary Case is hereby dismissed with prejudice"). The Clerk's *Notice of Dismissal* attached to the Dismissal Order provided that "Aman Resorts Group Limited was dismissed from the case on March 29, 2016." *See Notice of Dismissal* [Dkt. No. 35-1]. In the Dismissal Order, the Court retained jurisdiction solely with respect to (i) the Dismissal Order itself and (ii) the Former Debtor's request for attorneys' fees, costs, and sanctions sought in its Motion to Dismiss.[5]  *See id.* at 2 (stating that the "Court shall retain jurisdiction with respect to this order and ARGL's motion for an order imposing attorneys' fees, costs, and sanctions").

5.      No party sought reconsideration of or appealed the Dismissal Order, which resulted in the Dismissal Order becoming final and nonappealable on April 12, 2017.

---

[5]      Matters regarding the Debtor's request for attorneys' fees, costs, and sanctions are still pending before this Court.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

### B. The Pending Cases

#### i. *The PHRGL Case*

6.        Over a year after entry of the Dismissal Order, on April 24, 2017 (the "PHRGL

Petition Date"), High-Def Zone, Inc. (the "PHRGL Petitioning Creditor") initiated the PHRGL

Case by filing an involuntary petition for relief under Chapter 7 of the Bankruptcy Code for

PHRGL in the Florida Bankruptcy Court [ECF #1 in the PHRGL Case][6] (the "Involuntary

Petition").  As of the PHRGL Petition Date, PHRGL had been "stricken off" of the registry in

the BVI, effectively abandoned by its corporate ownership, including Tarek.[7]

7.        The following day, and in accordance with Bankruptcy Rule 1010(a), which

requires service of an involuntary petition only "upon the debtor", counsel for the PHRGL

Petitioning Creditor served the Involuntary Petition and summons in connection therewith on

PHRGL via its last known registered agent in the British Virgin Islands (referred to as "BVI")

[ECF #9 in the PHRGL Case] in accordance with applicable BVI Law with respect to service of

process on a stricken-off entity.  *See* Fay Decl. ¶ 5.  Notice to current or former directors of

PHRGL is not required under applicable U.S. law or BVI law.[8]

8.        Specifically, PHRGL was "stricken off" of the corporate registry of the BVI.

Although a stricken off entity can be sued, once stricken off, the board of a BVI corporation

effectively ceases to exist.  *See* Fay Decl. ¶ 5.  BVI Law further provides that in order to serve a

stricken off BVI corporation, one must serve the last known registered agent, *see id.* at ¶ 5, as the

PHRGL Petitioning Creditor did in the PHRGL Case.

---

[6]        The designation "ECF" refers to docket entries in the Pending Cases.

[7]        PHRGL's creditors subsequently sought and obtained PHRGL's reinstatement on the BVI registry.

[8]        The Movants assert that the board members of PHRGL (including Doronin) should have received service
of the involuntary petition, and that the board members of both PHRGL and ARGL should have received notice of
ARGL's voluntary Chapter 11 filing in Florida.  Both assertions are unsupported by either applicable Bankruptcy
law or BVI Law.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

9.      On May 18, 2017, the Florida Bankruptcy Court entered the *Order for Relief in Involuntary Case and Order Settling Deadline for Filing Schedules, Statements and Other Documents* [ECF #11 in the PHRGL Case] (the "<u>PHRGL Order for Relief</u>") under Chapter 7 of the Bankruptcy Code based upon PHRGL's failure to file any timely pleading or defense to the Involuntary Petition.   Once the Order for Relief was entered and the Trustee was appointed, board members' traditional functions as representatives of the corporation ceased.[9]

10.     On May, 22, 2017, the Office of the United States Trustee appointed the Trustee as the Chapter 7 Trustee of PHRGL's bankruptcy estate.   In the Southern District of Florida, such appointments are made randomly from a panel of twenty trustees, and creditor input or solicitation is, upon information and belief, neither sought nor considered by the Office of the U.S. Trustee in selecting Chapter 7 trustees.  *See* Calderin Decl. ¶ 5.

11.     Contrary to the Movants' unsupported statement that PHRGL had no assets in the United States, *see* Motion to Transfer Venue ¶ 10, the Trustee subsequently obtained turnover of approximately $2,500.00 belonging to PHRGL on account of a retainer held by the Law Office Russell B. Adler P.A., a law firm based in Fort Lauderdale, Florida.  *See* Adler Decl. ¶¶ 6, 15-17; Calderin Decl. ¶ 13.

12.     On June 7, 2017, the Florida Bankruptcy Court conducted a status conference in the PHRGL Case to determine whether venue and jurisdiction were proper.   Based on the report by the Trustee, including turnover of the retainer account from attorney Adler, the Florida Bankruptcy Court entered its *Order Determining Venue and Jurisdiction Are Proper* [ECF # 18 in the PHRGL Case].

---

[9]     *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352–53 (1985) ("Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are 'completely ousted.' . . . [N]othing in the Code or its legislative history suggests that the debtor's directors enjoy substantially greater powers in liquidation.") (citing H.R.Rep. No. 95–595, pp. 220–221 (1977).

9

13.     Subsequent to the status conference in the PHRGL Case, the Florida Bankruptcy Court heard the *Trustee's Application To Employ Robert P. Charbonneau, Esq. And The Law Firm of Ehrenstein Charbonneau Calderin As Attorneys For Chapter 7 Trustee, Nunc Pro Tunc to May 22, 2017* [ECF # 17 in the PHRGL Case] (the "Trustee's Application").  Accompanying the Trustee's Application was the *Affidavit of Disinterestedness and Rule 2016 Disclosures of Proposed Attorney for Chapter 7 Trustee* (the "Charbonneau Affidavit").  All of the allegations that the Movants recite to the Court in support of their conspiracy theory that the Trustee and her counsel are somehow working in concert with Omar Amanat come directly from the voluntary disclosures made in the Charbonneau Affidavit.  For the avoidance of doubt, neither the Trustee nor her counsel have either met Mr. Amanat, or have ever formed any kind of business or attorney-client relationship with Mr. Amanat.

14.     Having spoken to creditors and received a preview of possible claims against Doronin and others, and being generally aware of the history surrounding the Dismissed Proceeding, rather than have the Florida Bankruptcy Court consider the Trustee's Application *ex parte*,[10] the Trustee sought and obtained a hearing on the Trustee's Application.  At that hearing, Trustee's counsel had an extended colloquy with the Florida Bankruptcy Court concerning his prior correspondence and calls with Mr. Amanat.  Neither the Office of the United States Trustee nor the Florida Bankruptcy Court in the PHRGL Case voiced a concern or objection, and the Trustee's Application was approved by the Florida Bankruptcy Court.  *See Order Granting Application to Employ Robert P. Charbonneau, Esq. and the Law Firm of Ehrenstein Charbonneau Calderin as Attorneys for the Chapter 7 Trustee Nunc Pro Tunc to May 22, 2017* [ECF #27 in the PHRGL Case].

---

[10]     *See Local Rules, United States Bankruptcy Court, Southern District of Florida* Local Rule 9013-1(C).

10

*ii.  The Pending ARGL Case*

15.    On August 4, 2017, the Trustee, in her capacity as the trustee for the PHRGL estate, the sole shareholder of ARGL, and in accordance with the terms and procedures set forth in the Memorandum of Association and Articles of Association for ARGL, reconstituted ARGL's board of directors, removing all then-named directors of ARGL (including Doronin) and appointing Madison Director Services Limited ("Madison") as sole director of the Debtor. Nothing in the Memorandum of Association or Articles of Association for ARGL purports to require providing notice to any parties prior to taking such action. *See* Calderin Decl. ¶ 23. Madison subsequently authorized the filing of the Pending ARGL Case and the retention of Ehrenstein Charbonneau Calderin as counsel for ARGL.

16.    Accordingly, on August 9, 2017, ARGL commenced the Pending ARGL Case in the Florida Bankruptcy Court by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[11] In connection with that proceeding, ARGL intends to investigate and, if appropriate, pursue causes of action, including causes of action against Doronin and certain of his affiliates.

17.    On August 15, 2017, undersigned counsel was first contacted by Andrew Glenn, purported counsel for "Aman Resorts Group," regarding the Pending Cases.  Perplexed by the representation, the undersigned requested clarification on Kasowitz's representation, and Mr. Glenn responded, "We represent Vladimir [sic] Doronin and his affiliates."  Charbonneau Decl. at ¶ 13.  Throughout the undersigned's correspondence with members of the Kasowitz Firm, Kasowitz's message was uniform: the Florida Bankruptcy Cases are copycat filings of the

---

[11]    Further to the conspiracy theories the Movants and their counsel attempt to advance in the Pending Cases, the Movants argue that the address of ARGL in its Chapter 11 petition is an indication that the Pending Cases are "copycat" filings of the Dismissed Proceeding.  The truth, as readily available to the Movants and their counsel as it was to the Trustee, is that the address on the petition was taken directly from the records of the New York Department of State. *See* Calderin Decl. at ¶ 25.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

Dismissed Proceeding; that Omar Amanat has orchestrated everything, and that the Trustee is, at best, caught up in the fraud, or at worst, working in concert with Mr. Amanat.

18.     From the first contact with Kasowitz through and including Friday, August 18, 2017, the undersigned stated that "no action of significance in the Chapter 11 case" would be taken pending continuing discussions with Kasowitz.  In correspondence dated August 18, 2017 to Mr. Glenn, the undersigned indicated he had review several documents, including a settlement and consent order regarding the London, England litigation, and posed several questions to Mr. Glenn about the *res judicata* effect of that litigation.   Although the undersigned indicated no intention to pursue "action of significance" ***pending further discussions***, Mr. Glenn of Kasowitz, in response to further inquiries from the undersigned, responded: "We are filing.  Your position is delusional."   Charbonneau Decl. at ¶ 16.  The undersigned believed, and continues to believe, that this correspondence marked the end of discussions between the parties, and any stand-still agreement, and acted accordingly.  *See* Charbonneau Decl. ¶ 17.

### C.  Prior New York State Court Litigation

19.     In February 2015, in the Supreme Court of the State of New York, County of New York: Part 45 (the "N.Y. Supreme Court") under Index No. 650340/2015 (the "New York State Court Litigation"),[12] four creditors of both PHRGL and ARGL sued PHRGL and ARGL for breach of contract, tortious interference with contract, fraud, *quantum meruit* and unjust enrichment.  In the New York State Court Litigation, Kasowitz argued on behalf of PHRGL, ARGL, and Doronin, that there was no personal jurisdiction in New York.  In granting the motion to dismiss, the N.Y. Supreme Court found that certain board actions by PHRGL in

---

[12]     *See Sustainable PTE LTD., et al. v. Peak Venture Partners LLC, et al.*

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

Miami[13] cut in favor of finding no minimum contacts in New York for purposes of jurisdiction. Despite the prior position taken by Kasowitz on behalf of PHRGL and ARGL, they now assert in the Motion to Transfer Venue that neither PHRGL nor ARGL have any contacts with New York or even the United States.

20.     The New York State Court Litigation is significant because: (i) the claims of the plaintiffs in that case undercut Movants' and their counsel's claim that neither PHRGL nor ARGL have creditors, given the broad definition of that term under 11 U.S.C. § 101(10); (ii) as of January 2017, Movants and their counsel agree that neither PHRGL nor ARGL belong in court proceedings in the State of New York, nor that New York is a particularly convenient forum for either entity; and (iii) Movants and their counsel never invoked the automatic stay provisions of 11 U.S.C. § 362 for ARGL, even though they now claim that ARGL's petition is "pending" for purposes of Bankruptcy Rule 1014(b).

### D.  The Fraudulent Transfer of ARGL's Assets to Doronin's Affiliates

21.     Shortly after her appointment, the Trustee learned that, approximately two years ago, Pontwelly Holding Company Limited ("Pontwelly"), an affiliate and insider of Doronin, obtained the stock of Silverlink Resorts Limited ("Silverlink"), a wholly owned subsidiary of ARGL, which at that time (among other things) owned through its own subsidiaries more than 25 high-end luxury hotels.  *See* Calderin Decl. at ¶ 11.  Pontwelly did so through a so-called strict foreclosure transaction by which it took the stock in Silverlink from ARGL in satisfaction of an approximately $170 million debt.  There was no UCC public auction, no advertising, and no competitive bidding at a UCC sale for the sale of the stock in Silverlink and the stock in

---

[13]     The Trustee has obtained a written transcript of a board meeting conducted by PHRGL in Miami at the offices of Greenberg Traurig.

13

Silverlink was not offered to the marketplace by either ARGL or by Pontwelly in the lead up to this insider transaction.

22.    Pontwelly was allegedly permitted to effectuate this transaction because ARGL (as borrower) did not respond to the purported offer of Pontwelly (its lender) to take the stock in Silverlink in exchange for the debt within twenty days of the purported offer.  At the time of this alleged transaction, however, Mr. Doronin, the 100% owner of the lender, Pontwelly, was also a voting director of ARGL along with another director, Alan Djanogly, installed by Doronin through his indirect equity interest in ARGL via Tarek.  Thus, Mr. Doronin was on both sides of this transaction as both borrower (ARGL) and as lender (Pontwelly).    Accordingly, this transaction appears to have been an insider transaction. Therefore, the ARGL estate is investigating this transaction for the benefit of the creditors of ARGL to determine whether there was any "equity" in the stock of Silverlink that was transferred away by insiders.

23.    After her appointment, however, the Trustee learned that the two-year statute of limitations was going to run on: (i) insider preference claims under applicable BVI Law, and (ii) under section 548 of the Bankruptcy Code.  It was unclear whether the Trustee could take any affirmative actions on behalf of PHRGL given its stricken off status.  Under BVI Law, creditors are authorized to seek reinstatement of a stricken-off entity, and accordingly, creditors moved for, and obtained, relief from the automatic stay to petition the court registrar in the BVI for purposes of reinstating PHRGL.  Once that occurred, the Trustee then exercised her rights as the only authorized representative to act on behalf of PHRGL, the sole member of ARGL, and reconstituted ARGL's board of directors, some of whom will likely be targets of the litigation, and appointed a director of her choosing.    Nothing in the Articles of Association or

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com

Memorandum of Association require the Trustee, as representative of the sole member, to provide notice of this reconstitution. *See* Calderin Decl. ¶ 23.

### E.  The Motion to Transfer Venue

24.    On August 22, 2017, Doronin, through the Movants, filed the Motion to Transfer Venue seeking to transfer the Pending Cases from the Florida Bankruptcy Court to this Court pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(b).

25.    On August 25, 2017, the Court *sua sponte* scheduled and conducted a telephonic conference in connection with the Motion to Transfer Venue and thereafter entered the *Interim Order Directing All Parties in Later-Filed Cases Not to Proceed Further* [Dkt. No. 98].

### <u>RESPONSE</u>

26.    The Court should deny Motion to Transfer Venue for several reasons.  <u>First</u>, the Motion to Transfer Venue was improperly filed in this District and the Court lacks authority and jurisdiction to determine the venue of the Pending Cases.  Because the Former Debtor and the involuntary petitions filed in the above-captioned case were dismissed over a year ago, no "petition" regarding ARGL or any of its affiliates is currently "pending" before this Court so as to allow the Court to determine venue of the Pending Cases under Bankruptcy Rule 1014(b). Moreover, the Court's post-dismissal jurisdiction is limited to ancillary matters relating to the Dismissed Proceeding (such as the determination of attorneys' fees, costs, and sanctions), but does not allow the Court to grant new relief regarding the Former Debtor or to rule on the venue of the Pending Cases.  <u>Second</u>, even if the Court were to find that it can determine the venue of the Pending Cases, maintaining venue of the Pending Cases in the Florida Bankruptcy Court better serves the interest of justice and the convenience of the parties, particularly where the

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

PHRGL Case is properly pending before the Florida Bankruptcy Court, and Kasowitz has an office in Miami-Dade County only 3.4 miles away from that courthouse.

I. **The Motion to Transfer Venue Is Not Properly Before this Court**

27.    The Court is not the proper court to decide the Motion to Transfer Venue for two simple reasons.  First, Bankruptcy Rule 1014(b) is inapplicable here because the Court dismissed the Former Debtor, the involuntary petitions, and the Dismissed Proceeding over a year ago, and as such, no "petition" regarding the Former Debtor is currently "pending" before it, as contemplated by Bankruptcy Rule 1014(b).  Second, although the Court has retained limited post-dismissal jurisdiction over certain matters ancillary to the Dismissed Proceeding, it does not have jurisdiction to determine the proper venue of the Pending Cases currently before the Florida Bankruptcy Court.  As such, any determination regarding the transfer of venue of the Pending Cases would be in the sole discretion of the Florida Bankruptcy Court—the only court with petitions pending before it regarding ARGL and its affiliate, PHRGL.

A. **The Court Lacks Authority to Determine the Proper Venue of the Pending Cases Under Bankruptcy Rule 1014(b) Because No Petition with Respect to ARGL or Its Affiliates Is Pending in this District**

28.    The Movants argue that the Court has jurisdiction to transfer venue of the Pending Cases to this district pursuant to 28 U.S.C. § 1412,[14] and cite Bankruptcy Rule 1014(b) as the source of this Court's authority to consider the Motion to Transfer Venue.  *See* Motion to Transfer Venue ¶ 39 ("Indeed, '[a]lthough 28 U.S.C. § 1412, in and of itself, may not provide the authority for a district court to transfer to itself a case pending in another court, Bankruptcy Rule 1014(b) provides *precisely* such authority.'") (quoting *Emerson Radio Corp.*, 52 F.3d 50, 55 n.8 (3d Cir. 1995)).  Bankruptcy Rule 1014(b), however, is inapplicable here.

---

[14]    This section provides that "[a] district court may transfer a case or proceeding under title 11 to the district court for another district, in the interest of justice or the convenience of the parties."  28 U.S.C. § 1412.

16

### i. Bankruptcy Rule 1014(b) Requires that a First-Filed "Petition" Involving the Debtor or Its Affiliates Be "Pending" in this District

29.    Bankruptcy Rule 1014(b) provides, in relevant part, that:

> If petitions commencing cases under the Code . . . are filed in different district by, regarding, or against (1) the same debtor . . . or (4) a debtor and an affiliate, *the court in the district in which the first-filed <u>petition is pending</u> may determine . . . the district or districts in which any of the cases should proceed*.

Fed. R. Bankr. P. 1014(b) (emphasis added).    Simply put, in order for a court to make a determination regarding the proper venue of a subsequently filed bankruptcy petition involving the same debtor (or its affiliates), Bankruptcy Rule 1014(b) requires that a "petition" involving such debtor be "pending" before it.[15]

30.    Notably, the language of Bankruptcy Rule 1014(b) speaks only to the pendency of the "petition" as opposed to the bankruptcy "case" or "proceeding," indicating the drafters' intent to focus on the status of the petition in the first-filed case, not the status of the overall proceeding.    Thus, even if the Court finds that a "proceeding" or "case" regarding the Former Debtor is still pending before it due to its continuing consideration of attorneys' fees, costs, and sanctions pursuant to section 303 of the Bankruptcy Code and Bankruptcy Rule 9011, these terms are by no means synonymous with the word "petition."[16]    *See In re S. Land Title Corp.*, 301 F. Supp. 379, 388-89 (E.D. La. 1968) (noting that the word "petition" is distinguishable from the bankruptcy "proceeding" as a whole, and that use of the word "petition" in Bankruptcy

---

[15]    *Cf.* COLLIER ON BANKRUPTCY ¶ 1014.04 ("Federal Rule of Bankruptcy Procedure 1014(b) resolves the conflict that is likely to arise when multiple *petitions are pending* that involve the same debtor or related debtors in different courts. . . . The rule requires that a motion be filed in the district in which the first *petition is pending*.") (emphasis added) (footnote omitted).

[16]    The Bankruptcy Code defines "petition" as the document that simply *commences* a bankruptcy case, *see* 11 U.S.C. § 101(42) ("The term 'petition' means petition filed under section 301, 302, 303 and 1504 of this title, as the case may be, commencing a case under this title."), but in no way suggests that term is synonymous with the overall case or proceeding.

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com

Act provision "strongly indicates to us that Congress intended to mean 'petition' rather than 'proceeding' . . . .").[17]  If the drafters of the Bankruptcy Rules intended that application of Bankruptcy Rule 1014(b) turn on whether the first-filed "case" or "proceeding" remains pending, they would have drafted the rule to state as much, as they have in various other Bankruptcy Rules.[18]  Instead, the drafters intentionally chose the word "petition" in Bankruptcy Rule 1014(b), and it would be "serious error for a court to ignore the plain language of a rule for reasons which may appear expedient at the time but which may cause problems in the future." *See Near v. Great Am. First Sav. (In re Reddington Inv. Ltd. P'ship-VIII)*, 90 B.R. 429, 431 (B.A.P. 9th Cir. 1988).  As such, in order for this Court to transfer venue of the Pending Cases under Bankruptcy Rule 1014(b), an actual "petition" regarding the Former Debtor or its affiliates must be "pending" before it.

### ii. No "Petition" Involving the Debtor or Its Affiliates Is "Pending" Before the Court Because All Involuntary Petitions Regarding the Former Debtor Were Dismissed Over A Year Ago

31.    The language of Bankruptcy Rule 1014(b) was amended, effective August 1, 1991, to include the word "pending."  *See Consol. Equity Props., Inc. v. Southmark Corp. (In re Consol. Equity Props., Inc.)*, 136 B.R. 261, 266 n.4 (D. Nev. 1991).  It previously provided that

---

[17]    The District Court for the Eastern District of Louisiana in *South Land Title*, in analyzing "whether the language 'no other petition * * * is pending' is intended to prohibit the filing of a petition during the pendency of a 'petition' or during the pendency of a 'proceeding,'" found that Congress's use of the word "petition" rather than "proceeding" indicated "that a second petition could be filed immediately upon the dismissal of the first petition and need not await the conclusion of the entire proceeding."  301 F. Supp. At 387-89.

[18]    *See, e.g.* Fed. R. Bankr. P. 2004 ("The court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without *the district wherein the __case__ is pending*.") (emphasis added); Fed. R. Bankr. P. 5005 ("The lists, schedules, statements, proofs of claim or interest, complaints, motions, applications, objections and other papers required to be filed by these rules, except as provided in 28 U.S.C. § 1409, shall be filed with the clerk *in the district where the __case__ under the Code is pending*.") (emphasis added); Fed. R. Bankr. P. 9001(4) (defining "court" or "judge" as "the judicial officer before whom a __case or proceeding__ is pending") (emphasis added); *see also* 28 U.S.C. 1408 ("[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced *in the district court in which such __case__ is pending*.") (emphasis added); *cf. United States v. Sabbeth*, 262 F.3d 207, 216 (2d Cir. 2001) (finding that Congress's use of different words in different Bankruptcy Code provisions "suggests that Congress had different meanings in mind when enacting the two provisions").

18

the court "in the district in which the first petition is *filed*" may determine venue. *Id.* (emphasis added). The drafters' conscious decision to replace the word "filed" with "pending" suggests that the mere filing of a petition regarding a debtor with an earlier court does not suffice to give that court authority to decide venue of any later-filed case regarding that debtor or its affiliates— the first petition must remain pending.[19]

32. The Bankruptcy Code does not define the word "pending." Nevertheless, courts have recognized that a "petition" is no longer "pending" once it is dismissed. *See, e.g., Canute S.S. Co. v. Pittsburgh & W. Va. Coal Co.*, 263 U.S. 244, 248 (1923) (finding that, with respect to involuntary petitions filed under the Bankruptcy Act, "the *petition* cannot be joined in [by additional creditors] *after it has been dismissed and is no longer pending*") (emphasis added); *In re Pruitt*, 910 F.2d 1160, 1171 (3d Cir. 1990) (J. Mansmann, Concurring) ("In the case before us, the *petition* is no longer pending since it has been *dismissed*.") (emphasis added); *In re S. Land Title Corp.*, 301 F. Supp. at 387–88 ("Merely because Judge Mitchell did not dismiss the entire proceeding does not mean that the petition was not dismissed and was still pending. . . .

---

[19]    In *In re Reddington Investments Ltd. P'ship-VIII*, a case decided under the pre-1991 amendment of Bankruptcy Rule 1014(b), the Bankruptcy Appellate Panel for the Ninth Circuit highlighted the distinction between a petition that is merely filed and a petition that is pending:

> If the Supreme Court had intended that the 1014(b) motion was to be filed in the court where the first petition was pending they would have promulgated the rule to provide for this result. . . . [T]he Panel cannot believe that the drafters of Rule 1014(b) chose filing of the first petition as the controlling event if they had intended for the district where the first petition is pending to be the controlling event; especially since it is clear in light of Rule 5005 that the drafters knew how to say the court where the petition was pending when that was the result intended. It is serious error for a court to ignore the plain language of a rule for reasons which may appear expedient at the time but which may cause problems in the future.

90 B.R. at 431-32 (adding that "[a]ny suggestions regarding changing Rule 1014(b) to provide that the proper court is in the district where the first case is pending should be made to the Supreme Court in their rulemaking capacity, not to this Panel," which change did in fact subsequently occur).

19

The petition having been dismissed by Judge Mitchell, it is clear that no 'petition' was pending at the time the present petition was filed.").

33.    Even if the Court were to find that the word "petition" as used in Bankruptcy Rule 1014(b) is synonymous with the words "case" or "petition," numerous courts, including this Court, have similarly found that a bankruptcy case is no longer "pending" upon dismissal.  For example, in *In re Oversight & Control Commission of Avanzit, S.A.*, this Court highlighted "the substantial body of case law arising in various contexts that a bankruptcy case remains open or 'pending' until the court enters an order ***dismissing*** or closing it."  385 B.R. 525, 538 (Bankr. S.D.N.Y. 2008) (emphasis added) (citations omitted) (collecting cases); *see also In re Garnett*, 303 B.R. 274, 278 (E.D.N.Y. 2003) ("In the period between the filing and ***dismissal of the petition*** the case is 'pending,' and the bankruptcy court has exclusive jurisdiction over the property of the debtor and of the estate during that interval. ***Once the case is dismissed and is no longer pending***, the bankruptcy court is divested of exclusive jurisdiction over the property of the Debtor.").[20]

34.    The cases in which courts have construed the word "pending" in the specific context of Bankruptcy Rule 1014(b) appear not only limited, but entirely inapposite here due to key factual distinctions.  The Movants argue that "[t]he Court has retained its authority under Bankruptcy Rule 1014(b) after dismissing the Chapter 11 Case because the Chapter 11 Case remains pending," and cite *In re Emerson Radio Corp.*, 52 F.3d 50 (3d Cir. 1995) and *In re Malden Mills Indus., Inc.*, 361 B.R. 1 (Bankr. D. Mass. 2007) for the proposition that a chapter

---

[20]    Indeed, "[c]ourts have routinely equated pending with not dismissed . . . ."  *In re Williams*, 363 B.R. 786, 788-89 (Bankr. E.D. Va. 2006) ("Given the meaning and application of the word 'pending' and given the policy considerations involved, it would appear that a case is no longer pending once it has been dismissed."); *see also In re Linares*, No. 10-26453-BKC-JKO, 2010 WL 2788248 (Bankr. S.D. Fla. July 12, 2010) ("In cases where there is no motion to vacate a dismissal order, it is clear that the case is no longer 'pending' once it is dismissed. . . .").

20

11 case remains "pending" for purposes of Bankruptcy Rule 1014(b) until "closed." *See* Motion

to Transfer Venue ¶ 42 n. 3.  Yet neither of these cases is binding or instructive here.

35.    <u>First</u>, both *Emerson* and *Malden Mills* involved chapter 11 debtors who properly

obtained relief under chapter 11 of the Bankruptcy Code and confirmed chapter 11 plans—none

of which occurred in the above-captioned case.  *See Emerson*, 52 F.3d at 52; *Malden Mills,* 361

B.R. at 3.  Most notably, ***neither of these cases was ever dismissed***.  As such, these courts did

not have the occasion to address what effect dismissal would have on whether the cases

remained "pending" for purposes of Bankruptcy Rule 1014(b).

36.    <u>Second</u>, it logically follows from the specific facts of those cases that the courts

would refer to the closing of the case as the point when the cases were no longer "pending."

Indeed, the *Emerson* court explicitly recognized that its ruling was particularly warranted where

a chapter 11 plan had been confirmed and the bankruptcy court continued to oversee the debtor's

implementation of such plan.  *See id.* at 55 n.7 ("Our result is consistent with the practical reality

that in most cases the bankruptcy court still has jurisdiction over the case [after plan

confirmation] and oversees implementation of the plan. *See* 11 U.S.C. § 1142.").  Interestingly,

both courts specifically found that a bankruptcy case is pending under Bankruptcy Rule 1014(b)

until it has been closed ***under 350 of the Bankruptcy Code***.  *Id.* at 55 ("a bankruptcy case is

pending under Rule 1014(b) unless it has been closed under 11 U.S.C. § 350."); *Malden Mills*,

361 B.R. at 9 ("[A] bankruptcy case is 'pending' within Rule 1014(b) until the final decree is

entered and the case is closed under Section 350(a).") (citing *Emerson*, 52 F.3d at 54).  The

courts' references to section 350 of the Bankruptcy Code are notable because this section

specifically contemplates the closing of a bankruptcy case after complete administration of the

debtor's estate has taken place—something that certainly never transpired (or ever could

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com

transpire) in the Dismissed Proceeding. *See* 11 U.S.C. § 350(a) ("After an estate is fully

administered and the court has discharged the trustee, the court shall close the estate."); *Iannini*

*v. Winnecour*, 487 B.R. 434, 442–43 (W.D. Pa. 2012) ("'[C]losed' in the context of § 350(a)

refers to when a case is 'fully administered and the court has discharged the trustee.'").

However, when a petition and a debtor are dismissed early in the proceeding, no estate is ever

administered, and no decree closing the case pursuant to section 350 of the Bankruptcy Code will

ever be forthcoming, a final and non-appealable dismissal logically marks the point at which the

petition or case is no longer "pending" for purposes of Bankruptcy Rule 1014(b).[21]

37.    It is hard to imagine that the Court could find that a petition regarding ARGL

remains pending before it after finding, over a year ago, that the involuntary petitions were never

properly filed in the first instance. *See* Dismissal Order (dismissing involuntary case where

Court "found and determined that the Petitions failed to satisfy 11 U.S.C. § 303 and were

improperly filed").   Once the Dismissal Order—which unequivocally dismissed the Former

Debtor, the Dismissed Proceeding, and the involuntary petitions—became final and non-

appealable, no petition or case involving ARGL or its affiliates' estates remained pending in this

District.  Aside from the Court's determination of attorneys' fees, costs, and sanctions and the

ministerial act of closing of the case, nothing remains to be administered in the Dismissed

Proceeding to suggest that the unrelated Pending Cases should also proceed before this Court.

Thus, under the particular circumstances of this case, the Court cannot invoke Bankruptcy Rule

1014(b) to transfer the Pending Cases to this District, and this alone is a sufficient basis for the

---

[21]    In fact, various courts in other context have rejected the notion that the "closing" of the case is the date on
which a bankruptcy case ceases to be considered "pending." *See In re Lundquist*, 371 B.R. 183, 187, 190 (Bankr.
N.D. Tex. 2007) (highlighting that "prior cases have uniformly held that a case is pending until it is dismissed, not
closed . . . ." and holding that "[a] case is 'pending' for purposes of section 362(c) until it is dismissed, and a motion
to vacate the dismissal does not extend the time that the case is 'pending.'"); *see also In re Moore*, 337 B.R. 79, 80-
81 (Bankr. E.D.N.C. 2005) ("Mr. Moore's first case was no longer 'pending' for purposes of § 362(c)(3) as of the
date of dismissal, regardless of when the case was closed.").

22

Court to deny the Motion to Transfer Venue regardless of whether transfer would serve the interest of justice or convenience of the parties. This determination should be left to the discretion of the Florida Bankruptcy Court.

### iii. The Florida Bankruptcy Court Is the Proper Court to Determine Any Transfer of Venue of the Pending Cases

38.    The Florida Bankruptcy Court has already determined that venue of the PHRGL Case is proper before it. *See Order Determining Venue and Jurisdiction are Proper* dated June 7, 2017 [ECF #18 in the PHRGL Case] ("The Court has determined that jurisdiction and venue are proper in this case."). Accordingly, venue of the Pending ARGL Case, involving a wholly-owned subsidiary and affiliate of PHRGL, is also proper in the Florida Bankruptcy Court. *See* 28 U.S.C. § 1408(2) (providing that a bankruptcy case may be commenced in the district "in which there is a pending case under title 11 concerning such person's affiliate, general partner, or partnership").

39.    Where, as here, Bankruptcy Rule 1014(b) is inapplicable and venue of the Pending Cases is proper before the Florida Bankruptcy Court, any determination regarding transfer of venue would be governed by Bankruptcy Rule 1014(a)[22] and should be decided by the Florida Bankruptcy Court. It would be inappropriate for this Court to otherwise direct the Florida Bankruptcy Court to transfer the Pending Cases to this District under Bankruptcy Rule 1014(a). *See In re Interlink Home Health Care, Inc.*, 283 B.R. 429, 436 (Bankr. N.D. Tex. 2002) ("The Court finds no basis in 11 U.S.C. § 105 for arrogating to itself the power to direct another court to transfer a case pursuant to Rule 1014(a). . . . the Court would be hesitant to follow any

---

[22]    Bankruptcy Rule 1014(a) provides that "[i]f a petition is filed in the proper district, the court, on a timely motion of a party in interest or on its own motion, and after hearing on notice . . . may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a).

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

(other than controlling) authority that provided it might engage in a potential war of orders with another court over the issue of venue.").

40.    Moreover, even if the Court were to find that it may decide whether transfer of venue of the Pending Cases is warranted pursuant to Bankruptcy Rule 1014, it is not *required* to make such a determination, as the language of Bankruptcy Rule 1014 and 28 U.S.C. 1412 is permissive.[23]  The Florida Bankruptcy Court, which has overseen the filing of Pending Cases and all relief sought in those cases thus far, is the appropriate forum for determining (i) whether venue of the Pending Cases should be transferred to this District and (ii) all other issues to be raised in such cases, including whether the Pending Cases were properly filed.

## B.  The Court Lacks Jurisdiction to Transfer Venue of the Pending Cases

41.    The Court's post-dismissal jurisdiction is limited to ancillary matters relating to the Dismissed Proceeding, such as the determination of fee and sanctions awards, but does not include authority to rule on the Motion to Transfer Venue of the Pending Cases.  "[B]ankruptcy Courts are courts of limited jurisdiction, particularly post-dismissal."  *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 248 (B.A.P. 9th Cir. 2002); *Sinclair v. Bank of Am., N.A. In re Sinclair)*, No. BAP CC-12-1373, 2013 WL 2303729, at *3 (B.A.P. 9th Cir. May 28, 2013) ( ("Post-dismissal bankruptcy jurisdiction is generally limited."); *see also In re Love B. Woods & Co.*, 222 F. Supp. 161, 163 (S.D.N.Y. 1963) (noting that "[a] bankruptcy court is a court of limited jurisdiction created for the speedy and efficient administration of a bankrupt's estate," and finding that dismissal of involuntary petition against the debtor left the court with "nothing

---

[23]    *See* Fed. R. Bankr. P. 1014(a) ("If the petition is filed in the proper district, the court, on the time motion . . . and after hearing . . . *may* transfer the case to another district . . . .") (emphasis added); Fed. R. Bankr. P. 1014(b) ("[T]he court in the district in which the first-filed petition is pending *may* determine . . . the district or districts in which any of the cases should proceed.") (emphasis added); 28 U.S.C. § 1412 ("A district court *may* transfer a case or proceeding under title 11 to a district court for another district . . . .") (emphasis added); *see also In re Maruki USA Co., Inc.*, 97 B.R. 166, 170 (Bankr. S.D.N.Y. 1988) ("Rule 1014 is permissive in nature.  It does not direct the first filed court to consider the venue motion . . . .").

24

upon which its jurisdiction could rest or operate" insofar as debtor's counterclaims against petitioning creditors were concerned); *cf. Leon v. Couri*, No. 98CIV5029, 1999 WL 1427724, at *3 (S.D.N.Y 1999) ("[E]ven if 'related to' jurisdiction exists, the Court has discretion to decline to exercise jurisdiction over a related proceeding after the underlying bankruptcy case has been dismissed."). After dismissal, the bankruptcy court may retain limited jurisdiction to dispose of certain matters ancillary to the dismissed proceeding, including construing and interpreting its orders, awarding professional compensation or sanctions, and overseeing ongoing adversary proceedings arising out of the bankruptcy case. *See Sinclair*, 2013 WL 2303729, at *3; *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 162-63 (2d Cir. 1995) (holding that, under certain circumstances, court may retain jurisdiction over an adversary proceeding that was related to the bankruptcy case at the time of its commencement after the underlying bankruptcy case is dismissed); *In re Sweports, Ltd.*, 777 F.3d 364, 367–68 (7th Cir. 2015) (noting court has "'clean-up' jurisdiction ('ancillary' jurisdiction, it is commonly called) to take care of **minor loose ends**") (emphasis added); *Kujawa v. Kujawa (In re Kujawa)*, 224 B.R. 104, 108 (E.D. Mo. 1998) (concluding "that the bankruptcy court did not err in retaining **limited** jurisdiction to resolve any requests for the award of costs, attorneys' fees, actual and punitive damages and for sanctions" under section 303(i), as "the bankruptcy court always has the inherent power to impose civil sanctions on the parties who appear before it") (emphasis added).

42.     It does not follow, however, that a bankruptcy court retains post-dismissal jurisdiction to consider new matters regarding a dismissed debtor, particularly where such jurisdiction was not specifically reserved in the dismissal order.[24]  In fact, a bankruptcy court

---

[24]     *Cf. In re Westgate Nursing Homes, Inc.*, 518 B.R. 250, 259 (Bankr. W.D.N.Y. 2014) (noting that the "basic purpose" of section 349(b) of the Bankruptcy Code governing dismissal is "to undo the bankruptcy case, as far as practical," and finding that "where jurisdiction [over fee matters] is not expressly retained, the court 'presumptively lacks jurisdiction over the issue'") (citations omitted); *Iannini*, 487 B.R. at 438–39 ("[O]nce the bankruptcy case has

25

"may not . . . grant new relief independent of its prior rulings once the underlying action has been dismissed." *Sinclair*, 2013 WL 2303729, at *3 (quoting *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir. 1989)). It is an even further stretch to suggest that a court retains jurisdiction over matters affecting a former debtor who is a current debtor in a subsequent proceeding pending before another court of competent jurisdiction.

43.    The Court's post-dismissal jurisdiction in the Dismissed Proceeding is limited to (i) the collateral issue of awarding attorneys' fees, costs, and sanctions under section 303 of the Bankruptcy Code following dismissal of the involuntary petitions, and (ii) the Dismissal Order itself, as specifically reserved in the Dismissal Order. *See* Dismissal Order (ordering that the "Court shall retain jurisdiction with respect to this order and ARGL's motion for an order imposing attorneys' fees, costs, and sanctions."). However, the Pending Cases (and any determination regarding their proper venue) are neither ancillary nor related to the Dismissed Proceeding—they are entirely different cases commenced by different petitioners under distinct circumstances well over a year after the Court dismissed the above-captioned case, which just so happened to also involve the ARGL entity. The Pending Cases will have no effect on the only matter still pending before this Court with respect to the Dismissed Proceeding—the award of attorneys' fees, costs, and sanctions related to the bad faith filing by parties unrelated to the Pending ARGL Case. Simply because the Court found the filing of involuntary petition against ARGL in the Dismissed Proceeding was improper and in bad faith does not preclude the Trustee

---

been closed, disputes arising post-closure of the underlying case . . . cannot have an effect on the administration of the estate. . . . This principle applies with equal force to dismissed cases. . . . Thus, a bankruptcy court, in the normal course, has no jurisdiction to hear such post-dismissal disputes [over fee matters].") (citations omitted); *In re Leon*, 1999 WL 1427724 at *3 ("Since the bankruptcy matter has been dismissed, there is no longer a debtor estate to protect.").

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

from filing a subsequent bankruptcy case for ARGL.[25]    Nor does it mean the filing of the

Pending Cases are similarly tainted (as falsely suggested by the Movants) and must be dragged

to the same district that previously dismissed an entirely distinct proceeding against ARGL.

Under these circumstances, the Court should find that it lacks post-dismissal jurisdiction to grant

new relief relating to ARGL by transferring the Pending Cases away from the Florida

Bankruptcy Court.

## II. Even if the Court Has Authority to Decide the Motion to Transfer Venue, the Florida Bankruptcy Court is the Proper Venue for the Pending Cases

44.    Even if the Court were to find that it has the requisite authority to transfer the

Pending Cases to this District, such transfer is not warranted because the Movants have failed to

carry their burden of demonstrating that it would better serve the interest of justice or the

convenience of the parties.    The Movants' arguments in favor of transfer are only remotely

relevant if the Court accepts as true the Movants' unfounded conspiracy theory that the Pending

Cases were commenced in furtherance of the same fraudulent scheme underlying the Dismissed

Proceeding.    As demonstrated herein, however, that is simply not the case.    As such, this Court's

and Kasowitz's familiarity and involvement with the ***Dismissed Proceeding*** should have no

bearing on whether the ***Pending Cases***—which were properly commenced by entirely different

petitioners under completely distinct circumstances—should be stripped away from the Florida

Bankruptcy Court, which is perfectly capable of adjudicating all issues relating to the Pending

Cases, including whether they were appropriately filed.    Putting the Movants' unsubstantiated

accusations aside, it is clear that maintaining the Pending Cases before the Florida Bankruptcy

Court promotes the interests of justice and convenience of parties.

---

[25]    *See* 11 U.S.C. § 349 (governing effect of dismissal, and providing that "dismissal of a case under this title [does not] prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title").

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

45.    Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding

under title 11 to the district court for another district, in the interest of justice or the convenience

of the parties."  28 U.S.C. § 1412.   "The party moving for change of venue bears the burden of

proof and that burden must be carried by a preponderance of the evidence."  *Gulf States*

*Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d

1384, 1390–91 (2d Cir. 1990) (citations omitted); *Commonwealth of Puerto Rico v.*

*Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.),* 596 F.2d 1239, 1241

(5th Cir. 1979) ("*CORCO*").   The moving party's burden is a heavy one because "[a] debtor's

choice of forum is entitled to great weight if venue is proper."  *See In re Enron Corp.*, 274 B.R.

327, 342 (Bankr. S.D.N.Y. 2002) (citations omitted); *see also Mansville*, 896 F.2d at 1391

("[T]he district in which the underlying bankruptcy case is pending is presumed to be the

appropriate district for hearing and determination of a proceeding in bankruptcy.") (citations

omitted).

46.    "Where a transfer would merely shift the inconvenience from one party to the

other, or where after balancing all the factors, the equities leaned but slightly in favor of the

movant, the [debtor's] choice of forum should not be disturbed."  *Enron*, 274 B.R. at 342-43

(quoting *In re Garden Manor Assoc., L.P.,* 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988); *In re*

*Great Am. Res., Inc.*, 85 B.R. 444 (Bankr. N.D. Ohio 1988) ("venue decisions should not merely

shift the inconvenience from one party to another")).   Thus, a court must "cautiously exercise

the power to transfer a case."  *In re Dunmore Homes, Inc.*, 380 B.R. 663, 675 (Bankr. S.D.N.Y.

2008); *see also Enron,* 274 B.R. at 342 ("Transferring venue of a bankruptcy case is not to be

taken lightly.") (citing *CORCO,* 596 F.2d at 1241 ("the court should exercise its power to

**EHRENSTEIN CHARBONNEAU CALDERIN**

**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

transfer cautiously"); *In re Pavilion Place Assocs.,* 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988) ("Transfer is a cumbersome disruption of the Chapter 11 process.")).

47.     The granting of a section 1412 motion to transfer venue of a bankruptcy case lies within the discretion of the bankruptcy court based on "an 'individualized, case-by-case consideration of convenience and fairness.'" *In re Enron Corp.*, 317 B.R. 629, 638 (Bankr. S.D.N.Y. 2004) (citing *Manville*, 896 F.2d at 1391 (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988) (quoting, in turn, *Van Dusen v. Barrack,* 376 U.S. 612, 622, (1964))). Section 1412 is permissive, and provides that the court "may" transfer a case to another district, "in the interest of justice or the convenience of the parties." 28 U.S.C. § 1412.

48.     Here, the Court should deny the Movants' request to transfer venue of the Pending Cases because doing so is neither in the interest of justice nor convenient for the parties where, among other things, (i) the Florida Bankruptcy Court, which has found that venue of the Pending Cases before it is proper, can proceed without further delay, (ii) counsel for the parties and creditors are located primarily in the Southern District of Florida or have offices in the Southern District of Florida, and (iii) the **only** assets of PHRGL or ARGL located in the United States are located in the Southern District of Florida. The Movants' request to transfer venue is merely a maneuver by Doronin to shift the Pending Cases to a Court with a track record of rulings favorable to him.

## A. Maintaining the Pending Cases in the Florida Bankruptcy Court Is in the Interest of Justice

49.     As noted by the Second Circuit, "[t]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." *In re Manville Forest Prod.*

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com

*Corp.*, 896 F.2d at 1391. In determining whether a venue transfer is in the interest of justice, the court may consider the following factors: (i) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) whether the interests of judicial economy would be served by the transfer; (iii) whether the parties would be able to receive a fair trial in each of the possible venues; (iv) whether either forum has an interest in having the controversy decided within its borders; (v) whether the enforceability of any judgment would be affected by the transfer; and (vi) whether the original choice of forum should be disturbed. *See Enron*, 317 B.R. at 638–39. The court may also consider "the ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so." *Dunmore*, 380 B.R. at 672 (citation omitted). The relevant factors weigh heavily in favor of maintaining venue of the Pending Cases in the Florida Bankruptcy Court.

50.    <u>First</u>, maintaining the Pending Cases in the Florida Bankruptcy Court promotes the economic and efficient administration of the Pending Cases—the most important "interest of justice" factor, *see Enron*, 274 B.R. at 343—and judicial economy. Transferring the Pending Cases to this Court would result in an unwarranted delay of the Pending Cases. This Court has indicated that its busy calendar will not permit it to hold an evidentiary hearing on the Motion to Transfer Venue until sometime in 2018, effectively staying all proceedings for at least four months. Such a delay is unnecessary, particularly where the Florida Bankruptcy Court can competently determine at an earlier date whether transfer of the Pending Cases is appropriate under the circumstances, which would in turn allow it to address other matters affecting the Pending Cases (such as whether dismissal of such cases is warranted) without delaying administration of the estates. Thus, allowing the Florida Bankruptcy Court to retain the Pending

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com

Cases, as opposed to adding the Pending Cases to the Court's already backlogged docket, promotes judicial economy and the efficient administration of the Pending Cases.

51.    <u>Second</u>, maintaining the cases in the Florida Bankruptcy Court provides for a more economic administration of the Pending Cases. Transferring the Pending Cases to New York would require the Trustee and/or her counsel to travel to New York for hearings involving the PHRGL estate and, as the sole shareholder of ARGL, hearings regarding the ARGL estate. Requiring the Trustee and her counsel to travel to New York will result in additional, unnecessary costs to participate in proceedings in New York that could just as well—and more appropriately—take place where such proceedings properly started: in Miami. *See Dunmore*, 380 B.R. at 672. Additionally, Kasowitz, counsel for Doronin, has an office in Miami and can more easily attend hearings and participate in matters in the Southern District of Florida.

52.    <u>Third</u>, the Movants have not provided compelling reasons as to why the original forum of the Pending Cases should be disturbed. The Movants' arguments that transfer of the Pending Cases to this District serves the interest of justice are based on faulty premises and fall flat. In support of their argument that transfer of the Pending Cases to this Court promotes the economic and efficient administration of the estate, the Movants emphasize the familiarity of the Court and the United States Trustee and United States Attorney for the Southern District of New York with the Dismissed Proceeding. *See* Motion to Transfer Venue ¶ 49. However, this Court's and these parties' knowledge of facts ***specific to the Dismissed Proceeding*** does not provide this Court with a learning curve with respect to the ***Pending Cases***, which have been properly commenced under entirely different circumstances, and which have been overseen to date by the Florida Bankruptcy Court and the Office of the United States Trustee for the Southern District of Florida. If the Movants believe that the Pending Cases are yet another

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com

fraudulent scheme subject to dismissal, they can raise this issue with the Florida Bankruptcy Court, which need not have first-hand familiarity with the Dismissed Proceeding to render a competent, informed, and just ruling on whether the Pending Cases were properly filed.

53.     The Movants raise the additional factor of "whether the intertwined relationship of the debtors requires proceeding in one district," as favoring the interest of justice here. *See* Motion to Transfer Venue ¶¶ 46-47 (quoting *In re Andover Data Servs., Inc.*, 35 B.R. 297, 301 (Bankr. S.D.N.Y. 1983). While this factor might apply if the Pending Cases themselves were pending in different districts, this argument ignores that the Pending Cases involving ARGL and PHRGL are already pending in the same district before the Florida Bankruptcy Court. That an involuntary petition against ARGL was previously dismissed by a court in this District does not justify uprooting both Pending Cases to this Court under this factor.

54.     Lastly, the Movants argue that neither ARGL nor PHRGL nor any party-in-interest would be harmed by transferring venue to New York because "neither ARGL nor PHRGL has any debts, domicile, assets or business in the United States." *Id.* at ¶ 50. This is yet another faulty premise. In fact, the *only* asset of either PHRGL or ARGL located in the United States—a $2,500.00 retainer paid to counsel in Fort Lauderdale, Florida—is located in the Southern District of Florida and has been recovered by the Trustee on behalf of the PHRGL estate. Moreover, the Movants' assertion that the PHRGL Petitioning Creditor, as a Pennsylvania company, would be better served by litigating the case in New York ignores that High-Def: (i) entered into a contract with PHRGL for goods and services to be delivered to PHRGL in Miami, Florida, and (ii) has chosen and does not contest venue before the Florida Bankruptcy Court. As such, the Movants have not demonstrated, let alone by a preponderance of the evidence, that transferring venue to New York better promotes the interest of justice.

32

**B. Maintaining the Pending Cases in the Florida Bankruptcy Court Is More Convenient for the Parties**

55.    In considering whether transfer would promote the convenience of the parties, courts consider the following factors: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor to the court; (iii) proximity of witnesses necessary to the administration of the estate to the court; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result. *See Enron*, 274 B.R. at 343.    Application of these factors strongly indicates that the Florida Bankruptcy Court is most convenient.

56.    First, no creditor contests venue in the Florida Bankruptcy Court and, in fact, High-Def chose to file the involuntary petition in the Southern District of Florida. To transfer the Pending Cases to this Court would ignore the creditor's choice of forum.

57.    Second, both PHRGL and ARGL are BVI companies and, contrary to the Movants' (and Kasowitz's) assertion, ARGL and the Trustee for PHRGL are represented by undersigned counsel, a Miami-based law firm.  Thus, the Movants' assertion that allowing the Pending Cases to proceed in Florida would impose a substantial burden on ARGL and PHRGL by requiring them to engage new professionals is nonsensical.  It is irrelevant that Kasowitz, as *former counsel* to ARGL, has knowledge of the Dismissed Proceeding.  Any factual background that Kasowitz has that it believes is relevant to the Pending Cases will need to be introduced again in the Pending Cases, and the Florida Bankruptcy Court is equally qualified to consider those facts.

58.    Moreover, ARGL's sole director—Madison—is located in the BVI and likewise chose the Florida Bankruptcy Court.  The only identifiable witness that is located outside the Southern District of Florida or that did not choose the Florida Bankruptcy Court is Vladislav

33

Doronin, the only person seeking to transfer the Pending Cases and the target of the Trustee's and ARGL's investigation and possible target of litigation. To allow a potential defendant to forum shop against an appropriate choice of forum by his adversaries would be inequitable and not in the interests of justice.

59.    As noted above, contrary to the Movants' assertions, the only domestic asset of either PHRGL or ARGL was recovered by the Trustee from a law firm located in the Southern District of Florida. That Doronin or Tarek were unaware that such assets existed—and given that Tarek effectively abandoned PHRGL and ARGL, it is likewise not surprising—is not a basis for transferring venue from the district in which those assets are located. To the contrary, neither PHRGL nor ARGL have any assets in this District and thus no connection to this District. In fact, the Movants have expressly and successfully argued to this Court, when seeking dismissal of the Dismissed Proceeding, that ARGL had no assets in the District. Consequently, the interests of justice again favor maintaining the Pending Cases in Florida.

60.    Additionally, as discussed previously, maintaining the cases in the Florida Bankruptcy Court provides for a more economic administration of the Pending Cases based on the location of the Trustee, her counsel, counsel for ARGL, and the Kasowitz Firm's presence in the Miami.[26] Economic administration of the Pending Cases therefore favors maintaining the Pending Cases in Florida.

61.    Finally, the Movants claim that the Trustee is "merely a fiduciary" of the PHRGL estate and thus, "not a party whose convenience has any significance" in the transfer analysis. *See* Motion to Transfer Venue ¶ 55. This, however, ignores that "[t]he analysis regarding the appropriate venue for these cases must focus on the interests and convenience of ***all*** parties . . . ."

---

[26]    The Kasowitz Firm's Miami office is a short nineteen-minute walk from the office of the Trustee and her counsel.

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com

*In re Patriot Coal Corp.*, 482 B.R. 718, 753 (Bankr. S.D.N.Y. 2012). Here, the Trustee has a significant interest as a fiduciary of the PHRGL estate in pursuing potential litigation claims against Doronin that could potentially result in a substantial benefit to the PHRGL estate and its creditors, and which was the primary factor informing her decision to seek chapter 11 relief for ARGL in the first instance.[27] As such, the Court should not, as the Movants suggest, ignore the significant role the Trustee will play should the Pending ARGL Case proceed while analyzing the "convenience of the parties." Moreover, the fact that such litigation may implicate New York law does not support transfer, as the Florida Bankruptcy Court, and bankruptcy courts in general, are capable of interpreting the laws of states other than the ones in which they sit.

**EHRENSTEIN CHARBONNEAU CALDERIN**

By:    */s/ Robert P. Charbonneau*
          Robert P. Charbonneau (*pro hac vice*)
          rpc@ecclegal.com
          Jacqueline Calderin (*pro hac vice pending*)
          jc@ecclegal.com
          501 Brickell Key Drive, Suite 300
          Miami, Florida 33131
          T. 305.722.2002

          *Proposed Counsel for Aman Resorts Group Limited
          and Counsel for Jacqueline Calderin, as Chapter 7
          Trustee for Peak Hotels and Resorts Group Limited*

---

[27]    Indeed, under ARGL's Articles of Association, the Trustee retains a significant role, including the reconstitution of the board as ARGL's sole shareholder ARGL.

35

Robert P. Charbonneau (*pro hac vice pending*)
EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002

*Proposed Counsel for Aman Resorts Group
Limited and Counsel for Jacqueline Calderin,
Chapter 7 Trustee for Peak Hotel Resorts
Group Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | Chapter 11 |
| AMAN RESORTS GROUP LIMITED, | Case No. 16-10517 (SCC) |
| Former Debtor. | |

**DECLARATION OF ROBERT P. CHARBONNEAU IN SUPPORT OF**
***RESPONSE OF AMAN RESORTS GROUP LIMITED AND JACQUELINE CALDERIN,***
***CHAPTER 7 TRUSTEE FOR THE ESTATE OF PEAK HOTEL RESORTS GROUP***
***LIMITED, IN OPPOSITION TO THE MOTION TO TRANSFER VENUE***

ROBERT P. CHARBONNEAU, being duly sworn, deposes and states:

1.      I am a shareholder in the law firm Ehrenstein Charbonneau Calderin ("ECC").

2.      I am a graduate of Boston College Law School and have been a member of

the Florida Bar in good standing since 1992 and admitted to practice in the Southern and

Middle Districts of Florida, the Eleventh Circuit Court of Appeals, and the Supreme Court of

the United States.  For twenty-five years, my practice has almost exclusively been dedicated

to the representation of fiduciaries, including debtors in possession, creditors' committees,

bankruptcy trustees, receivers, and assignees.

3.      ECC is counsel for Jacqueline Calderin, Chapter 7 Trustee (hereinafter, the

"Trustee") in the case of *In re: Peak Hotels Resorts Group, L*, Case Number 17-15041-AJC,

pending in the United States Bankruptcy Court for the Southern District of Florida, Miami

Division (the "PHRGL Case"); and proposed counsel for Aman Resorts Group Limited

("ARGL") in its voluntary Chapter 11 case, Case Number 17-20114-AJC, pending in the

United States Bankruptcy Court for the Southern District of Florida, Miami Division (the

"ARGL Case", and together with the PHRGL Case, the "Florida Cases").

4.    I have read (a) *Aman Resorts Group Limited and Tarek Investments Limited's*

*Motion to Transfer Venue of Related Bankruptcy Cases from the United States Bankruptcy*

*Court for the Southern District of Florida to this Court* [Dkt. No. 93] and the *Declaration of*

*Matthew B. Stein in Support of Motion to Transfer Venue of Related Bankruptcy Cases from*

*the United States Bankruptcy Court for the Southern District of Florida to this Court* [Dkt.

No. 92] in support thereof [ECF #92] (together, the "Kasowitz Motion"), and (b) the

*Response By Aman Resorts Group Limited and Jacqueline Calderin, Chapter 7 Trustee for*

*The Estate of Peak Hotel Resorts Group Limited, in Opposition to the Motion to Transfer*

*Venue* [Dkt No. 104] (the "Response").

5.    This declaration is provided (a) in support of the Response and (b) to correct

numerous factual misrepresentations and misleading allegations caused to be published in

this Court by Attorney Andrew K. Glenn and/or Matthew Stein[1] in the Kasowitz Motion.

6.    In the Kasowitz Motion, counsel has deliberately misled this court by

publishing factual misrepresentations and omitting material facts. I do not ascribe nefarious

motives to counsel. That said, those misrepresentations and omissions, particularly those of

breached agreements and fraud conspiracies, if left unrebutted, could lead this Court (who is

unfamiliar with my professional reputation) to form a less than accurate opinion of my

---

[1] Hereinafter, any collective reference to the attorneys of Kasowitz Benson Torres, LLP maybe referred to as the "Kasowitz Firm" or "Kasowitz Lawyers"

character and legal acumen and perhaps even prejudice my ability to effectively advocate on

behalf of my clients before this Court.

**The representation that I breached an agreement with Mr. Glenn is false.**

7.      In the Kasowitz Motion, counsel represents that I breached an "explicit

promise . . . pending an investigation and further discussion." [2]  I submit that, not only did I

not breach a promise with counsel, but counsel has deliberately failed to advise the Court

that: (a) counsel and I had indeed spoken substantively by phone; (b) that counsel thereafter

emailed me documents purporting to support the notion that the Florida Cases should be

dismissed; (c) that having reviewed said documentation, I provided substantive feedback and

invited further discussion on unresolved points; (d) that I did not receive any substantive

response to mine or agreement to continue discussion; (e) that indeed what I did receive was

a curt 7-word response advising me that the Kasowitz  Firm would be filing a motion to

dismiss the Florida Cases;  and (f) that the document[3] which the Kasowitz Lawyers suggest

breached my agreement to not file substantive papers so long as we were speaking was filed

only _after_ Mr. Glenn's pronouncement that my position is "delusional" and that he would be

proceeding with the filing.

8.      At all times material to this matter, ECC, the Trustee, and I were aware that an

involuntary petition had been brought against ARGL in 2016 in the Southern District of New

York (the "New York Case"); that this Court found that the petitioning creditors in the New

York Case had filed the involuntary petition in bad faith; that the Court dismissed the New

York Case with prejudice on March 29, 2017; that said dismissal order was final and

---

[2] _See, Kasowtiz Motion_ at Page 3.
[3] The purportedly offensive document is _Expedited Motion to Approve Initial Funding Agreement_ [ECF #12 in the
ARGL Case] (the "Initial Financing Motion") filed.

nonappealable; that the Court had retained jurisdiction in the New York Case to adjudicate an attorneys' fees award against the law firm of Brown Rudnick.

9.      Attached hereto as **Exhibit "A"** is an email from Andrew K. Glenn to numerous parties, including myself, dated August 15, 2017 at 3:51 p.m.

10.     Attached hereto as **Exhibit "B"** is my acknowledgement and response to Mr. Glenn at 3:56 p.m. on the same date, wherein I advise Mr. Glenn that I would be calling him that very afternoon.

11.     I called Mr. Glenn at 5:40 p.m. and left a voicemail message.  Attached hereto as **Exhibit "C"** is a chain of emails by and between Mr. Glenn and me between 3:58 p.m. and 5:49 p.m. where Mr. Glenn acknowledges receipt of my voicemail message and I advise that I am available to speak.  Indeed, within minutes after the email exchange on August 15th, Mr. Glenn and I engaged in a telephonic conversation for approximately 30 minutes, during which conversation Mr. Glenn advised me that he intended to file a motion to dismiss the Florida Cases and for sanctions.  During said conversation, Mr. Glenn additionally requested that I not file any substantive papers until "we sort this out."  I responded that while I could not stop administration of the case or make substantive decisions until my client returned to the office from vacation on August 21st, I could and would hold off for a limited time (and in particular not file any litigation claims against his client's entities).

12.      Subsequent to my conversation with Mr. Glenn, I undertook to further investigate the representations in Mr. Glenn's August 15th email, including reviewing the docket in the New York Case.

13.     Attached hereto as **Exhibit "D"** is an email chain: (a) from Mr. Glenn to me dated August 16, 2017 at 10:23 a.m. where again Mr. Glenn advises that he is "ready to

proceed with a motion to dismiss and for sanctions . . ."; (b) my response at 11:21 a.m. that

morning requesting, among other things, certain documents referenced by Mr. Glenn and

inquiring as to the identity of his client, and (c) Mr. Glenn's response at 11:28 a.m. advising

that his client is Vladimir [*sic*] Doronin and his affiliates.

14.     Attached as **Exhibit "E"** is my email to Andrew Glenn of dated August 18,

2017 at 9:58 a.m., wherein I advise Mr. Glenn, among other things, that the Trustee is

scheduled to return from vacation, inviting him to a telephonic discussion by and among the

Trustee, myself and any of his colleagues, and also reiterating that, as promised, we have

taken no action of any significance until we have had an opportunity to regroup and have

further discussions.

15.     Attached as **Exhibit "F"** is my email to Messrs. Glenn and Stein sent later

that day at 6:38 p.m., wherein I provide my substantive view on some of the issues

previously raised by the Kasowitz Lawyers and again reiterating that "I will not take any

material action in the case ***while we are still talking*,** and I will not pursues any litigation

claims until we have had an opportunity to meet and confer about those issues"[4] (emphasis

supplied).

16.     Attached as **Exhibit "G"** is Mr. Glenn's succinct and unequivocal response:

"**We are filing**[5]. **Your position is delusional**."

17.     Mr. Glen's message was clear and unambiguous, certainly signaling the end

of discussions toward a consensual resolution and the beginning of a contested matter by

virtue of the threatened motion(s) to dismiss the Florida Cases.

---

[4] No litigation claims have been brought to date.
[5] During our various exchanges, the Kasowitz Lawyers have advised both verbally and in writing that they intended to file a motion (or motions) to dismiss the Florida Cases.  At no time, either verbally or in writing, did any of the Kasowitz Lawyers advise that they would be seeking a motion to transfer venue or that they believed that venue of the Florida Cases is proper before any other court.

18.     On August 20, 2017, two days after Mr. Glenn advised that he would be

proceeding with Court filings, ECC, on behalf of ARGL, filed the Initial Funding Motion.

**The suggestion that ECC and/or the Trustee are complicit in perpetuating a
fraud with Omar Amanat is patently false.**

19.     Attached hereto as **Exhibit "H"** is a copy of the *Trustee's Application to

Employ Robert P. Charbonneau, Esq. and the Law Firm of Ehrenstein Charbonneau*

*Calderin as Attorneys for Chapter 7 Trustee, Nunc Pro Tunc to May 22, 2017* [ECF # 17 in

the PHRGL Case] (the "Trustee's Application"), along with the annexed *Affidavit of*

*Disinterestedness and Rule 2016 Disclosures of Proposed Attorney for Chapter 7 Trustee*

(the "Charbonneau Affidavit").

20.     Other than the limited exchanges voluntarily disclosed in the Trustee's

Application and Charbonneau Affidavit, neither I nor any member or personnel of ECC has

ever met or had additional contact with Mr. Amanat prior to the filing of the PHRGL Case.

21.     The Kasowitz Firm suggests that the limited interaction with Mr. Amanat

voluntarily disclosed in the Charbonneau Affidavit is "a highly suspicious fact in itself". [6]

22.     While the Kasowitz Motion is not bereft of adjectives such as "suspicious"

and "shocking" in promoting an interesting, albeit unfounded, tale of conspiracy and fraud by

my firm and my client, the Kasowitz Motion is notably lacking in ascribing a motive to

officers of the Court for perpetuating the alleged fraud.

23.     Attached as **Exhibit "I"** is a copy of the involuntary petition filed in the

PHRGL Case by petitioning creditor, High-Def Zone, Inc.

24.     Attached as **Exhibit "J"** is a copy of the *Notice of Appointment of Trustee*

issued by the Office of the United States Trustee [ECF #13 in the PHRGL Case].

---

[6] *See* Kasowitz Motion at ¶ 19.

25.     Attached as **Exhibit "K"** is a copy of the timely-filed proof of claim High-Def Zone, Inc. (the petition creditor in the PHRGL Case). The Kasowitz Motion misstates that the invoice attached in support of High-Def Zone, Inc.'s proof of claim predates PHRGL's date of incorporation. Indeed the invoice attached to the proof of claim is dated January 17, 2014.

26.     I am not aware of, nor has anyone provided to me or the Trustee, evidentiary support to rebut the *prima facie* validity of the petitioning creditor's claim.

27.     I am not aware, nor has anyone provided to me or the Trustee, evidentiary support for the Kasowitz Firm's allegation that High-Def Zone, Inc. is affiliated with, involved with, related to, or otherwise connected to Omar Amanat. More importantly, I have inquired of High-Def Zone, Inc.'s counsel as to the nature of the petitioning creditor's claim and have been advised that the claim relates to the purchase and installation of electronic equipment for PHRGL by High-Def Zone, Inc. that was delivered and installed but for which no payment was received.

28.     Attached hereto as **Composite Exhibit "L"** is a copy of *Decision and Order* dated January 30, 2017 in the case of *Sustainable PTE Ltd., et al., vs. Peak Venture Partners LLC, et al.,* issued by the Supreme Court of the State of New York New York County, Case No. 650340/2015; along with Notices of Motion to Dismiss the Complaint filed by the Kasowitz firm on behalf of Mr. Doronin and Alan Djanoply submitted to: (a) demonstrate that the Kasowitz Firm is aware of the asserted claim against ARGL and PHRGL even as recently as January 2017, and (b) that the Court in that matter found that the court lacked personal jurisdiction over PRHGL and ARGL as neither had assets, operations, or conducted any business in New York.

29.    Attached hereto as **Exhibit M** is the order for relief entered in the PHRGL

Case on May 18, 2017 [ECF #11 in the PHRGL Case].

30.    Attached hereto as **Exhibit N** is the *Order Determining Venue and*

*Jurisdiction are Proper* dated June 7, 2017 [ECF #18 in the PHRGL Case].

31.    This ends my declaration.


I declare under penalty of perjury that, to the best of my knowledge and after

reasonable inquiry, the foregoing is true and correct.

Date: August 30 , 2017                    _____

                                          Robert P. Charbonneau, Attorney at Law

# Exhibit "A"

## Jackie Betancourt

| | |
|---|---|
| **From:** | Andrew K. Glenn <AGlenn@kasowitz.com> |
| **Sent:** | Tuesday, August 15, 2017 3:51 PM |
| **To:** | aresty@icloud.com; Robert P. Charbonneau; Jacqueline Calderin |
| **Cc:** | Paul M. O'Connor III; Jonathan E. Minsker; Matthew B. Stein |
| **Subject:** | Peak Resorts/Aman Group Bankruptcy Filings -- SD. Fla |
| **Attachments:** | ARGL SDNY Docket Report.pdf |

We represent Aman Resorts Group.

You will be receiving a more formal letter soon, but we have reached out and left you messages in the interest of time and urgency.

As you will see from the attached docket, Omar Amanat, who is currently under indictment for securities fraud, orchestrated a fraudulent bankruptcy filing in the Southern District of New York, which filing resulted in Brown Rudnick, as purported counsel to Aman Group Resorts Limited, agreeing to pay my client $325,000 in legal fees. Indeed, the Aman Group Resorts petition filed in the last week lists the same address as the lawyer that represented the petitioning creditors in New York as the principal place of business of Aman Resorts (see the attached docket).

The filing in the Southern District of Florida are copycat filings of the Southern District of New York case. Among other defects, the parties listed as creditors do not have valid claims, appear to be affiliated with Omar Amanat, and failed to give our client, the rightful owner of Aman Resorts, notice of the filing.

I am happy to provide you with additional information in the interest of preventing further damage to my client, and to ensure that you are not inadvertently caught in this fraud.

Nothing herein is a waiver of any of my client's rights, claims and defenses, all of which are reserved.

Andrew

Andrew K. Glenn
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1747
Fax. (212) 835-5047
AGlenn@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

1

EXHIBIT "B"

# Exhibit "B"

## Jackie Betancourt

| | |
|---|---|
| **From:** | Andrew K. Glenn <AGlenn@kasowitz.com> |
| **Sent:** | Tuesday, August 15, 2017 3:58 PM |
| **To:** | Robert P. Charbonneau |
| **Cc:** | aresty@icloud.com; Jacqueline Calderin; Paul M. O'Connor III; Jonathan E. Minsker; Matthew B. Stein |
| **Subject:** | RE: Peak Resorts/Aman Group Bankruptcy Filings -- SD. Fla |

Thank you, and I hope your father is ok.

Andrew

**From:** Robert P. Charbonneau [mailto:RPC@ecclegal.com]
**Sent:** Tuesday, August 15, 2017 3:56 PM
**To:** Andrew K. Glenn <AGlenn@kasowitz.com>
**Cc:** aresty@icloud.com; Jacqueline Calderin <jc@ecclegal.com>; Paul M. O'Connor III <POconnor@kasowitz.com>; Jonathan E. Minsker <JMinsker@kasowitz.com>; Matthew B. Stein <MStein@kasowitz.com>
**Subject:** Re: Peak Resorts/Aman Group Bankruptcy Filings -- SD. Fla

**External Email**

Acknowledged Andrew. I am currently in the hospital with my father taking care of his arrangements. After a meeting with nursing staff that I have at 4:00 I will be heading back to my office and will call you.

Sent from my iPhone

On Aug 15, 2017, at 3:51 PM, Andrew K. Glenn <AGlenn@kasowitz.com> wrote:

> We represent Aman Resorts Group.
>
> You will be receiving a more formal letter soon, but we have reached out and left you messages in the interest of time and urgency.
>
> As you will see from the attached docket, Omar Amanat, who is currently under indictment for securities fraud, orchestrated a fraudulent bankruptcy filing in the Southern District of New York, which filing resulted in Brown Rudnick, as purported counsel to Aman Group Resorts Limited, agreeing to pay my client $325,000 in legal fees. Indeed, the Aman Group Resorts petition filed in the last week lists the same address as the lawyer that represented the petitioning creditors in New York as the principal place of business of Aman Resorts (see the attached docket).
>
> The filing in the Southern District of Florida are copycat filings of the Southern District of New York case. Among other defects, the parties listed as creditors do not have valid claims, appear to be affiliated with Omar Amanat, and failed to give our client, the rightful owner of Aman Resorts, notice of the filing.
>
> I am happy to provide you with additional information in the interest of preventing further damage to my client, and to ensure that you are not inadvertently caught in this fraud.
>
> Nothing herein is a waiver of any of my client's rights, claims and defenses, all of which are reserved.

1

Andrew

Andrew K. Glenn
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel.  (212) 506-1747
Fax. (212) 835-5047
AGlenn@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of
this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient,
please notify the sender by e-mail and delete this e-mail without making a copy.

<ARGL SDNY Docket Report.pdf>

# Exhibit "C"

## Jackie Betancourt

| | |
|---|---|
| **From:** | Andrew K. Glenn <AGlenn@kasowitz.com> |
| **Sent:** | Tuesday, August 15, 2017 5:49 PM |
| **To:** | Robert P. Charbonneau |
| **Subject:** | Re: Peak Resorts/Aman Group Bankruptcy Filings -- SD. Fla |

Will call back.

> On Aug 15, 2017, at 5:45 PM, Robert P. Charbonneau <RPC@ecclegal.com> wrote:
>
> I can actually talk now if that's OK
>
> Sent from my iPhone
>
>> On Aug 15, 2017, at 5:42 PM, Andrew K. Glenn <AGlenn@kasowitz.com> wrote:
>>
>> I got it.  Let me know when you can talk.  Tomorrow am is fine if you want.
>>
>> On Aug 15, 2017, at 5:41 PM, Robert P. Charbonneau <RPC@ecclegal.com<mailto:RPC@ecclegal.com>>
wrote:
>>
>> I left you a voicemail
>>
>> Sent from my iPhone
>>
>> On Aug 15, 2017, at 3:58 PM, Andrew K. Glenn <AGlenn@kasowitz.com<mailto:AGlenn@kasowitz.com>>
wrote:
>>
>> Thank you, and I hope your father is ok.
>>
>> Andrew
>>
>> From: Robert P. Charbonneau [mailto:RPC@ecclegal.com]
>> Sent: Tuesday, August 15, 2017 3:56 PM
>> To: Andrew K. Glenn <AGlenn@kasowitz.com<mailto:AGlenn@kasowitz.com>>
>> Cc: aresty@icloud.com<mailto:aresty@icloud.com>; Jacqueline Calderin
<jc@ecclegal.com<mailto:jc@ecclegal.com>>; Paul M. O'Connor III
<POconnor@kasowitz.com<mailto:POconnor@kasowitz.com>>; Jonathan E. Minsker
<JMinsker@kasowitz.com<mailto:JMinsker@kasowitz.com>>; Matthew B. Stein
<MStein@kasowitz.com<mailto:MStein@kasowitz.com>>
>> Subject: Re: Peak Resorts/Aman Group Bankruptcy Filings -- SD. Fla
>>
>>
>> **External Email**
>>
>> _____

1

# Exhibit "D"

## Jackie Betancourt

| | |
|---|---|
| **From:** | Robert P. Charbonneau |
| **Sent:** | Wednesday, August 16, 2017 11:37 AM |
| **To:** | Andrew K. Glenn |
| **Cc:** | Paul M. O'Connor III; Jonathan E. Minsker; Matthew B. Stein; JOEL ARESTY |
| **Subject:** | Re: Peak/ARGL |

I think what would be most helpful for me would be a copy of the settlement agreement and consent order that was entered by the London Court by and between Russell Crumpler, as liquidator for PHRL, and Tarek. The implication in the letter that was sent to me yesterday by Herbert Smith Freehills is that PHRL pursued, derivatively, claims against Tarek, and that the settlement agreement and consent order have a res judicata effect. If that's true that's obviously going to influence the advice I give to my client. If you can get me a copy of that I would be most grateful.

Sent from my iPhone

On Aug 16, 2017, at 11:28 AM, Andrew K. Glenn <AGlenn@kasowitz.com> wrote:

> We represent Vladmir Doronin and his affiliates.  You can see from the pleadings in the New York action as to who those parties are.
>
> Please let me know what you would like copies of.
>
> As of this point, we believe, at a minimum, that the petitioning creditor is subject to sanctions, and all parties that have acted in concert with the petitioning creditor.  Whether that includes Mr. Aresty, whom I'm copying now, the trustee and your firm remains to be seen.
>
> I know you are interested in reviewing the litigation in London, but please make no mistake:  Omar Amanat orchestrated this bankruptcy filing.  Mr. Amanat is a serial fraudster, as any Google search would indicate (let alone his criminal indictment on securities fraud).  Your conflicts check specifically references the New York bankruptcy and Mr. Amanat.
>
> The claims asserted in this bankruptcy filing, like the one in New York, are fraudulent.
>
> If this issue is rectified immediately, it's possible that whatever damage has been caused will be ameliorated.  If it is not, we will pursue the same remedies that we pursued in New York.
>
> Andrew
>
> **From:** Robert P. Charbonneau [mailto:RPC@ecclegal.com]
> **Sent:** Wednesday, August 16, 2017 11:21 AM
> **To:** Andrew K. Glenn <AGlenn@kasowitz.com>
> **Cc:** Paul M. O'Connor III <POconnor@kasowitz.com>; Jonathan E. Minsker <JMinsker@kasowitz.com>; Matthew B. Stein <MStein@kasowitz.com>
> **Subject:** RE: Peak/ARGL
>
> \*\*External Email\*\*
>
> Good Morning Andrew,

1

I have been going through the New York docket and also received correspondence from counsel in London of which I am sure you are aware. The letter makes reference to London litigation and the *res judicata* effect of a settlement agreement and consent order. May I get a copy of that please?

As I indicated during our call yesterday, the only thing I am interested in is the truth, and any assistance you can lend in my effort to get at it would be appreciated. The other timing challenge that I have which we also discussed yesterday is that my client is on vacation in the Pacific Northwest on a camping trip and I am literally unable to contact her until her return over the upcoming weekend. While I can make recommendations to her as my client, Florida Bar Rules do not permit me to act unilaterally without her input and consent, so I'd ask for a little patience in that regard.

Also, I was a little unclear from your email yesterday and our conversation about whom you represent, can you tell me? Also, you mentioned sanctions, the threat of which I always take very seriously. So, if you believe either I or my client's conduct has been sanctionable, can you tell me which specific actions, and why you believe they are sanctionable? Rule 9011 has a safe harbor component to it, and if I agree with you I may do as you ask voluntarily, and without the need for further motion practice, but again, I want to be able to advise my client on an informed basis.

I should be around most of the day today for further discussions as you see fit.

---

**From:** Andrew K. Glenn [mailto:AGlenn@kasowitz.com]
**Sent:** Wednesday, August 16, 2017 10:23 AM
**To:** Robert P. Charbonneau
**Cc:** Paul M. O'Connor III; Jonathan E. Minsker; Matthew B. Stein
**Subject:** Peak/ARGL

Robert,

Please let us know where things stand. My client is ready to proceed with a motion to dismiss and for sanctions unless this matter is immediately resolved.

Thank you.

Andrew K. Glenn
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1747
Fax. (212) 835-5047
AGlenn@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

# Exhibit "E"

**Jackie Betancourt**

| | |
|---|---|
| **From:** | Robert P. Charbonneau |
| **Sent:** | Friday, August 18, 2017 9:58 AM |
| **To:** | 'Andrew K. Glenn' |
| **Cc:** | Paul M. O'Connor III; Jonathan E. Minsker; Matthew B. Stein; Matthew Petrie |
| **Subject:** | RE: Peak/ARGL |

Thanks Andrew.

I have received the settlement agreement and consent order, and I'm still reviewing. As I indicated in prior emails, my client returns to the Miami area tomorrow and I intend to discuss with her then. As I explained to Kevin Kilgour, Florida Bar Rules don't permit me to take unilateral action without the client, so I'd ask you to hang in there and allow me to confer with the client about dismissing the Chapter 11 case.

As to the Chapter 7, after discussing with my client I'll need to have a conversation with the UST before initiating a motion to dismiss that case. Again, my suggestion is that you and I and my client, as well as anyone else you'd like to have join, get on a call Monday morning to talk this through, and then we can decide on a course of action. As I promised on the phone Tuesday, we've taken no action of any significance in the Chapter 11 case.

**From:** Andrew K. Glenn [mailto:AGlenn@kasowitz.com]
**Sent:** Friday, August 18, 2017 9:35 AM
**To:** Robert P. Charbonneau
**Cc:** Paul M. O'Connor III; Jonathan E. Minsker; Matthew B. Stein; Matthew Petrie
**Subject:** RE: Peak/ARGL

As I understand it, you received the settlement yesterday. As you can see, the settlement resolved the dispute that you now wish to bring. If you've reviewed the pleadings in the SDNY, you can clearly see that the Florida bankruptcy proceedings have followed the exact pattern as the SDNY bankruptcy proceedings, all of which have been orchestrated by Omar Amanat. This is not going to end well (see the outcome in the SDNY) if immediate curative action is not taken.

We need to know by noon today whether you are going to dismiss (and unwind any actions taken in the BVI) as our clients are in Eastern Europe.

All rights continue to be reserved. Thank you.

Andrew

**From:** Robert P. Charbonneau [mailto:RPC@ecclegal.com]
**Sent:** Thursday, August 17, 2017 11:24 AM
**To:** Andrew K. Glenn <AGlenn@kasowitz.com>
**Cc:** Paul M. O'Connor III <POconnor@kasowitz.com>; Jonathan E. Minsker <JMinsker@kasowitz.com>; Matthew B. Stein <MStein@kasowitz.com>; Matthew Petrie <MAP@ecclegal.com>
**Subject:** RE: Peak/ARGL

1

**External Email**

Good Morning Andrew,

Just following up on our email exchanges from yesterday. I had asked for the pleadings in the London litigation that you or your colleagues at Herbert Smith Freehills had referenced, and which were said to have preclusive effect to the claims that have been generally described in the Chapter 7 case in the S.D.Fla. As I hope I have imparted to you, I'm interested in getting to the bottom of all of this, and want to confirm with you if the attached is what you and the folks at HSF are referring to, or is there something else I should be looking at.

Stepping out to an early lunch appointment and then court in another case, but I'll be generally available this afternoon. Thanks.

**From:** Andrew K. Glenn [mailto:AGlenn@kasowitz.com]
**Sent:** Wednesday, August 16, 2017 10:23 AM
**To:** Robert P. Charbonneau
**Cc:** Paul M. O'Connor III; Jonathan E. Minsker; Matthew B. Stein
**Subject:** Peak/ARGL

Robert,

Please let us know where things stand. My client is ready to proceed with a motion to dismiss and for sanctions unless this matter is immediately resolved.

Thank you.

Andrew K. Glenn
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1747
Fax. (212) 835-5047
AGlenn@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

# Exhibit "F"

## Jacqueline Calderin

| | |
|---|---|
| **From:** | Robert P. Charbonneau |
| **Sent:** | Friday, August 18, 2017 6:38 PM |
| **To:** | 'Matthew B. Stein'; Andrew K. Glenn |
| **Cc:** | Paul M. O'Connor III; Jonathan E. Minsker; Matthew Petrie |
| **Subject:** | RE: Peak/ARGL |
| **Attachments:** | 0009 - Application to Employ Robert P. Charbonneau, Esq. and the Law Fir....pdf; 0010 - Ch 11 Case Management Summary  Filed by Debtor Aman Resorts Group....pdf; 0011 - Ex Parte  Motion to Amend Re_ 1 Voluntary Petition (Chapter 11) t....pdf |

Gentlemen,
I have had an opportunity to review the information that either you or your colleagues have provided to me, or to which you have directed me in various dockets.  I have the following observations and concerns.

I have not seen any indicia so far that Hi-Def's claim is not legitimate. The fact that you allege that the mother of the owner of Hi-Def may come from the same town in New Jersey as Mr. Amanat, alone, is not enough, for me at least, to  delegitimize the claim. If there is more, I am all ears.  From reading the New York docket, I can certainly understand how your client feels about Mr. Amanat, but from the chapter 7 trustee's perspective in the PHRGL case, the alleged fraud is not yet apparent.

I also reviewed the settlement agreement and consent order in the London litigation. If I understand the document correctly, it appears that one of the parents of PHRGL pursued a double derivative action on behalf of ARGL against your clients. That parent, PHRL, was eventually liquidated in the BVI, and Mr. Crumpler was appointed as the liquidator. It appears that Mr. Crumpler substituted into the action, obtained an investigation budget to review the claims, and then settled it, and the consent order was entered. I will admit that I am not up on English law, but if principles of *res judicata* there are the same here, we may have an issue regarding identity of parties, and it does not appear that the matter was actually litigated for purposes of *res judicata*, but I'm sure there's a lot more information to be reviewed.

I am attaching a number of pleadings I have filed in the Chapter 11 case that are purely administrative in nature, and comport with my prior representation to Andrew, and now to you Matt, to not take any material action in the case while we are still talking, and I will not pursue any litigation claims until we have had an opportunity to meet and confer about those issues. As I said before, if you can convince me to my satisfaction and that of my client that we are mistaken, then we will act accordingly.

**From:** Matthew B. Stein [mailto:MStein@kasowitz.com]
**Sent:** Friday, August 18, 2017 11:55 AM
**To:** Robert P. Charbonneau; Andrew K. Glenn

# Exhibit "G"

## Jacqueline Calderin

| | |
|---|---|
| **From:** | Robert P. Charbonneau |
| **Sent:** | Sunday, August 27, 2017 5:31 PM |
| **To:** | Jacqueline Calderin |
| **Subject:** | Fwd: Peak/ARGL |

Sent from my iPhone

Begin forwarded message:

> **From:** "Robert P. Charbonneau" <RPC@ecclegal.com>
> **Date:** August 19, 2017 at 9:49:53 AM EDT
> **To:** "Andrew K. Glenn" <AGlenn@kasowitz.com>
> **Cc:** "Matthew B. Stein" <MStein@kasowitz.com>, "Paul M. O'Connor III"
> <POconnor@kasowitz.com>, "Jonathan E. Minsker" <JMinsker@kasowitz.com>, Matthew
> Petrie <MAP@ecclegal.com>
> **Subject: Re: Peak/ARGL**
>
> Nice. Very professional.
>
> Sent from my iPhone
>
>
> On Aug 18, 2017, at 8:24 PM, Andrew K. Glenn <AGlenn@kasowitz.com> wrote:
>
>> We are filing.  Your position is delusional.
>>
>>
>> On Aug 18, 2017, at 6:46 PM, Robert P. Charbonneau
>> <RPC@ecclegal.com<mailto:RPC@ecclegal.com>> wrote:
>>
>>
>> I almost forgot, yes, I do not believe any action is being taken in the BVI matter
>> as yet.  I don't have the transcripts of any of the hearings as I did not order them.
>>
>> From: Matthew B. Stein [mailto:MStein@kasowitz.com]
>> Sent: Friday, August 18, 2017 11:55 AM
>> To: Robert P. Charbonneau; Andrew K. Glenn
>> Cc: Paul M. O'Connor III; Jonathan E. Minsker; Matthew Petrie
>> Subject: RE: Peak/ARGL
>>
>>
>> Robert,

1

EXHIBIT "H"

# Exhibit "H"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*

PEAK HOTELS AND RESORTS GROUP,        Case No.: 17-15041-AJC
LTD,
                                                              Chapter 7

_____Debtor._____ /

### TRUSTEE'S APPLICATION TO
### EMPLOY ROBERT P. CHARBONNEAU, ESQ. AND
### THE LAW FIRM OF EHRENSTEIN CHARBONNEAU CALDERIN AS
### ATTORNEYS FOR CHAPTER 7 TRUSTEE *NUNC PRO TUNC* TO MAY 22, 2017

### (Hearing Requested)

Jacqueline Calderin, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Peak Hotels and Resorts Group, LTD (the "Debtor") pursuant to Sections 327 and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), moves for entry of an order authorizing the Trustee to employ Robert Paul Charbonneau ("Charbonneau")  and the law firm of Ehrenstein Charbonneau Calderin ("ECC", and when Charbonneau and ECC are referred to together,  the "Applicant") to represent the Trustee *nunc pro tunc* to May 22, 2017 (the "Application") in the above-captioned case. In support of the Application, the Trustee states as follows:

1.       On April 24, 2017 (the "Petition Date"), High-Def Zone, Inc. (the "Petitioner") initiated this matter by filing of an Involuntary Petition against the Debtor for relief under Chapter 7 of the Bankruptcy Code [ECF# 1] (the "Involuntary Petition").

2.       On April 25, 2017, the Court issued the *Summons to Debtor in Involuntary Case* [ECF# 3] (the "Involuntary Summons"), and the Petitioner served the Summons on the Debtor. Accordingly, the deadline for the Debtor to answer the Involuntary Summons was May 16, 2017.

3.     On May 18, 2017, the Court entered the Order for Relief under chapter 7 of the Bankruptcy Code [ECF #11] (the "Order for Relief"), based upon the Debtor's failure to file any timely pleading or defense to the Involuntary Petition.

4.     On May 22, 2017, Jacqueline Calderin was appointed as Chapter 7 Trustee [ECF# 13].

5.     It is necessary that the Trustee employ an attorney to represent the Trustee in this case to perform ordinary and necessary legal services required in the administration of the estate.

6.     Neither Charbonneau nor ECC holds nor represents any interest adverse to the estate, and the Trustee believes that the employment of ECC is in the best interests of the estate.

7.     Except as disclosed in the Affidavit of Robert P. Charbonneau (the "Affidavit") attached to this Application as **Exhibit A,** Charbonneau and ECC are disinterested as required by 11 U.S.C. § 327(a) and as set forth in the verified statement required under Bankruptcy Rule 2014.

6.     ECC has agreed to be compensated in accordance with 11 U.S.C. § 330.

7.     The Trustee believes that Charbonneau and ECC are qualified to practice in the Bankruptcy Court and are qualified to advise the Trustee on her relations with and responsibilities to the Debtor, creditors, and other parties in interest.

**WHEREFORE** the Trustee respectfully requests an Order (a) authorizing the Trustee to employ Robert Paul Charbonneau and the law firm of Ehrenstein Charbonneau Calderin to represent the Trustee pursuant to 11 U.S.C. §§ 327 and 330 *nunc pro tunc* to May 22, 2017, and (b) granting such other relief as the Court deems just.

DATED: June 2, 2017

By:     /s/ Jacqueline Calderin
        Jacqueline Calderin, Trustee
        936 SW 1st Avenue, #880
        Miami, Florida 33130
        T. 786.369.8440     F. 786.369.8523

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case on June 2 , 2017.

> *I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).*

EHRENSTEIN CHARBONNEAU CALDERIN
*Proposed Counsel for Chapter 7 Trustee*
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002
www.ecclegal.com

By: _____

Robert P. Charbonneau
Florida Bar No: 968234
rpc@ecclegal.com

**Exhibit A**
**(Affidavit)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*

PEAK HOTELS AND RESORTS GROUP,               Case No.: 17-15041-AJC
LTD,
                                             Chapter 7

      Debtor.                      /

## AFFIDAVIT OF DISINTERESTEDNESS AND RULE 2016 DISCLOSURES OF PROPOSED ATTORNEY FOR CHAPTER 7 TRUSTEE

STATE OF FLORIDA          )
                               ) SS:
COUNTY OF MIAMI-DADE    )

      **BEFORE ME**, the undersigned authority, personally appeared ROBERT PAUL CHARBONNEAU, in Miami, Florida, who after being duly sworn, deposes and says as follows:

      1.      I am an attorney admitted to practice in Florida, and the United States District Court for the Southern District of Florida.

      2.      I am a Partner at the Law Firm of EHRENSTEIN CHARBONNEAU CALDERIN ("ECC"), with offices located at 501 Brickell Key Drive, Suite 300, Miami, Florida 33131. I am familiar with the matters set forth in this Affidavit in support of the *Trustee's Application to Employ Robert Paul Charbonneau and the Law Firm of Ehrenstein Charbonneau Calderin as Attorneys for Chapter 7 Trustee Nunc Pro Tunc to May 22, 2017* (the "Application").

      3.      Unless otherwise stated, this Declaration is based upon facts of which upon which I have personal knowledge.

      4.      In support of the Application, I disclose the following:

5.     In preparing this Declaration, I reviewed (i) lists of all of the creditors[1] and interested parties of the Debtor[2] as provided by the Involuntary Petition; and (ii) results of UCC searches performed in respect of the Debtor.  I compared the information obtained with the information contained in our law firm's client and adverse party conflict check index system. The facts stated in this Affidavit as to the relationship between other lawyers in our law firm and the Debtor, the Debtor's creditors, the United States Trustee, other persons employed by the Office of the United States Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code are based on the results of my review of our firm's conflict check index system.  Specifically, I have caused to be conducted (i) a computer search of our firm's records in respect of all of the names referred to in the first sentence of this paragraph , and (ii) disseminated a written request for information to all of the attorneys in our firm regarding connections to the Debtor and the creditors of the Debtor.  Based on the searches described in paragraph 4 above, I disclose that in January 2016 ECC ran a conflict check for purposes of representing Peak Venture Partners, LLC and/or Omar Amanat in connection with a dispute against Vladislav Doronin and Capital Group.  In connection with this conflict check, partners Christopher Spuches and Robert Charbonneau reviewed materials forwarded by Mr. Amanat.  These materials were in the public record, not attorney-client-privileged, not confidential, and not proprietary in nature. Neither Charbonneau nor ECC were ever retained by Peak Venture Partners, LLC or Omar Amanat.

---

[1] As of the date of filing the instant Application, the Debtor has failed to provide a list of creditors.  The deadline by which the Debtor must file such list was May 25, 2017.  Accordingly once the Debtor provides a list of creditors, the undersigned will supplement this affidavit as necessary.
[2]  All capitalized terms not expressly defined herein shall bear the meaning ascribed to them in the Application.

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com**

6.      Subsequently, the firm ran a second conflict check to represent Peak Venture Partners, Carpentaria Management Services, LTD, and Omar Amanat as petitioning creditors ("Petitioning Creditors") in the involuntary case of *In re Aman Resorts Group Ltd.*, Case Number 16-10517, and in the Adversary Proceeding of *Aman Resorts Group Ltd. v.  Pontwelly Holding Co. Ltd. and A.H. Overseas Ltd*., Case Number 16 – 10517.  While an engagement letter was prepared, it was never signed by Petitioning Creditors, neither I nor ECC ever made an appearance in any proceeding on behalf of any one or all of the Petitioning Creditors, and neither I nor ECC ever formed an attorney-client relationship with anyone in connection with the subject matter(s) of the engagement letter that ECC prepared.

7.      In the course of ECC's review of materials provided by Omar Amanat and Petitioning Creditors, ECC never came into possession of any proprietary materials that would serve to disqualify it as counsel to the Trustee in this bankruptcy case.

8.      Neither I nor our firm has or will represent any other entity in connection with this case.

9.      Based on the foregoing disclosures, the Trustee believes that ECC is still a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) and as required by § 327(a).  However, in an abundance of caution, ECC brings this matter to the attention of the Court and creditors.  Accordingly, the Trustee seeks authorization to employ Robert Paul Charbonneau and ECC as the Trustee's counsel.

10.     ECC's client and adverse party conflicts check system is comprised of records regularly maintained in the course of business of the firm, and it is the regular practice of the firm to make and maintain these records.  It reflects entries that are noted in the system at the time.  The information becomes known by persons whose regular duties include recording and

3

maintaining this information.  I regularly use and rely upon the information contained in the system in the performance of my duties with the law firm and in my practice of law.

11.	Other than as set forth in this declaration, ECC neither holds nor represents any interest adverse to the Debtors and is a "disinterested person" within the scope and meaning of Section 101 (14) of the Bankruptcy Code.

12.	ECC has represented, and will in the future represent, many different clients with various business interests in numerous industries.

13.	Neither I nor our firm has or will represent any other entity in connection with this case, and neither I nor our firm will accept any fee from any other party or parties in this case, unless otherwise authorized by the Court.

14.	ECC is not a creditor of, and asserts no prepetition claim against, the Debtor.

15.	The professional fees and costs incurred by ECC in the course of its representation of the Trustee in this case shall be subject in all respects to the application and notice requirements of 11 U.S.C. §§ 327, 330 and 331 and Fed. R. Bankr. P. 2014 and 2016.

16.	The hourly rates for attorneys at ECC range from $195.00 to $575.00.  My current hourly rate is $575.00.  The hourly rates for the para-professionals at ECC range from $90.00 to $200.00.  ECC typically adjusts its hourly rates annually on January 1st.

17.	There is no agreement of any nature, other than the shareholder agreement of our firm, as to the sharing of any compensation to be paid to the firm.  No promises have been received by ECC nor any member, or associate thereof as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

18.	No attorney in the firm has any other interest, direct or indirect, that may be affected by the proposed representation.

4

19.    Except as forth herein, no attorney in our firm has had or presently has any

material connection with the captioned Debtor, the Debtor's creditors, any other party in interest

or their respective attorneys and accountants, the United States Trustee, or any person employed

in the Office of the United States trustee, on any matters in which the firm is to be engaged,

except that I, our law firm, and our attorneys (i) may have appeared in the past, and may appear

in the future, in other cases in which one or more of said parties may be involved; and (ii) may

represent or may have represented certain of the Debtor's creditors in matters unrelated to this

case. Jacqueline Calderin, Esq., a principal of ECC, is a Chapter 7 panel trustee. However, ECC

does not believe this relationship with the Office of the United States Trustee creates a conflict of

interest or an appearance of impropriety. Based upon a search of the firm's records as described

above, our firm does not represent any entity in a matter which would constitute a conflict of

interest or impair the disinterestedness of ECC.

20.    This concludes my Declaration.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Robert P. Charbonneau
Florida Bar No: 968234

**SWORN TO AND SUBSCRIBED** before me this ___ day of June 2017.

_____
NOTARY PUBLIC STATE OF FLORIDA
A/LARGE

ESBELIA JIMENEZ
Commission # FF 911965
My Commission Expires
August 23, 2019

NOTARY PUBLIC, STATE OF FLORIDA
Print Name: Esbelia Jimenez
Commission No. FF911965
My Commission Expires: August 23, 2019

5

EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.ecclegal.com

**Exhibit B**
**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*

PEAK HOTELS AND RESORTS GROUP,     Case No.: 17-15041-AJC
LTD,

                                     Chapter 7

_____Debtor._____ /

**ORDER GRANTING *EX PARTE* APPLICATION**
**TO EMPLOY ROBERT P. CHARBONNEAU, ESQ. AND THE**
**LAW FIRM OF EHRENSTEIN CHARBONNEAU CALDERIN AS**
**ATTORNEYS FOR CHAPTER 7 TRUSTEE *NUNC PRO TUNC* TO MAY 22, 2017**

THIS MATTER came before the Court upon the Trustee's *Ex-Parte Application to Employ Robert P. Charbonneau, Esq. and the Law Firm of Ehrenstein Charbonneau Calderin as Attorneys for the Chapter 7 Trustee Nunc Pro Tunc to May 22, 2017* [ECF#    ] (the "Application"), and having noted the disclosures made therein, finding that Robert P. Charbonneau, Esq. and the Law Firm of Ehrenstein Charbonneau Calderin are disinterested as defined in 11 U.S.C. § 101(14) and as required by 11 U.S.C. § 327(a) and represent no interest

adverse to the Trustee or the estate in the matters upon which said attorneys are to be engaged, that said attorneys' employment is necessary and would be in the best interests of the estate and the creditors, and being otherwise duly advised in the premises **ORDERS** as follows:

1.      The Application is **GRANTED**.

2.      The Court **FINDS** that Robert P. Charbonneau and ECC are disinterested as defined in 11 U.S.C. § 101(14) and as required by § 327(a).

3.      The Trustee is authorized to retain Robert P. Charbonneau and ECC as counsel for Jacqueline Calderin, Chapter 7 Trustee.

4.      The Trustee's employment of Robert P. Charbonneau, Esq. and ECC is approved pursuant to 11 U.S.C. §§ 327 and 330 *nunc pro tunc* to May 22, 2017.

# # #

**SUBMITTED BY:**

Robert P. Charbonneau
Florida Bar No: 968234
rpc@ecclegal.com
EHRENSTEIN CHARBONNEAU CALDERIN
*Counsel for Chapter 7 Trustee*
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002
www.ecclegal.com

(Copy furnished to Attorney Charbonneau, Esq., who is directed to serve a copy of this Order upon all interested parties)

# Exhibit "I"

FORM 5. INVOLUNTARY PETITION

B5 (Official Form 5) (12/07)

| United States Bankruptcy Court<br><br>**Southern District of Florida** | INVOLUNTARY<br>PETITION |
|---|---|

| IN RE (Name of Debtor - If Individual: Last, First, Middle)<br><br>**Peak Hotels and Resorts Group, Ltd** | ALL OTHER NAMES used by debtor in the last 8 years<br>(Include married, maiden, and trade names.) |
|---|---|
| Last four digits of Social-Security or other Individual's Tax-ID No./Complete EIN<br>(If more than one, state all.) | |
| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>**1500 Bay Road 1582S**<br>**Miami Beach, FL 33139** | MAILING ADDRESS OF DEBTOR (If different from street address)<br><br>**Registrar Company Number 1808788**<br>**Nemours Chambers**<br>**Road Town, Tortola**<br>**BRITISH VIRGIN ISLANDS** |

| | COUNTY OF RESIDENCE OR<br>PRINCIPAL PLACE OF BUSINESS<br>**Miami-Dade** | |
|---|---|---|

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses)

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED
■ Chapter 7    ☐ Chapter 11

**INFORMATION REGARDING DEBTOR** (Check applicable boxes)

| **Nature of Debts**<br>(Check one box)<br><br>Petitioners believe:<br>☐ Debts are primarily consumer debts<br>■ Debts are primarily business debts | **Type of Debtor**<br>(Form of Organization)<br>☐ Individual (Includes Joint Debtor)<br>■ Corporation (Includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.)<br><br>_____ | **Nature of Business** (Check one box)<br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>11 U.S.C. § 101(51)(B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>■ Other |
|---|---|---|

| **VENUE** | **FILING FEE** (Check one box) |
|---|---|
| ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐ A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | ■ Full Filing Fee attached<br><br>☐ Petitioner is a child suport creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached.<br>*[If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.]* |

**PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER**
**OR AFFILIATE OF THIS DEBTOR** (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| | | |
| Relationship | District | Judge |
| | | |

| **ALLEGATIONS**<br>(Check applicable boxes) | COURT USE ONLY |
|---|---|
| 1.  ■ Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).<br><br>2.  ■ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.<br><br>3.a. ■ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;<br><br>or<br><br>3.b. ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession. | |

EXHIBIT "I"

Name of Debtor   **Peak Hotels and Resorts Group, Ltd**

**B5 (Official Form 5) (12/07) - Page 2**                           Case No.

| TRANSFER OF CLAIM |
|---|

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents evidencing the transfer and any statements that are required under Bankruptcy Rule 1003(a).

| REQUEST FOR RELIEF |
|---|

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

X **/s/ Balji Minhas** _____
Signature of Petitioner or Representative (State title)

**High-Def Zone, Inc.** _____ **April 24, 2017**
Name of Petitioner                          Date Signed

Name & Mailing    **Balji Minhas**
Address of Individual   **215 McNair Circle,**
Signing in Representative   **Northampton, PA 18067**
Capacity

X /s/ Joel M. Aresty _____ **April 24, 2017**
Signature of Attorney                        Date

**Joel M. Aresty** _____
Name of Attorney Firm (If any)

**309 1st Ave S**
**Saint Petersburg, FL 33715** _____
Address
Telephone No. ___ **305-904-1903** _____

---

X _Balji Minhas_ _____
Signature of Petitioner or Representative (State title)

**Balji Minhas**
Name of Petitioner                          Date Signed
**04-24-2017**

Name & Mailing
Address of Individual
Signing in Representative
Capacity

X _____
Signature of Attorney                        Date

_____
Name of Attorney Firm (If any)

_____
Address
Telephone No. _____

---

X _____
Signature of Petitioner or Representative (State title)

_____
Name of Petitioner                          Date Signed

Name & Mailing
Address of Individual
Signing in Representative
Capacity

X _____
Signature of Attorney                        Date

_____
Name of Attorney Firm (If any)

_____
Address
Telephone No. _____

| PETITIONING CREDITORS | | |
|---|---|---|
| Name and Address of Petitioner<br>**High-Def Zone, Inc.**<br>**215 McNair Circle,**<br>**Northampton, PA 18067** | Nature of Claim<br>**business debts** | Amount of Claim<br><br>**150,029.76** |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of<br>Petitioners' Claims<br><br>**150,029.76** |

____**0**____ continuation sheets attached

EXHIBIT "J"

# Exhibit "J"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

                                    CASE NO.: 17-15041 BKC-AJC

                                            CHAPTER 7

PEAK HOTELS AND RESORTS GROUP, LTD

_____ Debtor(s)/

            NOTICE OF APPOINTMENT OF CHAPTER 7 TRUSTEE

Pursuant to 11 U.S.C. Section 701, Jacqueline Calderin is hereby
appointed as Trustee in the above referenced case and is hereby
designated to preside at the meeting of creditors.  The Trustee
shall serve under the bond heretofore approved.


Dated:  May 19, 2017


                        Guy G. Gebhardt
                        Acting United States Trustee
                        Region 21


                        by:_____s/_____
                             STEVEN R. TURNER
                        Assistant United States Trustee


Office of the United States Trustee
51 S.W. First Avenue
Suite 1204
Miami, FL 33130
(305) 536-7285

# Exhibit "K"

**Fill in this information to identify your case:**

Debtor name    **Peak Hotels and Resorts Group, Ltd**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF FLORIDA

Case number    **17-15041 AJC**
(if known)

Official Form 410

# Proof of Claim

4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

**High-Def Zone, Inc.**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
■ No
☐ Yes.  From whom?

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

**High-Def Zone, Inc.**
**215 McNair Circle**
**Northampton, PA 18067**
Name, Number, Street, City, State & Zip Code

Contact phone
Contact email

Where should payments to the creditor be sent? (if different)

Name, Number, Street, City, State & Zip Code

Contact phone
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**
■ No
☐ Yes.  Claim number on court claims registry (if known) _____  Filed on _____

**5. Do you know if anyone else has filed a proof of claim for this claim?**
■ No
☐ Yes.  Who made the earlier filing? _____

Official Form 410                    **Proof of Claim**                    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|--------------------------------------------------------------------|

**6. Do you have any number you use to identify the debtor?**

■ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ _____150,029.76___ **Does this amount include interest or other charges?**

■ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

__equipment and services_____

**9. Is all or part of the claim secured?**

■ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of claim that is secured:** $ _____

**Amount of claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) ____0____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

■ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition:** $ _____

**11. Is this claim subject to a right of setoff?**

■ No

☐ Yes. Identify the property: _____

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

■ No

☐ Yes.    *Check one:*

| | |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

■ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    **May 27, 2017**
                     MM/ DD / YYYY

/s/ Balji Minhas
        Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | **Balji Minhas** |
| Title | **President** |
| Company | **High-Def Zone, Inc.** |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | **215 McNair Circle** |
| | **Northampton, PA 18067** |
| | Number, Street, City, State and Zip Code |
| Contact phone | _____    Email _____ |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| 1/17/2014 | **High-Def Zone, Inc-Invoice** | peak_res_AV_invoice |
|---|---|---|

**215 McNair Circle,
Northampton, PA, 18067**

**Peak Hotels and Resorts Group, Ltd**

1500 Bay Road 1582S
MIami Beach, FL 33139

| QTY | Description | Price |
|---|---|---|
| 1 | AV system with 12 42" HDTVs, and 3 65" HDTVs, 3 Surround Sound Receivers, 30 speakers, Audio Matrix Switch, 4 Amplifiers, Power Supply, 2 44U Racks, 1 Media Server | $45,000.00 |
| 1 | Savant System, Host, Controller, Power Supply and Power Backup, Smart Thermostats | $11,900.00 |
| 1 | Integration and Labor Charges | $24,600.00 |
| | Sub Total | $81,500.00 |
| | Taxes | $7,233.13 |
| | All work is complete | |
| | **Total** | **$88,733.13** |

| 1/17/2014 | **High-Def Zone, Inc-Invoice** | peak_res_Cam_Net_Tel_invoice |
| --- | --- | --- |

**215 McNair Circle,
Northampton, PA, 18067**

**Peak Hotels and Resorts Group, Ltd**

1500 Bay Road 1582S
Miami Beach, FL 33139

| QTY | Description | Price |
| --- | --- | --- |
| 1 | HI_RES camera DVR system with 10 Outdoor Cameras, 3 Indoor Cameras, and 4TB Storage DVR System | $22,000.00 |
| 1 | VOIP Telephone/Intercom System | $11,700.00 |
| 1 | Network/WIFI Sytem with 10 Access Points, Router and 4 24 Port GIGE POE Switches | $12,600.00 |
| 1 | Integration and Labor Charges | $10,000.00 |
| | | |
| | Sub Total | $56,300.00 |
| | Taxes | $4,996.63 |
| | | |
| | All Work is Complete | |
| | **Total** | **$61,296.63** |

EXHIBIT "L"

# Composite Exhibit "L"

FILED: NEW YORK COUNTY CLERK 01/31/2017 12:21 PM
NYSCEF DOC. NO. 271

16-10917-scc Doc 105-12 Filed 08/30/17 Entered 08/30/17 15:45:24 Exhibit
Exhibit L - Decision and Order Pg 2 of 20

INDEX NO. 650340/2015
RECEIVED NYSCEF: 01/31/2017
Exhibit L

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:** Hon. Anil C. Singh

_____
Justice

**PART** 45

| Index Number : 650340/2015 |
| SUSTAINABLE PTE LTD. |
| vs. |
| PEAK VENTURE PARTNERS LLC |
| SEQUENCE NUMBER : 013 |
| DEFAULT JUDGMENT |

**INDEX NO.** _____

**MOTION DATE** _____

**MOTION SEQ. NO.** _____

The following papers, numbered 1 to _____, were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

**DECIDED IN ACCORDANCE WITH
ACCOMPANYING DECISION / ORDER**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: JAN 30, 2017

_____, J.S.C.
ANIL C. SINGH

1. CHECK ONE: .................................................. ☐ CASE DISPOSED    ☒ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ..................MOTION IS: ☐ GRANTED  ☐ DENIED  ☒ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ................................ ☐ SETTLE ORDER    ☐ SUBMIT ORDER
    ☐ DO NOT POST    ☐ FIDUCIARY APPOINTMENT    ☐ REFERENCE

FILED: NEW YORK COUNTY CLERK 01/31/2017 12:21 PM                    INDEX NO. 650340/2015
NYSCEF DOC. NO. 271                    Exhibit L - Decision and Order    Pg 3 of 20    RECEIVED NYSCEF: 01/31/2017

EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 45
-------------------------------------------------------------------X
SUSTAINABLE PTE LTD., et al.,

                       Plaintiffs,

-against-

PEAK VENTURE PARTNERS LLC, et al.,

                       Defendants.
-------------------------------------------------------------------X

**DECISION AND ORDER**

Index No. 650340/2015
Mot. Seq. 013 - 014

Hon. Anil C. Singh, J:

In this action for, *inter alia*, breach of contract, tortious interference with contract, fraud, quantum meruit and unjust enrichment, Plaintiffs Sustainable Pte. Ltd. ("Sustainable"), SURF Hotels Pte. Ltd. ("Surf Hotels"), Gregory Stuppler ("Stuppler"), and Yuta Oka ("Oka") (collectively, "plaintiffs" or "Surf") move pursuant to CPLR §3215(a) for a default judgment against defendants Aman Resorts Group Limited ("ARGL"), Omar Amanat ("Amanat"), Alan Djanogly ("Djangoly"), Johan Eliasch ("Eliasch"), Manaman Ventures Pte. Ltd. ("Manaman"), Peak Hotels & Resorts Limited ("PHRL"), Peak Hotels and Resorts Group Limited ("PHRGL"), Peak Investments Limited ("PIL"), and Peak Venture Partners LLC ("PVP") (collectively, "defendants"). Defendants oppose.

Djangoly, Eliasch, PHRGL and ARGL (collectively, the "Cross-Moving Defendants") cross-move to dismiss pursuant to CPLR §§ 3211(a)(7) and (a)(8).

1

FILED: NEW YORK COUNTY CLERK 01/30/2017 15:45:24 PM INDEX NO. 650340/2015
NYSCEF DOC. NO. 271                                      RECEIVED NYSCEF: 01/31/2017

Exhibit L - Decision and Order    Pg 4 of 20              EXHIBIT L

Plaintiffs oppose (mot. seq. 013). Separately, PHRL cross-moves to dismiss pursuant to CPLR §§3211(a)(1) and (a)(7). Plaintiffs oppose (mot. seq. 014). The motions have been consolidated for purposes of this decision.

Amanat, Manaman, PIL and PVP have not opposed this motion.

### Facts

In July 2013, PVP, together with Amanat, entered into an agreement with DLF Global Hospitality Limited ("DLF") regarding the acquisition of Silverlink, which acted as a holding company for Aman Resorts, a luxury hotel chain. Subsequently, Amanat sought partners with experience in hotel management and investment to help him acquire Aman Resorts. Amanat met with Stuppler and Oka, owners of Sustainable, which specialized in real estate and hotel investment opportunities, and in October 2013, the parties entered into a contract (the "Surf Agreement") whereby Sustainable would provide Amanat and PVP advice, support, and services concerning the purchase of Aman Resorts, and Amanat. PVP agreed to a 'success fee' of $3 million payable to Sustainable upon the successful completion of a purchase agreement for Aman Resorts. See First Amended Complaint ("Compl."), ¶¶48-50. Amanat and PVP would also be responsible for Sustainable's legal and other expenses. Id. at ¶¶51-52.

Upon completion of the purchase agreement, Sustainable would be appointed to provide asset management services, which, among other things, assured

2

Sustainable an annual fee of $1 million. Id. at 53-54. In addition, Sustainable, would

receive a 20% profit share in Amanat and PVP's profits from their ownership stakes

in Aman Resorts. Id. at ¶55. As a result of the Surf Agreement and in contemplation

of successful services, Sustainable, Stuppler and Oka established Surf as an affiliate

of Sustainable in order to serve as asset manager and to provide LP services. Id. at

¶7.

Amanat established Manaman to acquire the Silverlink shares. Id. at ¶61.

Thereafter, ARGL was created as a Manaman subsidiary and an investment vehicle

through which Amanat and PVP would acquire Aman Resorts. Id. Stuppler was

named a director of ARGL, and Amanat represented that Surf would be ARGL's

managing general partner. Id. at ¶14. Amanat also represented that ARGL, rather

than PVP, would be the entity by which PVP, or any partner, would acquire

Silverlink. Stuppler Aff. ¶7.

After executing the Surf Agreement, Amanat introduced Stuppler to Tavakoli,

who in turn introduced the investment opportunity to Djanogly, who subsequently

disclosed the same opportunity to Doronin. Id. at ¶¶7-8. TIL, a company controlled

by Doronin, was intended to be the vehicle through which Doronin would acquire

his interest in Aman Resorts. Id. ¶¶5, 8, 20. Amanat, Tavakoli, Djanogly, and

Doronin then engaged in extensive negotiations with plaintiffs to partner in the

acquisition of Aman Resorts. Plaintiffs assert that in numerous discussions with

3

these individual defendants the terms of the Surf Agreement were disclosed to them

and that their involvement in the acquisition would be subject to the Surf Agreement.

Id. ¶¶8, 10-12.

On January 2, 2014, Stuppler, acting as ARGL's director, signed the Purchase

and Sale Agreement (the "PSA") with DLF to acquire its interest in Silverlink. On

January 14, 2014, Amanat formed PHRL as the entity to invest in PHRGL, and

Doronin used TIL to fund his investment in PHRGL. On January 31, 2014,

Manaman sold ARGL to PHRGL, and ARGL became PHRGL's subsidiary. On the

same day, PHRL and TIL entered into the PHRGL Shareholders Agreement, which

set forth the distribution of shares as well as the rights and obligations of the parties

in the Aman Resorts acquisition. Upon execution of the PHRGL Shareholders'

Agreement, Doronin and Djanogly (on behalf of TIL) and Amanat and Tavakoli (on

behalf of PHRL), were named directors of PHRGL and ARGL.

Plaintiffs allege that, on the same day, Doronin's attorney sent Stuppler an

email with an attachment entitled "Agreement Relating to Silverlink Resorts Limited

dated 20 October 2013" (the "Fee Letter"), which stated that PHRL and TIL would

each pay Sustainable/Surf $1.5 million for its help in the acquisition and a

management fee for its future asset management services, as well as a profit share

interest. See Stuppler Aff. ¶22. The PHRGL Shareholders' Agreement also

4

recognized the Surf Agreement as an acquisition-related obligation and liability, pursuant to § 31.1(b) and Schedules 5 and 7 therein. Id. at ¶23; Compl. ¶94.

On February 7, 2014, Aman Resorts was acquired for $358 million, $168 million of which was in the form of a loan from Pontwelly Holding Company ("Pontwelly"), which was allegedly controlled by Doronin. See Stuppler Aff. ¶25-26. Plaintiffs allege that after this acquisition they faithfully completed their closing responsibilities. Compl. ¶¶103-107.

In April 2014, Eliasch, a new investor and owner of defendant Sherway Group Limited ("Sherway"), convinced PHRL to appoint him as a director on PHRGL's board. Stuppler Aff. ¶33. Plaintiffs allege that Eliasch conspired and aligned with Doronin and Djanogly to undermine plaintiffs' rights and dilute PHRL's interest in PHRGL. Compl. ¶¶114-115. With the addition of Eliasch, Doronin allegedly exercised de facto control of the board and was able to execute his scheme to take complete control and ownership of Aman Resorts. Id. In an April 2014 PHRGL board meeting, Doronin, Djanogly, and Eliasch voted to eliminate the incentives provided to plaintiffs in the PHRGL Shareholders' Agreement, and in May 2014, a Silverlink officer, acting at Doronin's direction, instructed Stuppler that Surf was no longer authorized to act on behalf of the company. Id. ¶35. Plaintiffs' allege that they have not received the $3 million success fee, asset management services fee, profit shares or expense reimbursement.

5

## Analysis

### Legal Standard

CPLR 3215 (a) provides, in relevant part, that "[w]hen a defendant has failed to appear ... the plaintiff may seek a default judgment against him." To that end, a plaintiff "need only provide facts sufficient to enable the court to determine that a viable cause of action exists." Woodson v Mendon Leasing Corp., 100 N.Y.2d 62, 71 (2003). On the other hand, a defendant must show "a justifiable excuse for his default and a meritorious defense" to successfully oppose a motion for default judgment; however, when there is a lack of personal jurisdiction, the defendant is not required to make such a showing. See Johnson v Deas, 32 A.D.3d 253, 254 (1st Dept 2006) (internal citations omitted).

### Plaintiffs Motion for Default Judgment against Amanat, Manaman, PIL and PVP

Plaintiffs motion for default judgment against Amanat, Manaman, PIL and PVP is granted for good cause shown and failure to oppose.[1]

### Whether this Court has Personal Jurisdiction over the Cross-Moving Defendants or PHRL

In order to grant a default judgment, the court must have personal jurisdiction over the party against whom such judgment is to be entered. See Caba v. Rai, 63 A.D.3d 578 (1st Dept 2009); Royal Zenith Corp. v. Cont'l Ins. Co., 63 N.Y.2d 975,

---

[1] Through oversight PVP was not mentioned in the notice of motion. However, service was properly shown through the accompanying papers.

6

977 (1984) ("A court is without power to render a judgment against a party as to whom there is no jurisdiction."). "Where there is a defense of lack of personal jurisdiction, a defendant need not show a reasonable excuse and meritorious defense," as would normally be required of a party opposing a default judgment. Johnson v. Deas, 32 A.D.3d 253, 254 (1st Dept 2006).

*Whether this Court has Personal Jurisdiction over Cross-Moving Defendants*

Plaintiffs' motion for a default judgment is denied because this Court lacks personal jurisdiction over the cross-moving defendants under CPLR 302(a). Plaintiffs' allege that this Court has jurisdiction because the cross-moving defendants consented to jurisdiction in certain agreements and, alternatively, that New York's long-arm statute for tortious acts applies. Compl., ¶25.

To establish jurisdiction, plaintiffs rely on the Surf Agreement, the letter agreement between Doronin and Amanat, the pledge agreements between PHRL and Sherway, and the Pontwelly Financing Agreement. However, Eliasch, Djangoly, and PHRGL are not parties to any of these agreements and are therefore not subject to the forum-selection clauses contained therein. See Centennial Energy Holdings, Inc. v. Colorado Energy Mgt., LLC, 32 Misc.3d 1215(A), at *6 (Sup. Ct. N.Y. Cnty. 2011); Arrowhead Target Fund, Ltd. v. Hoffman, 2011 N.Y. Slip. Op. 33795(U) (Sup. Ct. N.Y. Cnty. Aug. 9, 2011). For the same reasons, ARGL is not subject to

7

FILED: NEW YORK COUNTY CLERK 01/31/2017 12:31 PM                INDEX NO. 650340/2015
NYSCEF DOC. NO. 271                                             RECEIVED NYSCEF: 01/31/2017

10-1091-scc   Doc 105-12   Filed 08/30/17   Entered 08/30/17 15:45:24   Exhibit
                Exhibit L - Decision and Order   Pg 10 of 20
                                                                EXHIBIT L

personal jurisdiction, as it is not a party to the Surf Agreement, letter agreement, or the pledge agreements. See Compl. ¶¶21, 25, 45, 47, 79.

The only remaining document to which ARGL is a party is the Pontwelly Financing Agreement but plaintiffs are not signatories thereto. Therefore, plaintiffs may only invoke the forum-selection clause in the Pontwelly Financing Agreement if (i) plaintiffs were third-party beneficiaries, (ii) the agreement was part of a global transaction and plaintiffs were parties to other underlying related agreements executed simultaneously, or (iii) plaintiffs were closely related to one of the signatories. See Freeford Ltd. v. Pendleton, 53 A.D.3d 32 (1st Dept 2008). Plaintiffs have not sufficiently pled any of the foregoing. Therefore, plaintiffs have not established personal jurisdiction based on any of the cross-moving defendants consent to jurisdiction in any agreement.

Plaintiffs cannot exercise personal jurisdiction under CPLR §302(a)(2), which provides for jurisdiction over a non-domiciliary who "commits a tortious act within the state." Plaintiffs' basis for jurisdiction over the cross-moving defendants is that defendants allegedly acted as part of a conspiracy with Doronin who orchestrated the tortious act from New York namely, that; Eliasch and Doronin met before and after the April 2014 board meeting and that Doronin, Eliasch, and Djangoly wrongfully eliminated the Schedule 7 incentive agreements. See Pl's Reply Memo, p. 14.

8

The crux of plaintiffs' argument is that the cross-moving defendants are subject to jurisdiction under CPLR §302(a)(2) for co-conspiring with Doronin, who operated out of New York. This court has already held that there is no viable claim for conspiracy. See Sustainable Pte Ltd. v. Peak Venture Partners LLC, 2015 WL 8490457 (Sup. Ct. N.Y. Cnty. Dec. 10, 2015). As such, a claim under CPLR §302(a)(2) fails. See Aramid Entm't Fund Ltd. v. Wimbledon Fin. Master Fund, Ltd., 105 A.D.3d 682, 683 (1st Dept 2013); de Capriles v. Lugo, 293 A.D.405, 406 (1st Dept 2002). Therefore, the court does not have personal jurisdiction under CPLR §302(a)(2).

Next, plaintiffs allege that there is personal jurisdiction under CPLR §302(a)(3)(ii) which requires that

> (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce.

Penguin Grp. (USA) Inc. v. Am. Buddha, 16 N.Y.3d 295, 302 (2011).

In determining the situs of the injury on a claim for tortious interference with contract, "the location where the defendant allegedly interfered with the contract, not where the plaintiff lost business as a result of the tort, is the place of injury." Int'l Telecom, Inc. v. Generadora Electricia del Oriente, S.A., 2002 WL 1072230 (S.D.N.Y. May 2, 2002); see also Peters v. Peters, 101 A.D.3d 403, 404 (1st Dept

2012) ("[Defendant] is not subject to jurisdiction pursuant to CPLR 302(a)(3)(ii) since [the event] was not an injury-causing event in New York, but, rather, a decision by a trustee in the Bahamas to authorize the release of funds from bank accounts in Switzerland.").

Here, plaintiffs have not adequately alleged that the interference with the contract occurred in New York. Plaintiffs allege that the cross-moving defendants tortiously interfered with the Surf Agreement when they eliminated the Schedule 7 Incentive Agreements, refused to release $3.85 million in ARGL's action to Surf and hired Internos instead of Surf to be asset manager for Aman Resorts. See Compl., ¶¶28(b), 105, 125, 137(b)-(d).

Detrimental to plaintiffs' claims is the lack of pleading regarding any situs to New York. The alleged elimination of the Schedule 7 Incentive Arrangements by PHRGL's board members occurred in Miami, while the hiring of Internos instead of Surf as asset manager for Aman Resorts instead of Surf occurred in France. See Original Complaint, ¶¶ 98, 108. Similarly, plaintiffs' allegations that Eliasch, Djangoly, PHRGL, and ARGL tortiously interfered with the Surf Agreement in New York is based on a theory of co-conspiracy. See Compl. ¶28(b) ("Doronin conspired with other Defendants…to tortiously interfere with the Surf Agreement and with Surf's prospective contractual relations and economic advantage concerning Aman Resorts.")

10

As discussed, *supra*, there is no viable claim for a conspiracy and therefore no viable claim for a co-conspiracy. See Aramid, 105 A.D.3d 683; de Capriles, 293 A.D. 406. As the events relating to the tortious interference claim against ARGL and PHRGL occurred outside of New York or in relation to a conspiracy that this court has already held is not actionable, plaintiffs have failed to adequately plead personal jurisdiction under CPLR §302(a)(3)(ii).[2]

Finally, plaintiffs have not established personal jurisdiction under CPLR 302(a)(1), which provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore". The recent seminal case of Daimler AG v. Bauman, 134 S. Ct. 746 (S.Ct 2014) is relevant precedent to the application of general jurisdiction. In Daimler, the Supreme Court held that the only type of local activity by a corporation that will ordinarily qualify for general jurisdiction is incorporation in the state or maintenance of its principal place of business in the state. The New York courts, including the First Department, have followed Daimler. In Magdalena v. Lins, 123 A.D. 3d 600, 601 (1st Dept 2014), the First Department held that "there is no basis for general jurisdiction

---

[2] Also detrimental to plaintiffs' cause of action under CPLR §302(a)(3)(ii) is the insufficient pleading that a reasonably prudent non-domiciliary should have expected the tortious act to have consequences in New York along with a purposeful affiliation with New York. See Murdock v. Arenson Int'l USA, 157 A.D.2d 110, 114 (1st Dept 1990). Both the First Amended Complaint and plaintiffs' opposition papers fail to state any basis for satisfying this foreseeability test. Neither Stuppler, Oka, nor Sustainable are domiciliaries of New York, nor are any of the Aman Resorts located in New York. Additionally, plaintiffs have not adequately pled any reason why any of the cross-moving defendants should have expected any tortious act to have consequences in New York, or any purposeful affiliation with New York. As such, there is no basis for personal jurisdiction under CPLR §302(a)(3)(ii) based upon the foreseeability test.

11

FILED: NEW YORK COUNTY CLERK 01/31/2017 12:21 PM          INDEX NO. 650340/2015
NYSCEF DOC. NO. 271                                        RECEIVED NYSCEF: 01/31/2017

EXHIBIT L

pursuant to CPLR 301, since [defendant] is not incorporated in New York and does

not have its principal place of business in New York." See also, D & R Glob.

Selections, S.L. v. Pineiro, 128 A.D.3d 486, 487 (1st Dept 2015).

CPLR 302(a)(1) provides that long-arm jurisdiction exists for any "non-

domiciliary…who in person or through an agent…transacts any business within the

state or contracts anywhere to supply goods or services in the state." The Court of

Appeals has repeatedly stated that long-arm jurisdiction "is proper even though the

defendant never enters New York, so long as the defendant's activities here were

purposeful and there is a substantial relationship between the transaction and the

claim asserted." Rushaid v Pictet & Cie, 2016 WL 6837930 at *5 (Nov. 22, 2016)

quoting Fischbarg v Doucet, 9 N.Y.3d 375, 380 (2007); see also Licci v Lebanese

Can. Bank, 20 N.Y.3d 327, 340 (2012) (requirement of CPLR 302 (a)(1) is satisfied

where the quantity and quality of contacts established "a course of dealing" with

New York and the claims arising therefrom are not "merely coincidental").

However, "if either prong of the statute is not met, jurisdiction cannot be conferred."

Johnson v. Ward, 4 N.Y.3d 516, 519 (2005).

None of the cross-moving defendants are incorporated or have their principal

place of business in New York[3]. Plaintiffs have not adequately pled that Amanat,

---

[3] ARGL and PHRGL are British Virgin Islands corporations. Eliasch and Djangoly currently reside in the United Kingdom.

FILED: NEW YORK COUNTY CLERK 01/31/2017 12:21 PM INDEX NO. 650340/2015
NYSCEF DOC. NO. 271          Exhibit L - Decision and Order    Pg 15 of 20    RECEIVED NYSCEF: 01/31/2017

EXHIBIT L

Doronin, or Djangoly acted as agents to sufficiently confer jurisdiction upon any of the cross-moving defendants. Therefore, this court lacks jurisdiction under CPLR §302(a)(1)[4].

Plaintiffs' request for further discovery on the issue of personal jurisdiction as it relates to the cross-moving defendants is denied. Where a court does not find that it has personal jurisdiction over a defendant, a plaintiff may show that it has made a 'sufficient start' in establishing jurisdiction so as to warrant jurisdictional discovery. See Peterson v. Spartan Indus., 33 N.Y.2d 463 (1974); Edelman v. Tattinger, S.A., 298 A.D.2d 301 (1st Dept 2002); Am. BankNote Corp. v. Daniele, 45 A.D.3d 338, 340 (1st Dept 2007). To that end, "plaintiffs must demonstrate the possible existence of essential jurisdictional facts that are not yet known." Copp v. Ramirez, 62 A.D.3d 23, 31 (1st Dept 2009).

Plaintiffs' reliance on Edelman is misplaced. In Edelman, the court held that jurisdictional discovery was appropriate where the plaintiff had been wronged by a complex web of corporate entities, but the court affirmed the trial court's denial of discovery "in the absence of any basis for claiming that discovery would yield facts relating to [the non-moving parties] doing business in New York.". 298 A.D.2d at 302. Here, plaintiffs' amended complaint and subsequent motion papers fail to allege

---

[4] As this court does not have personal jurisdiction over Djangoly and Eliasch, this court need not determine whether service was proper under The Hague Convention.

13

FILED: NEW YORK COUNTY CLERK 01/31/2017 12:31 PM
NYSCEF DOC. NO. 271

16-10917-scc Doc 105-12 Filed 08/30/17 Entered 08/30/17 15:45:24 Exhibit
Exhibit L - Decision and Order Pg 16 of 20

INDEX NO. 650340/2015
RECEIVED NYSCEF: 01/31/2017

EXHIBIT L

any basis that additional discovery would yield material and previously unavailable evidence. Absent this showing, plaintiffs' request for jurisdictional discovery is denied.

### *Djangoly's and Eliasch's Cross-Motion for Sanctions*

Djangoly's and Eliasch's cross-motions for sanctions are denied. Under 22 NYCRR § 130–1.1, the court has discretion to award sanctions for frivolous conduct. This is defined as conduct which is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; or which is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another, or which involves the assertion of materially false factual statements.

The authority to impose sanctions and costs is within the court's sound discretion. De Ruzzio v. De Ruzzio, 287 A.D.2d 896 (3d Dept 2001). The court's power to impose sanctions serves the dual purposes of vindicating judicial authority and making the prevailing party whole for expenses caused by his opponent's obstinacy. Gordon v. Marrone, 155 Misc.2d 726, 590 N.Y.S.2d 649 (Sup.Ct. Westchester Cnty 1992), *aff'd* 202 A.D.2d 104, 616 (2d Dept.1994). In assessing whether to award sanctions, the court must consider whether the attorney adhered to the standards of a reasonable attorney. Principe v. Assay Partners, 154 Misc.2d 702, 586 N.Y.S.2d 182 (Sup. Ct N.Y. Cnty. 1992).

14

Exhibit L - Decision and Order    Pg 17 of 20

At this stage of the litigation, the Court denies Eliasch's and Djangoly's requests for sanctions.

*Whether this Action is Dismissed in Deference to the BVI Liquidation Proceeding*

PHRL's motion to dismiss the action in deference to the British Virgin Island ("BVI") liquidation proceeding is granted. PHRL seeks to have this action dismissed on international comity grounds, which is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164 (1895); see also Morgenthau v. Avion Resources Ltd., 11 N.Y.3d 383, 389 (2008) ("The doctrine of comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."). However, the doctrine of comity is a "discretionary rule of practice, convenience and expediency." Royal & Sun Alliance Ins., Co. of Canada v. Century Intl. Arms, Inc., 466 F.3d 88, 92 (2d Cir. 2006); Morgenthau, 11 N.Y.3d at 390 ("Whether to apply the doctrine lies in the sound discretion of the court."); Bertisch v. Drory, 2004 WL 2059594, *2 (Sup. Ct. N.Y. Cnty. 2004) ("whether or not to extend comity is generally a matter of discretion.").

Courts have consistently recognized the need to extend comity to foreign bankruptcy proceedings in particular because "the equitable and orderly distribution

of a debtor's property requires assembling all claims against the limited assets in a single proceeding…[and that] deference to a foreign court of proper jurisdiction is appropriate so long as the foreign proceedings are procedurally fair and do not violate public policy." Oui Fin. LLC v. Dellar, 2013 WL 5568732, *4 (S.D.N.Y. Oct. 9, 2013); see also Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987); JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V. 412 F.3d 418, 423 (2d Cir. 2005).

This court has held that the BVI is a court of competent jurisdiction in determining issues related to a bankruptcy proceeding. See Nam Tai Electronics, Inc. v. UBS Painewebber Inc., 2005 WL 6214749 (Sup. Ct. N.Y. Cnty. Oct. 6, 2005). Furthermore, plaintiffs have not adequately alleged that the BVI court has denied them procedural fairness or violated public policy. Although there is insufficient evidence at this stage of the proceedings that this action against PHRL undermines the liquidation proceedings in the BVI or that plaintiffs are in contempt of BVI law, plaintiffs have filed a claim in PHRL's liquidation. See Pl's Opp. Memo, p. 12. Plaintiffs admit that they have submitted to the BVI court's jurisdiction in this action. Id.

Plaintiffs' contention that this court should not exercise its discretion under Bertisch is misguided. In Bertisch, the court held that New York will not defer to a foreign bankruptcy proceeding if "the foreign proceeding will result in injustice to

16

New York citizens, prejudice to creditors' New York statutory remedies, or violation of the laws or public policy of New York." Id. at *2. Plaintiffs allege that there is an issue as to whether the liquidators in the BVI proceeding have wrongfully disposed of property to which plaintiffs have asserted a proprietary claim, and that the BVI court ordered that this property may be used in further settlements, thereby resulting in injustice. Pl's Opp. Memo, pp. 13-14. However, this is not enough to show that the BVI proceeding is unjust to plaintiffs in order to persuade this court not to exercise its discretion to dismiss this claim. Therefore, PHRL's motion to dismiss is granted on international comity grounds.

Accordingly, it is hereby

ORDERED that plaintiffs motion for a default judgment as against Omar Amanat, Manaman Ventures Pte. Ltd., Peak Investments Limited and Peak Venture Partners LLC is granted and an inquest of damages will be held at the time of trial; and it is further

ORDERED that plaintiffs motion for a default judgment as against Aman Resorts Group Limited, Alan Djangoly, Johan Eliasch, Peak Hotels & Resorts Limited, and Peak Hotels & Resorts Group Limited is denied; and it is further

ORDERED that Alan Djangoly's motion to dismiss for lack of personal jurisdiction is granted; and it is further

17

ORDERED that Johan Eliasch's motion to dismiss for lack of personal jurisdiction is granted; and it is further

ORDERED that Aman Resorts Group Limited's motion to dismiss for lack of personal jurisdiction is granted; and it is further

ORDERED that Peak Hotels & Resorts Group Limited's motion to dismiss for lack of personal jurisdiction is granted; and it is further

ORDERED that Peak Hotels Resorts Limited's motion to dismiss on the basis of international comity is granted; and it is further

ORDERED that Johan Eliasch and Alan Djangoly's cross-motion for sanctions is denied.

Date: January 30 , 2017
New York, New York

_____
Anil C. Singh

18

# Exhibit "M"

CGFD75 (10/01/16)



**ORDERED in the Southern District of Florida on May 18, 2017**

A. Jay Cristol
United States Bankruptcy Judge

---

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

Case Number: 17–15041–AJC

Chapter: 7

**In re:** *(Debtor(s) name(s) used by the debtor(s) in the last 8 years, including married, maiden, and trade)*

Peak Hotels and Resorts Group, Ltd
Registrar Company Number 1808788
Nemours Chambers
Road Town, Tortola
BRITISH VIRGIN ISLANDS,

### ORDER FOR RELIEF IN INVOLUNTARY CASE AND ORDER SETTING DEADLINE FOR FILING SCHEDULES, STATEMENTS AND OTHER DOCUMENTS

An involuntary petition was filed on **April 24, 2017** against the above–named debtor.

- ☑ The debtor has failed to file any timely pleading or defense to the petition as required by Bankruptcy Rule 1013(b).

- ☐ The debtor has filed a motion to convert the involuntary case from chapter 7 to chapter pursuant to Local Rule 1013–1(B).

- ☐ The debtor has filed a response consenting to relief under the same chapter under which the involuntary petition was filed.

- ☐ The debtor has filed a response contesting the involuntary petition or requesting conversion to chapter and a hearing was held on at which the court heard from all interested parties.

*Page 1 of 3*

It is **ORDERED** that relief under chapter 7 of the Bankruptcy Code (Title 11 of the United States Code) is granted.

Peak Hotels and Resorts Group, Ltd is directed to file with the Clerk, United States Bankruptcy Court, the following items and comply with the following directives:

1. Within seven days from the date of this order, the individual named above shall file a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H as prescribed by the Official Forms in the format required by the "Clerk's Instructions for Preparing, Submitting and Obtaining Service Matrices" [see Bankruptcy Rule 1007(a)(2) and Local Rules 1007.1 and 1007.2].

2. Within 14 days from the date of this order, the individual named above shall file schedules, statements, and, if the debtor is an individual (applicable to both joint debtors), payment advices (or indicate why any or all payment advices will not be filed on the Local Form "Declaration Regarding Payment Advices") [Bankruptcy Rules 1007(b)(1) and 1007(c) and Local Rule 1007.1(F)].

3. Within 14 days from the date of this order, if the debtor is an individual, the debtor shall file

   A. the Official Bankruptcy Form "Your Statement About Your Social Security Numbers" as required by Bankruptcy Rule 1007(f), and Local Rule 1002–1(A)(1); and

   B. Official Bankruptcy Form 122 for the applicable chapter if required.

4. Within 14 days from the date of this order, if the debtor is a corporation or other entity listed in Local Rule 1002–1(A)(2), the debtor shall file a corporate ownership statement as required by Bankruptcy Rule 1007(a)(1) and Local Rule 1002–1(A)(2).

5. If the debtor is an individual and if relief has been entered under chapter 7, the individual named above shall also file within 30 days from the date of this order or the date of the creditors' meeting whichever is earlier, an Official Bankruptcy Form "Statement of Intention for Individuals Filing Under Chapter 7" (Official Form 108) as required by 11 U.S.C. §521(a)(2)(A) and Bankruptcy Rule 1007(b)(2).

6. If relief has been entered under chapter 11, the individual named above shall:

   A. File a list of equity security holders within 14 days from the date of this order as required by Bankruptcy Rule 1007(a)(3);

   B. File Official Bankruptcy Form 104, "The List of Creditors Who Have the 20 Largest Unsecured Claims Against You Who Are Not Insiders" as required by Bankruptcy Rule 1007(d) within two days of the date of this order; and

   C. File reports as required by the U.S. Trustee and required under Local Rule 2015–1 and the payroll and sales tax reports and case management summary required under Local Rule 2081–1.

   D. As required under 11 U.S.C. §1116(1), if the case is a small business case, file within seven days the most recent balance sheet, statement of operations, cash flow statement and Federal income tax return or a statement made under penalty of perjury that no balance sheet, statement of operations, or cash flow statement has been prepared and no Federal tax return has been filed. Access to filed tax returns filed will be restricted as provided under Local Rule 5005–1(A)(2)(c).

*Page 2 of 3*

7.   If this case was filed under chapter 7 and the debtor requested conversion to chapter 11, debtor shall pay the balance of the filing fee due of $922.00.

8.   If this case was filed under chapter 11 and the debtor requests conversion to chapter 7, debtor shall immediately remit to the clerk of court the $15.00 trustee surcharge fee prescribed by the Judicial Conference of the United States (if not previously paid by the debtor).

9.   If relief has been entered under chapter 13, the individual named above shall:

   A.   File within 14 days from the date of this order, a chapter 13 plan conforming to the Local Form Chapter 13 Plan as required by Local Rule 3015–1(B); and

   B.   Commence plan payments to the chapter 13 trustee within 30 days from the date of this order in the manner prescribed by that trustee pursuant to Local Rule 3070–1.

10.  If relief has been entered under chapter 12, the debtor shall file, within 90 days from the date of this order, a chapter 12 plan pursuant to 11 USC §1221 and Local Rule 3015(A).

*# # #*

The clerk of court shall serve copies of this order on the following parties:

   Debtor and Attorney for Debtor
   Trustee or U.S. Trustee (as applicable)
   Petitioning Creditors and Attorney for Petitioning Creditors
   All Appearances

*Page 3 of 3*

# Exhibit "N"



**ORDERED in the Southern District of Florida on June 7, 2017.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                          CASE NO. 17-15041-AJC

PEAK HOTELS AND RESORTS GROUP, LTD.          Chapter 7

     Debtor.

_____/

### ORDER DETERMINING VENUE AND JURISDICTION ARE PROPER

     THIS CAUSE came before the Court for a Status Conference on June 7, 2017.  The Court heard the proffers of counsel and for the reasons stated on the record, it is

     **ORDERED:**

The Court has determined that jurisdiction and venue are proper in this case.

# # #

Copy to:
Jacqueline Calderin, Trustee
Joel Aresty, Esq.

Robert P. Charbonneau (*pro hac vice*)
EHRENSTEIN CHARBONNEAU CALDERIN
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002

*Proposed Counsel for Aman Resorts Group*
*Limited and Counsel for Jacqueline Calderin,*
*Chapter 7 Trustee for Peak Hotel Resorts*
*Group Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | Chapter 11 |
| AMAN RESORTS GROUP LIMITED, | Case No. 16-10517 (SCC) |
| Former Debtor. | |

**DECLARATION OF JACQUELINE CALDERIN IN SUPPORT OF**
***RESPONSE OF AMAN RESORTS GROUP LIMITED AND JACQUELINE CALDERIN,***
***CHAPTER 7 TRUSTEE FOR THE ESTATE OF PEAK HOTEL RESORTS GROUP***
***LIMITED, IN OPPOSITION TO THE MOTION TO TRANSFER VENUE***

JACQUELINE CALDERIN, being duly sworn, deposes and states:

1.      I am a shareholder in the law firm Ehrenstein Charbonneau Calderin ("ECC").

2.      I am a graduate of the University of Miami School of Law and have been a

member of the Florida Bar in good standing since 1998.  In May of 2011, I was appointed by the

Department of Justice's Executive Office of the United States Trustee to serve as a panel trustee

for the Southern District of Florida, Miami Division, and have served in said capacity ever since.

3.       In addition to my fiduciary roles as a panel trustee, I have focused my legal

practice almost exclusively[1] to the representation of fiduciaries, including debtors in possession,

creditors' committees, bankruptcy trustees, and receivers.

---

[1] Other than *pro bono* Court assignments, which every attorney at ECC is required to accept (I currently represent a
victim of human trafficking in the Miami-Dade County Children's Court).

4.      The panel of Chapter 7 trustees in the Southern District of Florida is comprised of

20 trustees, most of whom are attorneys or accountants, and nine of whom are assigned to the

Miami Division.[2]

5.      Trustees in Chapter 7 cases are assigned pursuant to a random rotation system.[3]

6.      On May 22, 2017, I was alerted to the filing of an involuntary petition in the case

of *In re: Peak Hotels Resorts Group, Ltd*, Case Number 17-15041-AJC (the "PHRGL Case"),

pending in the United States Bankruptcy Court for the Southern District of Florida, Miami

Division (the "Bankruptcy Court") by virtue of the United States Trustee filing and serving upon

me a *Notice of Appointment of Chapter 7 Trustee* [ECF #13 in the PHRGL Case], which notice

named me as the duly appointed trustee, a copy of which is attached hereto as **Exhibit "A"**.

7.      I submit this Declaration in my capacity as the duly appointed Chapter 7 trustee in

the PHRGL Case.

8.      Upon learning that I had been appointed trustee in the PHRGL Case, I requested

that ECC run a routine conflict check for the purpose of serving as my general counsel.  The

conflict check produced several "hits", all of which are described in detail in the declaration of

my counsel, Robert P. Charbonneau (the "Charbonneau Declaration"), filed in support of and

---

[2] *See* https://www.justice.gov/ust/eo/private_trustee/locator/7.htm

[3] See https://www.justice.gov/ust/file/handbook_for_chapter_7_trustees.pdf/download:

### § 2-4(F): METHOD OF CASE ASSIGNMENT

The United States Trustee appoints panel members to chapter 7 cases on a fair and equitable basis by utilizing a blind rotation system that includes all chapter 7 cases.  A system of blind rotation avoids the appearance of favoritism and eliminates the need to make individual judgments about case assignments.  Over a reasonable period of time, this system normally results in asset cases being fairly and equally distributed among the panel.  Because the order of assignment is not available to the public, the "blind" rotation also reduces the likelihood that debtors can engage in "trustee shopping" – that is, timing the filing of a petition in order to have or avoid a specific trustee appointed to the case.

incorporated into by reference to the *Response by Aman Resorts Group Limited and Jacqueline Calderin, Chapter 7 Trustee for the Estate of Peak Hotel Resorts Group Limited, in Opposition to the Motion to Transfer Venue* [Dkt. # 104] (the "Response").[4]

9.      Although my partners, Robert Charbonneau and Christopher Spuches had spoken to Omar Amanat many months prior to commencement of the PHRGL Case about a potential engagement, ECC concluded that no attorney-client representation had been established with Mr. Amanat because the communications were limited, no documents other than public records were reviewed, and ECC declined the representation.  Notwithstanding the foregoing, ECC requested that the Bankruptcy Court set my application to engage ECC [ECF #17 in the PHRGL Case] for hearing (as those are routinely granted *ex parte*) so that the Bankruptcy Court and the United States Trustee could vet the disclosures and determine whether engagement of ECC to represent me as trustee in the PHRGL Case was proper.

10.     Attached hereto as **Exhibit "B"** is a copy of the Bankruptcy Court Order approving ECC's retention and finding that that ECC is disinterested as defined in 11 U.S.C. § 101(14) and as required by 11 U.S.C. § 327(a) [ECF # 27 in the PHRGL Case].

11.     Upon my appointment as Trustee in the PHRGL Case, I caused the commencement of an investigation as to the assets and liabilities of PHRGL.  In the course of my investigation, I considered the following non exhaustive list of issues:

   a.   that the petitioning creditor in the PHRGL Case appeared to have a bona-fide claim arising from the purchase and installation service of electronic equipment for PHRGL's office in Miami Beach, Florida;

   b.   that the Lightray Company purported, through counsel, to have claims against PHRGL in excess of $20 million;

---

[4] Hereinafter, all capitalized terms not specifically define herein have the meaning ascribed to them in the Response.

   c.   that PHRGL is the sole member of Aman Resorts Group Limited ("ARGL");

   d.   that ARGL is the former owner of Silverlink Resorts Limited ("Silverlink"), an entity that owns and operates numerous luxury resorts and hotels worldwide, potentially valued at several hundred millions of dollars;

   e.   that Vadislav Doronin, individually and through entities controlled by him,[5] and as both lender to ARGL and a voting member of ARGL's board of directors, had acquired possession of 100% of the stock of Silverlink; *See*, Press Releases attached as **Composite Exhibit "C"**.[6]

   f.   that the value of Silverlink's stock likely exceeded the amount of Mr. Doronin's claims;

   g.   that ARGL may not have received reasonably equivalent value in exchange for the transfer of 100% of the Silverlink stock;

   h.   that the value of the Silverlink stock appeared to exceed the aggregate sum of ARGL's debts;

   i.   that as the sole shareholder of ARGL, the creditors of the PHRGL estate would benefit from the avoidance under Chapter 5 of the Bankruptcy Code of the transfer of the Silverlink stock (the "Avoidance Action") after payment in full of ARGL's claims; and

   j.   that in order to preserve ARGL's Avoidance Action, I would have to cause the filing of a bankruptcy case for ARGL on or before the expiration of the applicable statute of limitations to bring such claims.

---

[5] The identity of the subject entities owned and/or controlled by Vadislav Doronin is set forth in the Response, but referred to herein, for ease of reference, as "Mr. Doronin".

[6] Additionally, announcing that the only remaining board members are Mr. Doronin and Alan Djanogly, an entity also represented by the Kasowitz firm (*See,* Charbonneau Decl. at ¶ 28).

12.     Because PHRGL and ARGL are companies incorporated in the British Virgin Islands, I required the representation of counsel familiar with the laws of the BVI to provide legal advice with respect to my obligations, duties, and authority to act on behalf of the respective debtors.  To that end, I engaged the firm of Kobre & Kim.  Attached hereto as **Exhibit "D"** is the Order granting my application to retain Kobre & Kim as my special counsel [ECF #40 in the PHRGL Case].

13.     On or about June 19, 2017, I obtained turnover of $2,500.00 belonging to PHRGL on account of a retainer held by the Law Office of Russell B. Adler P.A., a law firm based in Fort Lauderdale, Florida.

14.     The first meeting of creditors pursuant to 11 U.S.C. § 341 (the "341 Meeting") was set for July 12, 2017.   No one appeared and thus, I adjourned the originally scheduled 341 Meeting to August 4, 2017.  I then set out to locate a party who could testify with respect to the assets and liabilities of PHRGL.

15.     Attached as Exhibit B to *Aman Resorts Group Limited and Tarek Investments Limited's Motion to Transfer Venue of Related Bankruptcy Cases from the United States Bankruptcy Court for the Southern District of Florida to this Court* [ECF #93] (the "Kasowitz Motion") is the most current Register of Directors for PHRGL, the first of whom is listed as Mr. Amanat.  The Register of Directors does not provide phone numbers or emails.  Fortunately, I was able to locate Mr. Amanat's phone number from my firm's prior conflict check.   I knew nothing of the other listed directors, other than Mr. Doronin, who upon my current information and belief at the time, would potentially be a litigation target.

16.     Accordingly, I telephoned Mr. Amanat, who confirmed that he was the former Chairman of PRHGL's board of directors, and asked if he would be willing to testify under oath

at the 341 Meeting.  I also asked Mr. Amanat to review the bankruptcy schedules and statement of financial affairs which I had prepared at the Court's direction and advise me whether he believed there might be other assets or liabilities to list.

17.     Thereafter, I amended the bankruptcy schedules [ECF #53 in the PHRGL Case].

18.     On August 2, 2017, Mr. Amanat appeared at the Office of the United States Trustee in Newark, New Jersey for the 341 Meeting.  After Mr. Amanat produced a driver's license issued by the State of New Jersey as identification and was sworn in before the presence of a United States Trustee trial attorney, I conducted and concluded the 341 Meeting by telephone.

19.     In my experience both as a restructuring lawyer and a bankruptcy trustee, a 341 Meeting is generally a preliminary exploration of assets and liabilities.  Exhaustive investigation and discovery in any asset case are typically accomplished via discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure.

20.      In the Kasowitz Motion, the undersigned attorneys of the law firm of Kasowitz Benson Torres LLP (the "Kasowitz Firm") feign "shock"[7] over my decision to seek information from Mr. Amanat and ask him to appear at the 341 Meeting.

21.     Under the circumstances, I stand by my business judgment in accepting Mr. Amanat's testimony at the 341 Meeting for the following reasons: (1) Mr. Amanat formed PHRGL and was likely the person with the most knowledge regarding PHRGL; (2) notwithstanding Mr. Amanat's current legal predicament,[8] upon information and belief, Mr. Amanat is an ousted equity holder of PHRGL and (at present) not the likely target of an avoidance action; (3) the fact that a principal of a debtor may be under investigation or

---

[7] *See* Kasowitz Motion at ¶ 20.
[8] Until the Kasowitz Firm disclosed that Mr. Amanat is set to appear for trial in October in a criminal case, I had no knowledge that Mr. Amanat is currently under criminal indictment.

indictment may weigh in as to credibility in a tribunal, but it does not preclude him or her

from testifying at a 341 meeting with respect to the assets and liabilities of the debtor

(indeed, in my experience, it is not unheard of for a principal of a debtor to have retained

criminal counsel, particularly to deal with tax or securities matters); and (4) I happened to

have his phone number readily available.

22.     As the Chapter 7 trustee of PHRGL, I have a statutory and common law duty

to preserve and maximize the assets of the estate.   In this particular case, and in accordance

with proper exercise of my business judgment, I had a duty to preserve the Avoidance

Action.

23.     In evaluating the decision to reconstitute the board of directors for the purpose

of filing a Chapter 11 case for ARGL, I: (1) looked first to ARGL's Articles of Association

and Memorandum of Association, which provide, in pertinent part, that the board of directors

may be reconstituted by resolution of the members of the company (in this case, PHRGL is

the sole member) with or without notice to other directors; (2) reviewed case law regarding a

chapter 7 trustee's ability to place a subsidiary into a bankruptcy proceeding; (3) sought and

received guidance from the Assistant United States Trustee for the Middle District of Florida

(who is acting in the absence from the jurisdiction of the AUST for the Southern District of

Florida), and (4) sought counsel of both ECC as my general counsel and Kobre & Kim as my

special BVI counsel.

24.     Thereafter, I caused the motion attached hereto as **Exhibit "E"** to be filed

wherein I requested authorization of the Bankruptcy Court to, *inter alia*, approve my

resolutions, as sole member of PHRGL, to reconstitute the board of directors, retain the

services of a registered agent, retain the services of a director, and file the Chapter 11 petition for ARGL [ECF #44 in the PHRGL Case].

25.     In causing the Chapter 11 petition for ARGL to be filed, and in order to determine ARGL's principal place of business, I reviewed, among other things, the records of the NYS Department of State, Division of Corporations, which provide that the address for ARGL in the state of New York is 122 E. 42nd Street, Suite 2100, New York, New York, 10168. Attached hereto as **Exhibit "F"** is a printout of the entity information from the NYS Department of State, Division of Corporations, for ARGL.

26.     The Kasowitz Motion viciously attacks the actions that I undertook in exercise of my business judgment; actions that I undertook after due deliberation, guidance, and upon the advice of counsel.  Second-guessing my business judgment is certainly the Kasowitz Lawyers' prerogative.  Attacking my character and suggesting that my firm and I, along with the other reputable law firms and officers of the court involved in this matter, are complicit in a fraudulent scheme with Omar Amanat, on the other hand, is a blatant attempt to defame and discredit me and my duly retained professionals before this Court.

27.     The Kasowitz Firm, who represents the interest of Mr. Doronin *see, e.g.,* Charbonneau Declaration at ¶ 13 (appending email from Andrew Glenn advising that he represents Vladimir [*sic*] Doronin and his related entities), without citing a single source, conveys indignation at my failure to provide Mr. Doronin notice of my actions.  Had I been required by statute, common law, rule, agreement or any other instrument, to give notice to Mr. Doronin of my actions, I certainly would have done so.  Given that no such requirement exists, I did not.  Indeed, I cannot imagine any circumstance where I would provide notice to a litigation target where no notice is required or warranted.

8

conveys indignation at my failure to provide Mr. Doronin notice of my actions. Had I been required by statute, common law, rule, agreement or any other instrument, to give notice to Mr. Doronin of my actions, I certainly would have done so. Given that no such requirement exists, I did not. Indeed, I cannot imagine any circumstance where I would provide notice to a litigation target where no notice is required or warranted.

28.    In the course of my investigations, I became aware that a prior involuntary case was brought in the Southern District of New York against ARGL by creditors unrelated to the petitioning creditor in the PHRGL Case. I reviewed the docket sheet in the New York matter, which showed that the involuntary petition there had been dismissed with prejudice over 15 months prior to commencement of the PHRGL Case, and that there was no pending motion for rehearing or notice of appeal filed. I, therefore, concluded that there was no petition pending (as defined in FRBP 1014(b)) with respect to either PHRGL or ARGL other than those pending in the Southern District of Florida.

29.    As of the date of this Declaration, I am still the duly appointed Chapter 7 trustee for PHRGL, the sole member of ARGL.

30.    This concludes my Declaration.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Date: August _30_, 2017

_____
Jacqueline Calderín, Chapter 7 Trustee for
Peak Hotels & Resorts Group, Ltd.

EXHIBIT "A"

# Exhibit "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


In re:

                                    CASE NO.: 17-15041 BKC-AJC

                                            CHAPTER 7

PEAK HOTELS AND RESORTS GROUP, LTD


_____ Debtor(s)/


NOTICE OF APPOINTMENT OF CHAPTER 7 TRUSTEE

Pursuant to 11 U.S.C. Section 701, Jacqueline Calderin is hereby
appointed as Trustee in the above referenced case and is hereby
designated to preside at the meeting of creditors.  The Trustee
shall serve under the bond heretofore approved.


Dated:  May 19, 2017


                        Guy G. Gebhardt
                        Acting United States Trustee
                        Region 21


                        by:_____s/_____
                              STEVEN R. TURNER
                        Assistant United States Trustee


Office of the United States Trustee
51 S.W. First Avenue
Suite 1204
Miami, FL 33130
(305) 536-7285

EXHIBIT "B"

# Exhibit "B"



**ORDERED in the Southern District of Florida on June 28, 2017.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

_In re:_

PEAK HOTELS AND RESORTS GROUP,         Case No.: 17-15041-AJC
LTD,

                                       Chapter 7

_____Debtor._____ /

**ORDER GRANTING APPLICATION**
**TO EMPLOY ROBERT P. CHARBONNEAU, ESQ. AND THE**
**LAW FIRM OF EHRENSTEIN CHARBONNEAU CALDERIN AS**
**ATTORNEYS FOR CHAPTER 7 TRUSTEE _NUNC PRO TUNC_ TO MAY 22, 2017**

THIS MATTER came before the Court for hearing on Tuesday, June 27, 2017 at 2:00

p.m. (the "Hearing") upon the Trustee's _Application to Employ Robert P. Charbonneau, Esq._

_and the Law Firm of Ehrenstein Charbonneau Calderin as Attorneys for the Chapter 7 Trustee_

*Nunc Pro Tunc to May 22, 2017* [ECF# 17] (the "Application").[1]  The Court having noted the disclosures made in the Affidavit, and noting the representations made by the Applicant on the record at the Hearing and finding that Robert P. Charbonneau, Esq. and the Law Firm of Ehrenstein Charbonneau Calderin are disinterested as defined in 11 U.S.C. § 101(14) and as required by 11 U.S.C. § 327(a) and represent no interest adverse to the Trustee or the estate in the matters upon which said attorneys are to be engaged, that said attorneys' employment is necessary and would be in the best interests of the estate and the creditors, **ORDERS** as follows:

1.      The Application is **GRANTED**.

2.      The Court **FINDS** that Robert P. Charbonneau and ECC are disinterested as defined in 11 U.S.C. § 101(14) and as required by § 327(a).

3.      The Trustee is authorized to retain Robert P. Charbonneau and ECC as counsel for Jacqueline Calderin, Chapter 7 Trustee.

4.      The Trustee's employment of Robert P. Charbonneau, Esq. and ECC is approved pursuant to 11 U.S.C. §§ 327 and 330 *nunc pro tunc* to May 22, 2017.

# # #

**SUBMITTED BY:**

Robert P. Charbonneau
Florida Bar No: 968234
rpc@ecclegal.com
EHRENSTEIN CHARBONNEAU CALDERIN
***Counsel for Chapter 7 Trustee***
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002
www.ecclegal.com

(Copy furnished to Attorney Charbonneau, Esq., who is directed to serve a copy of this Order upon all interested parties)

---

[1]  Any and all terms not expressly defined herein, shall bear the meaning ascribed to them in the Application.

COMPOSITE EXHIBIT "C"

# Composite Exhibit "C"

# LATEST NEWS & PRESS RELEASES

## PRESS RELEASE: Doronin takes full control of Aman

As of 11th of August 2015 Pontwelly Holding Company Ltd (Pontwelly), which was previously the largest lender to Aman, has taken full ownership of the Aman hotel business (Silverlink Resorts Ltd).

Following this restructuring the current Chairman of Aman, Mr Vladislav Doronin and Board Director, Mr Alan Djanogly, remain as the only two directors.

Olivier Jolivet, CEO of Aman said, "This is very positive news for Aman and will add much needed boardroom stability. This together with Vladislav's vision will help take the business forward."

Vladislav Doronin, Chairman of Aman said, "I am delighted by this re-structuring. The streamlined management and access to further investment this gives will allow us to capitalise on all and every opportunity ensuring Aman remains as the world's leading luxury hotel brand."

Owners and staff at Aman have been informed that whilst this is corporate restructure, from a day to day business prospective it remains very much a case of 'business as usual' for the luxury hotel Group.

Mr Doronin will continue to pursue his legal claims against Mr Amanat separately. Mr Amanat has no further involvement with Aman.

SEE ALL NEWS (http://vladislavdoronin.com/en/category/news-about-vladislav-doronin/)

### Previous News & Press Releases

NEWS: HOSPITALITY NET: Eleven New Hotels For Vladislav Doronin's Aman
(http://vladislavdoronin.com/en/2017/03/31/news-hospitality-net-eleven-new-hotels-vladislav-doronins-aman/)

NEWS: TRAVEL WEEKLY ASIA: Aman owner: We will safeguard the brand
(http://vladislavdoronin.com/en/2017/03/31/news-travel-weekly-asia-aman-owner-will-safeguard-brand/)

NEWS: FTNNews: Aman to open 11 new hotels (http://vladislavdoronin.com/en/2017/03/31/news-ftnnews-aman-open-11-new-hotels/)

NEWS: LATTE LUXURY NEWS: Eleven New Hotels For Vladislav Doronin's Aman
(http://vladislavdoronin.com/en/2017/03/31/news-latte-luxury-news-eleven-new-hotels-vladislav-doronins-aman/)

NEWS: HOTEL MANAGEMENT: Aman plans expansion into Europe, Americas and Asia
(http://vladislavdoronin.com/en/2017/03/30/news-hotel-management-aman-plans-expansion-europe-americas-asia/)

Media (http://vladislavdoronin.com/en/media/)     Contact (http://vladislavdoronin.com/en/contact/)     Disclaimer (http://vladislavdoronin.com/en/disclaimer/)

© Vladislav Doronin

ADVERTISEMENT

No CAPEX for a New Website? No Problem.
Use your OPEX with our monthly payment options

LEARN MORE

hebs digital

PRESS RELEASE                                          14 August 2015

# Pontwelly Holding Company Ltd Takes Over hospitalitynet™ hip of Aman Resorts

⏱ 1 min read

LONDON, August 13, 2015 – As of 11th
August 2015, Pontwelly Holding                    ĀMAN
Company Ltd (Pontwelly) has become
the owner of Aman hotel business (Silverlink Resorts Ltd) in
full satisfaction of the debt finance provided to Aman
Resorts Group Ltd (ARGL). This leaves Pontwelly as the 100%
owner of Aman Hotels. Under this restructure the current
Chairman of Aman, Mr Vladislav Doronin and Board
Director, Mr Alan Djanogly, remain as the only two directors.

*Aman was founded in 1988 with the vision of building a
collection of intimate retreats with the*

*unassuming warm hospitality of a gracious private
residence. The first, Amanpuri (place of peace) in Phuket,
Thailand, introduced*    WE USE COOKIES TO ENSURE YOU GET THE BEST EXPERIENCE    ✕
*grown to encompass*                    ON OUR WEBSITE
*Cambodia, China, France, Greece, Indonesia, India, Italy,*

ADVERTISEMENT




Designed for hospitality professionals:
80% online
20% on-site

MBA IN HOSPITALITY

LEARN MORE

©1995-2017 Hospitality Net™ All rights reserved – Hospitality Net is powered by Hsyndicate – Feedback

WE USE COOKIES TO ENSURE YOU GET THE BEST EXPERIENCE   ✕
ON OUR WEBSITE

# Exhibit "D"



EXHIBIT "D"

**ORDERED in the Southern District of Florida on July 13, 2017.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*

PEAK HOTELS AND RESORTS GROUP,
LTD,                                    Case No.: 17-15041-AJC

                                        Chapter 7
_____Debtor._____ /

**ORDER GRANTING *EX PARTE* APPLICATION TO EMPLOY ADRIANA**
**RIVIERE-BADELL, ESQ. AND THE LAW FIRM KOBRE & KIM AS SPECIAL**
**COUNSEL FOR CHAPTER 7 TRUSTEE *NUNC PRO TUNC* TO JUNE 28, 2017**

THIS MATTER came before the Court on July 12, 2017 at 10:30 a.m. upon the Trustee's

*Ex-Parte Application to Employ Adriana Riviere-Badell, Esq. and the Law Firm of Kobre & Kim*

*as Special Counsel for the Chapter 7 Trustee Nunc Pro Tunc to June 28, 2017* [ECF# 33] (the

"Application"), and having noted the disclosures made therein, finding that Adriana Riviere-

Badell, Esq. and the Law Firm of Kobre & Kim ("K&K") and having noted the disclosures made

therein, finding that the K&K represents no interest adverse to the Debtor or the estate in the

matters upon which K&K is to be engaged, that K&K's employment is necessary and would be in the best interests of the estate and the creditors, **ORDERS** as follows:

1.     The Application is **GRANTED**.

2.     The Court **FINDS** that Adriana Riviere-Badell and K&K as special counsel in the above-captioned bankruptcy case to represent the Trustee and to provide the Legal Services as set forth in the Application.

3.     The Trustee is authorized to retain Adriana Riviere-Badell and K&K as special counsel for Jacqueline Calderin, Chapter 7 Trustee.

4.     The Trustee's employment of Adriana Riviere-Badell, Esq. and K&K is approved pursuant to 11 U.S.C. §§ 327 and 330 *nunc pro tunc* to June 28, 2017.

# # #

**SUBMITTED BY:**

Robert P. Charbonneau
Florida Bar No: 968234
rpc@ecclegal.com
EHRENSTEIN CHARBONNEAU CALDERIN
*Counsel for Chapter 7 Trustee*
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002
www.ecclegal.com

(Copy furnished to Attorney Charbonneau, Esq., who is directed to serve a copy of this Order upon all interested parties)

EXHIBIT "E"

# Exhibit "E"

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
#### www.flsb.uscourts.gov

*In re:*                                        Case No.: 17-15041-AJC

PEAK HOTELS AND RESORTS GROUP,     Chapter 7
LTD,

_____Debtor._____/

## TRUSTEE'S EMERGENCY OMNIBUS MOTION TO:

### (A) APPROVE TRUSTEE'S SELECTION OF REGISTERED AGENT *NUNC PRO TUNC* TO JULY 28, 2017; (B) AUTHORIZE TRUSTEE TO DIRECT THE FILING OF U.S. AND BVI INSOLVENCY PROCEEDINGS FOR DEBTOR'S SUBSIDIARY *NUNC PRO TUNC* TO AUGUST 1, 2017; (C) AUTHORIZE TRUSTEE TO APPOINT DIRECTOR OF DEBTOR'S WHOLLY OWNED SUBSIDIARY *NUNC PRO TUNC* TO AUGUST 1, 2017; AND (D) AUTHORIZE THE TRUSTEE TO ENTER INTO A CROSS-BORDER PROTOCOL AGREEMENT

---

#### Basis for Emergency Relief[1]

Under British Virgin Islands ("BVI") Law, the anchor date for establishing an avoidable insider preference claim under BVI law is as early as August 10, 2017.  The Trustee, on behalf of this estate and that of its subsidiary, must take certain action in advance of filing a BVI proceeding for the Debtor's subsidiary, for which she seeks Court approval herein.  Accordingly, the Trustee requires a hearing in this matter at the Court's first available date.

---

Jacqueline Calderin, as the Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of

Peak Hotels and Resorts Group Limited ("PHRGL" or the "Debtor"), by and through

undersigned counsel and pursuant to Sections 363(b)(1) and 105 of title 11 of the United States

Code 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code"), requests entry of an order of this

---

[1] In the alternative to *Nunc Pro Tunc* relief, the Trustee requests an emergency hearing for prospective relief.

Court: (A) approving Trustee's selection of a registered agent; (B) authorizing Trustee to direct the filing of insolvency proceedings for the Debtor's wholly owned subsidiary *nunc pro tunc* to August 1, 2017; (C) authorizing the Trustee to reconstitute the Debtor's board of directors and appoint a director to the board of directors for the purpose of effectuating such filings *nunc pro tunc* to August 1, 2017; and (D) approve cross-border protocol agreement by and between the U.S. and BVI estates[2], and in support thereof states as follows:

## I.  JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A).

## II.  BACKGROUND

### A.  The Bankruptcy Case

2.      On April 24, 2017 ("Petition Date"), High-Def Zone, Inc., as petitioning creditor, initiated this matter upon the filing of an involuntary petition for relief under Chapter 7 of the Bankruptcy Code [ECF #1] (the "Involuntary Petition").

3.      On May 18, 2017, the Court entered the Order for Relief under Chapter 7 of the Bankruptcy Code [ECF #11] (the "Order for Relief") based upon the Debtor's failure to file any timely pleading or defense to the Involuntary Petition.

4.      On May, 22, 2017, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate [ECF #13].

---

[2] The form of protocol agreement is in the process of being prepared.  Such protocol will be filed and circulated to interested parties in advance of the hearing on this Motion or if not ready by then, the Trustee would request a further expedited hearing on that relief .

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2001· www.ecclegal.com**

5.      On June 16, 2017, the Trustee filed the Schedules of Assets and Liabilities for the Debtor pursuant to Bankruptcy Rule 1007(k) [ECF #22] (the "<u>Schedules</u>"). As set forth in the Schedules, it does not appear that the Debtor has any secured creditors based upon the Trustee's search of public records.

6.      Although the Debtor failed to respond to the Involuntary Petition and the Order for Relief was properly entered by this Court, it is possible that the Involuntary Petition may be challenged after she commences the litigation discussed below.

**B.   The Debtor's Assets and Potential Causes of Action**

7.      The Debtor is an entity organized under the laws of the British Virgin Islands ("<u>BVI</u>"). Approximately two-thirds of the equity interests in the Debtor are owned by Tarek Investments Ltd. ("<u>Tarek</u>"), a BVI entity, and the balance of the equity interests are owned by Peak Group and Resorts Limited, also a BVI entity.

8.      The Debtor's primary assets are its interests in several corporate entities, including a 100% interest in Aman Resorts Group Limited ("<u>ARGL</u>"), which is the former owner of Silverlink Resorts Limited ("<u>Silverlink</u>"). Silverlink, together with its subsidiaries, owned and operated luxury resorts and hotels around the world in addition to owning the related intellectual property.

9.      Upon information and belief, and based upon the Trustee's initial investigation, pursuant to an improper foreclosure action initiated by Pontwelly Holding Company Limited ("<u>Pontwelly</u>"), the purported secured lender of ARGL, Pontwelly obtained control of Silverlink—ARGL's sole, material asset. Pontwelly further transferred its interest in Silverlink to A.H. Overseas Limited ("<u>Overseas Ltd.</u>"). Both Tarek (the two-thirds owner of the Debtor) and

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2001· <u>www.ecclegal.com</u>**

Pontwelly (the purported secured lender of ARGL) are owned or controlled by the same individual, Vladislav Doronin.

10.    The improper foreclosure and transfer of Silverlink to Pontwelly (the "Transfer") was not done in accordance with applicable law and was for less than reasonably equivalent value. Accordingly, the Trustee believes that the transfer of Silverlink to Pontwelly is an avoidable transfer. In order to recover the transfer and pursue any related causes of action, the Trustee, as the sole member of ARGL, intends to direct the filing of a chapter 11 petition for ARGL as well as a voluntary winding up process under BVI law (together, the "ARGL Proceedings"). Immediately upon commencing the ARGL Proceedings, the debtor in possession will then commence an action or actions to avoid and recover the transfer of Silverlink.

11.    Upon information and belief, the operative date of the Transfer from which the two-year statute of limitations runs to pursue recovery of the Transfer is on or around August 10, 2015 (the "BVI Preference Deadline").

12.    Under BVI law, the filing of an application for a voluntary winding up proceeding (hereinafter referred to as a "Winding Up") establishes the anchor date for preference actions. *See, British Virgin Islands Insolvency Act,* 2003 (No. 5 of 2003) s.244.  Accordingly, in order for the Trustee to preserve ARGL's ability to recover the Transfer, the application for the Winding Up must be initiated on or before August 10, 2017.

13.    As of the Petition Date, PHRGL was delisted[3] as an active BVI entity from the corporate registry.  The Trustee believed that it was essential to reinstate PHRGL so that the Trustee may take actions on behalf of ARGL as its sole shareholder.

---

[3] A delisting of an entity is analogous to an administrative dissolution under Florida corporate law.  However, unlike a Florida administrative dissolution where directors and officers may still

4

14.     Under BVI law, a creditor has direct standing to seek reinstatement of a debtor entity for the purpose of placing the entity into a Winding Up. This Court previously granted creditor LightRay Imaging Co. ("LightRay") stay relief to submit the application for reinstatement [ECF #36]. Indeed LightRay did soon an emergency basis and as of July 28, 2017, PHRGL has been reinstated by the BVI Court registry. The reinstatement now authorizes the Trustee, under BVI law, to take certain actions on behalf of PHRGL that she was previously not authorized to do, such as take actions regarding PHRGL's assets (in this case the stock of ARGL) in accordance with BVI law.

15.     However, PHRGL must have a registered agent of record in order to exist as an active company. Accordingly, the Trustee has selected and engaged a registered agent for PHRGL.

### III. RELIEF REQUESTED AND BASIS THEREFOR

#### A. Approval of Trustee's selection of Registered Agent *Nunc Pro Tunc* to July 28, 2017

16.     As set forth above, PHRGL must be reinstated under BVI law before any action can be taken on its behalf. Given the impending BVI Preference Deadline, LightRay, with the Trustee's consent, submitted the application for emergency reinstatement on July 28, 2017. In conjunction with the application, the Trustee interviewed Stephen Briscoe of FFP  (BVI) Limited ("FFP") and has selected FFP to act as PHRGL's registered agent (the "Registered Agent").

17.     The Trustee has conducted her own independent investigation of the Registered Agent's credentials and reputation, and believes, that the Registered Agent is well suited to carry

---

take certain actions on behalf of the inactive corporation, under BVI law a delisted entity is precluded from acting, including most significantly, disposing of any assets such as voting the shares of a subsidiary and initiating a voluntary winding up, unless and until the entity has been reinstated.

5

out the services detailed in his proposed engagement agreement, attached hereto as **"Exhibit "A"**, the "Registered Agent Agreement").  Accordingly, the Trustee seeks authority of this Court to approve her selection of the Registered Agent and authorize the Trustee to execute the Registered Agent Agreement.  LightRay has advanced the costs of reinstatement as well as the Registered Agent's fee of $5,000.00 for the Registered Agent's services as registered agent (Attached hereto as **Exhibit "B"** is a copy of the invoice issued by the Registered Agent for all sums due and paid by LightRay).  Any future payments due under the Registered Agent Agreement would be allowed as an administrative claim of the estate and payable by LightRay (or by the estate through financing provided by LightRay).

18.     *Nunc Pro Tunc* relief is appropriate where the relief granted "will not prejudice any party or frustrate the purposes of the Bankruptcy Code.  *In re. Consolidated Auto Recyclers, Inc.,* 123 B.R. 130, 142 (D.Maine 1991), *citing In re. Auto-Train Corp.*, 810 F.2d 270, 275 (D.C. Cir.1987).

19.     In this case, the Trustee submits that she has "acted in a manner consistent with [her] fiduciary duty to preserve the assets of the estate, and to the extent possible, maximize their value" and as such *nunc pro tunc* relief is appropriate under the circumstances.  *Id., relying on Mosser v. Darrow,* 341 U.S. 267,274, 71 S.Ct. 680,683, 95 L.Ed 927 (1951).

**B. The Trustee seeks authority to submit ARGL to a concurrent Chapter 11 Proceeding and BVI Winding Up, and to select a director to ARGL's board of directors to effectuate the ARGL Proceedings.**

20.     The Trustee seeks an Order of this Court authorizing the Trustee to direct the filing of a Chapter 11 case and a BVI Winding Up for ARGL to be co-administered.

21.     While the Trustee is not aware of any binding law that prohibits the Trustee, in her business judgment, from reconstituting the board of directors and submitting ARGL to a

Chapter 11 proceeding, the Trustee believes it is appropriate to seek Court approval in this case given that the voting of a subsidiary's stock is an act arguably not within the ordinary course of administration of a Chapter 7 case. Moreover, one bankruptcy court has found that, although the reconstitution of the board of directors and filing a Chapter 11 case for its subsidiary is appropriate from a corporate governance standpoint (subject to the Trustee's business judgment), given that doing so is outside the ordinary course of business, court approval is required *Id. at 140* (Court approved, on a *nunc pro tunc* basis, the trustee's reconstitution of the subsidiary's board of director, his resolution to appoint himself as the sole director, and the filing of the Chapter 11 for the subsidiary).

22.    Section 363(b)(1) of the Bankruptcy Code, provides, in pertinent part, that "[t]he Trustee, after notice and a hearing, may use …, other than in the ordinary course of business, property of the estate."

23.    The decision to "use" property of the estate outside the ordinary course of business is governed by the Trustee's business judgment, under which, if exercised in "good faith, upon a reasonable basis, and within the scope of [her] authority under the Code, [she] may proceed without interference. *Id. (internal citations omitted).*

24.    Here, the Trustee believes that it is in the best interest of the estate to commit ARGL to the ARGL Proceedings without haste in order to preserve the one known asset of value of the ARGL estate, i.e., the Transfer. As the parent of ARGL, the PHRGL estate will benefit directly from any recovery made to ARGL's sole equityholder. Accordingly, the Trustee seeks approval of this Court to direct the filing of: a Chapter 11 case for ARGL and a Winding Up in

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2001· www.ecclegal.com**

the BVI *nunc pro tunc* to August 1, 2017.[4]  In addition to directing the commencement of the ARGL Proceedings, the Trustee seeks authority to retain a director for ARGL who is a seasoned fiduciary in both the U.S. and BVI.

25.    ARGL's Articles of Association provide that the board of directors may be reconstituted by "a resolution consented to in writing by a majority of the votes of [s]hares entitled to vote thereon." (Articles of Association § 9.1; Memorandum of Association § 12.1(i)(2))[5].  Given that ARGL's sole shareholder is PHRGL, the Trustee believe she is authorized to vote to reconstitute the board of directors by resolution.

26.    The Trustee, in her business judgment, has determined that reconstituting the board of directors and selecting a director who is also a professional fiduciary to see the ARGL Proceedings through, subject to a consensual cross-border protocol agreement (as described below), is in the best interest of the estate.  To that end, the Trustee has interviewed and selected Kalo Advisors f/k/a AlixPartners Caribbean ("Kalo") to serve through its affiliate, Madison Director Services Limited ("Madison"), as its sole director.

27.    Kalo is a leading restructuring and insolvency practice with offices in the BVI and Grand Cayman and extensive fiduciary experience in insolvency proceedings in the United States, BVI, Grand Cayman and the United Kingdom.  **Attached hereto as Exhibit "C"**, and incorporated herein, by reference, is an introductory letter along with the bios of Madison's principals, Stuart MacKellar and Paul Pretlove.[6]

---

[4] *Nunc Pro Tunc* relief is only being sought as to the Winding Up, as the filing thereof is sufficient to preserve the BVI Preference Deadline.
[5] The Articles of Association shall be made available to any party upon request to the undersigned.
[6] Parties in interest are also referred to Kalo's website for additional information.  http://www.kaloadvisors.com/

**EHRENSTEIN CHARBONNEAU CALDERIN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2001· www.ecclegal.com

28.     The Trustee believes that Madison is particularly well-suited to serve as the director given its excellent reputation and extensive experience in BVI cross-border insolvency proceedings.  Moreover, there is no proscription under BVI law for Kalo to serve as the BVI fiduciary in the Winding Up. The Trustee believes that such an arrangement will bring efficiency to the estates and streamline the respective concurrent administrations.

29.     Finally, Madison has agreed to serve as ARGL's director for an annual flat fee of $3,000.00 (the "Director Fee").  The Trustee believes that the Director Fee is fair and reasonable. Moreover, because Madison, in the ordinary course of its business, already has a bond in place and professional liability insurance well in excess of the thresholds established by the BVI, the estate does not have to come out of pocket to procure a separate bond or professional liability coverage for a U.S. director.

**C. The Trustee seeks authority to enter into a cross-border administration protocol agreement by and between the Trustee as shareholder of the ARGL Chapter 11 estate and the ARGL Winding Up estate.**

30.     The parties are in the process of creating a cross-border protocol agreement intended to facilitate the coordination of ARGL Proceedings ("Protocol Agreement").  Given the exigency caused by the impending BVI Preference Deadline, the form of Protocol Agreement has not been finalized as of the date of this filing, although it is understood by all parties presumed to be materially involved the ARGL Proceedings, to wit, Madison as director and Kalo as potential liquidator, that such Protocol Agreement will preserve unto the Trustee oversight and veto powers as the Court-appointed representative of ARGL's shareholder.  A copy of the proposed Protocol Agreement will be circulated to all parties and filed, to the extent possible, prior to the hearing on this Motion.

9

**WHEREFORE** the Trustee respectfully requests the Court enter an Order: (A) approving Trustee's selection of Registered Agent and authorizing the Trustee to enter into the Registered Agent Agreement; (B) authorizing Trustee to direct the filing of insolvency proceedings for the Debtor's wholly owned subsidiary and appoint a director to the board of directors for the purpose of effectuating such filings *nunc pro tunc* to August 1, 2017; and (D) approve the entry of the Protocol Agreement; (E) grant any other, further relief this Court deems equitable and just.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).*

Respectfully submitted on August 1, 2017 by:

EHRENSTEIN CHARBONNEAU CALDERIN
***Counsel for Chapter 7 Trustee***
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
T. 305.722.2002
www.ecclegal.com

By: */s/ Jacqueline Calderín*
        Robert P. Charbonneau
        Florida Bar No: 968234
        rpc@ecclegal.com
        Jacqueline Calderin
        Florida Bar No: 134414
        jc@ecclegal.com

**EHRENSTEIN CHARBONNEAU CALDERIN**
**501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2001· www.ecclegal.com**

# Exhibit "A"

REGISTERED AGENT SERVICES AGREEMENT

BETWEEN

FFP (BVI) LIMIITED

AND

PEAK HOTELS AND RESORTS GROUP, LIMITED



**THIS REGISTERED AGENT SERVICES AGREEMENT** is made the   day of July 2017.

**BETWEEN**

**FFP (BVI) LIMITED,** a company incorporated in the British Virgin Islands and having its registered office at
Craigmuir Chambers, PO Box 71, Road Town, Tortola, VG 1110, British Virgin Islands (**"FFP");**

**AND:**

**PEAK HOTELS AND RESORT GROUP, LIMITED.,** a company currently having its registered office at Nemours Chambers, Qwomar Complex 4/F, P.O. Box 3170, Road Town, Tortola VG1110, British Virgin Islands (the **"Company").**

**WHEREAS**

A. the Company has requested that FFP provide the Company's Registered Agent and Registered Office and perform certain administrative and other corporate services in the British Virgin Islands; and

B. that FFP has agreed to do so subject to the terms and conditions of this Agreement.

**IT IS AGREED** as follows:

**1.    DEFINITIONS AND INTERPRETATION**

1.1   In this Agreement, unless the context otherwise requires:-

**Accounting Period** means the period of 12 months ending on 31 December in each year;

**Agreement** means this agreement and the Schedule;

**Articles** means the Memorandum and Articles of Association of the Company, as amended from time to time;

**Commencement Date** means the date of this Agreement;

**Directors** means directors, from time to time, of the Company and **Director** means any one of them;

**Law** means the International Business Companies Act of the British Virgin Islands, as amended from time to time**;**

**Members** means members, from time to time, of the Company and **Member** means any one of them.

**Officers** means officers, from time to time, of the Company and **Officer** means any one of them;

**Registrar** means the registrar of companies in and for the British Virgin Islands;

**Schedule(s)** means the schedule(s) to this Agreement;



**Services** means the services set out in part 1 of the Schedule; and

**Shares** means shares in the capital of the Company and **Share** means any one of them.

1.2  Reference to any statute or statutory provision shall include a reference to any statute or statutory provision which amends, extends, consolidates or replaces the same (save to the extent that any amendment, extension, consolidation or replacement would impose more onerous obligations than otherwise exist at the date of this Agreement) or which has been amended, extended, consolidated or replaced by the same and shall include any orders, regulations, instruments or other subordinate legislation made under the relevant statute or statutory provision.

1.3  The singular includes the plural and vice versa and any gender includes all genders.

1.4  Save as otherwise provided herein or as the context may otherwise require, expressions in this Agreement which are defined in the Law or the Articles shall have the meanings given to them therein.

1.5  The clause headings are inserted for convenience only and shall not affect the construction of this Agreement.

## 2.  APPOINTMENT OF FFP

With effect from the Commencement Date, the Company appoints FFP to provide the Services and such other services **("Additional Services")** as the parties agree from time to time to the Company and FFP undertakes to do so in accordance with the terms of this Agreement.

## 3.  DUTIES OF THE COMPANY

3.1  The Company shall promptly deliver to FFP, to allow FFP to comply with its obligations pursuant to this Agreement, all documents, notices and information (in original form or duplicates of the validly executed originals) including, without limitation, notices and minutes of meetings of the Directors or Members, resolutions (including written resolutions) passed by the Directors or Members, notices of appointment as, or letters of resignation from, any Director or Officer, notice of any changes in the particulars relating to any Director or Officer, offering documents relating to all or part of the Shares, charges or mortgages affecting any property of the Company, instruments of transfer, cancelled share certificates, powers of attorney and financial statements (if any).

3.2  The Company shall promptly deliver to FFP, from time to time as FFP may request, such documents (including, without limitation, notarised copies of original documents, notarised affidavits and letters of reference) as FFP may regard as necessary, in its absolute discretion, to:-

    3.2.1  establish the identity of each Member or beneficial owner of 10% or more of the Shares, each person having or exercising control or significant influence over the assets of the Company, the Directors and any other person authorised by the Company to provide instructions to FFP in relation to the Company and its assets;

    3.2.2  establish the source of funds received or receivable by the Company and the nature of the Company's business; and

3.2.3   verify that any funds received or receivable by the Company do not represent the proceeds of criminal conduct and that the Company's business activities are lawful.

3.3   FFP may refuse to perform its obligations under the Agreement, if, in its reasonable judgment, it would be improper or unlawful to do so.

3.4   The Company shall, no later than December 31st in each year, pay to FFP an amount equal to the annual fees payable to the Registrar in respect of the Company for the following calendar year and FFP shall not be responsible for any late payment penalties which the Company may incur as a result of any failure by the Company to render payment pursuant to this clause to FFP on a timely basis.

3.5   Without prejudice to any other provision of this Agreement, the Company shall:-

3.5.1   promptly deliver to FFP copies of all amendments made to the Articles;

3.5.2   procure that, in the event of it being registered as an exempted company, its business shall be carried on mainly outside the British Virgin Islands and that it shall not trade with any person, firm or corporation within the British Virgin Islands except in furtherance of its business outside the British Virgin Islands;

3.5.3   not issue bearer Shares; and

3.5.4   be deemed, in the absence of written instructions to FFP delivered prior to January 1st in each year, to authorize and instruct FFP to execute and deliver to the Registrar, on the Company's behalf, any annual return to be made by the Company pursuant to the Law and unless otherwise advised by the Company in accordance with this clause; and

3.5.5   FFP shall be entitled to assume that the Company has complied with its obligations pursuant to this Agreement without further enquiry and the Company shall indemnify FFP, on demand, against any loss or liability arising from any such assumption or the actions of FFP in reliance of it.

3.6   The Company acknowledges that FFP may, at its absolute discretion, decline to execute and/or deliver any annual return required to be made by the Company pursuant to the Law without incurring any penalty for doing so provided that the FFP shall serve written notice on the Company to that effect not less than 7 days prior to the last date on which the annual return in question can be filed on a timely basis.

## 4.   REMUNERATION OF FFP

FFP shall be remunerated in accordance with part 2 of the Schedule.

**5.    UNDERTAKINGS AND CONFIDENTIALITY**

5.1    Each party undertakes to the other to use its reasonable endeavours to procure that no breach of any law or regulation of the British Virgin Islands occurs in connection with the operation of the Company's business.

5.2    The Company undertakes to FFP that it shall use its reasonable endeavours to procure that its business is not carried on in breach of any applicable laws of any other jurisdiction and that it shall keep FFP informed on a timely basis of all material developments in its business and other activities.

5.3    FFP shall keep confidential all documents, materials and other information relating to the business, financial position or state of affairs of the Company and it shall not, without the prior written consent of the Company, disclose any of the aforesaid unless:-

    5.3.1    the disclosure is in respect of any information already known to the recipient;

    5.3.2    the information concerned is or becomes a matter of public knowledge otherwise than as a result of a breach by FFP of its obligations pursuant to this clause 5.3;

    5.3.3    FFP shall determine, in good faith, that such disclosure is required by any law, order of court or pursuant to any direction or demand made by a government or regulatory body, compliance with which is within the general practice of persons to whom it is addressed; and

    5.3.4    such disclosure is made to other professional advisers who receive the information subject to a duty of confidentiality.

**6.    TERMINATION**

6.1    This Agreement shall be terminated by either party giving to the other not less than one month's written notice to that effect provided always that such termination shall be without prejudice to:-

    6.1.1    the due performance by the terminating party of all of its obligations:-

            (a)  up to the date of such termination (whether those obligations are then actual or contingent); and
            (b)  without prejudice to paragraph (a) above, pursuant to clause 5;

    6.1.2    the remedies of the other party in respect of any breach thereof; and

    6.1.3    the terms of clause 7 which, together with all rights and remedies thereunder, shall survive the termination of this Agreement, howsoever arising, in perpetuity.

6.2    Upon termination of this Agreement:-

    6.2.1    FFP shall promptly deliver up to the Company all documents, papers, records and registers belonging to the Company in its possession;

6.2.2   the Company shall reimburse to FFP any fees, charges, taxes, duties, imposts and expenses of the type set out in part 2 of the Schedule not previously reimbursed; and

6.2.3   the Company shall not wrongfully represent itself as continuing to receive the Services from, or being connected with, FFP.

6.2.4   The Company shall, on the termination of the appointment of FFP under the Agreement, if still in existence, procure the passage of a board resolution to transfer the registered office and agent of the Company to an alternative service provider and FFP shall be entitled to serve notice on the Registrar stating that it is no longer providing the registered office and registered agent services to the Company.

## 7.   INDEMNIFICATION

7.1   FFP shall be entitled to assume that the approval and authorisation of the Company of any act, deed, document, matter or thing has been given if FFP shall have been notified, whether in writing, verbally, by telephone, facsimile, E-mail, telex or cable, by any Director, Officer or authorised signatory of the Company or by any legal adviser, manager or administrator appointed by the Company and FFP shall not be obliged to make further enquiry thereafter of the Company and shall be under no liability or obligation whatsoever to the Company for so assuming and relying, whether or not such approval or authorisation has, in fact, been given.

7.2   The Company shall indemnify FFP, its affiliates and their respective directors, officers, employees and agents, on demand, in respect of all liabilities, actions, proceedings, claims, demands, costs and expenses whatsoever which it or any of them may incur or be subject to as a consequence of providing the Services to the Company except to the extent that the same are incurred as a result of the wilful default, dishonesty, fraud or gross negligence of FFP, its affiliates, their respective directors, officers, employees or agents. This indemnity shall survive termination of the Agreement. No person shall be found to have committed actual fraud or wilful default under the Agreement unless or until a court of competent jurisdiction shall have made a finding to that effect.

7.3   Without prejudice to clause 7.2, FFP shall not be liable for any liabilities, actions, proceedings, claims, demands, costs and expenses incurred by the Company as a result of any failure by the Company to give any instructions, authorisations, approvals, information and/or documents to FFP on a timely basis to allow FFP to fulfil its obligations pursuant to this Agreement.

7.4   The benefit of the indemnity and waiver set out in clauses 7.2 and 7.3 respectively shall expressly inure to the benefit of any director, officer, or employee or agent of FFP existing or future and to the benefit of any successor of FFP hereunder.

## 8.   NON-EXCLUSIVE AGREEMENT

8.1   FFP shall not, by virtue of this Agreement, be prevented or restricted from providing the Services to or carrying on any other business with any other person.

8.2   Nothing in this Agreement shall be deemed to constitute a partnership between the parties nor constitute any party the agent of the other party for any purpose other than as expressly provided for and neither FFP nor any person affiliated with it shall, by virtue of this Agreement, be liable to



account to the Company for any profit which may accrue to it or them from, or by virtue of, any transaction entered into between the Company and FFP or its affiliates.

## 9. ASSIGNMENT

9.1 This Agreement shall not be capable of being assigned by either party without the prior written consent of the other party, provided that FFP shall be entitled, without consent of or notice to the Company, to assign the benefit of this Agreement subject always to the burden thereof, or to sub-contract the provision of any of the Services, in either case, to any other person with which it is affiliated.

## 10. NOTICES

Any notices permitted or required pursuant to this Agreement shall be deemed validly served if served by hand, e-mail, facsimile or pre-paid airmail (in the case of hand delivery, e-mail and facsimile, at 10.00am local time at the place of receipt on the business day following the date of transmission or delivery and in the case of mail, fourteen days after the date of posting) as follows:

10.1 in the case of the Company, to:

the address specified beneath its name on the execution page of this Agreement or by facsimile or by email to, respectively, the facsimile number or email address there appearing;

10.2 in the case of the FFP, to:

FFP (BVI) Limited
2nd Floor, TICO Building
Wickhams Cay II, Road Town
Tortola VG1110
British Virgin Islands
Telephone: +1 284-494-2714
Fax: +1 284-494-2715
E-mail: Stephen.briscoe@ffp.vg

10.3 and to such other address or for the attention of such other person as may from time to time be notified by one party to the other party by notice given in accordance with the provisions of this Agreement.

## 11. GENERAL

11.1 Time is of the essence as regards any date or period mentioned in this Agreement, save to the extent that any such date or period is varied by agreement between the parties when time shall be of the essence as regards any date or period as so varied.

11.2 FFP is authorised to maintain the statutory registers of the Company and any other records relating to the Company or its affairs on computer and to produce at any time during the course of legal proceedings, copies or reproductions of these documents made by photographic, photostatic or data processing procedures as juridical proof of the contents thereof.



11.3 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same instrument. An executed counterpart of this Agreement delivered by facsimile shall be as effective as a manually executed and delivered counterpart of this Agreement.

11.4 If any clause or provision of this Agreement is found to be invalid or unenforceable for any reason whatsoever, such invalidity or unenforceability shall not, of itself, affect the remaining clauses or provisions.

11.5 This Agreement constitutes the entire agreement between the parties in respect of the subject matter hereof and supersedes any prior agreement, arrangement or understanding between the parties in respect thereof.

**12. GOVERNING LAW**

12.1 This Agreement shall be governed by and construed in accordance with the laws of the British Virgin Islands and the courts of the British Virgin Islands shall have exclusive jurisdiction to resolve any disputes relating to the terms of this Agreement.

13. Bankrupty Crurt approval. This agreement is Subject to the approval of the U.S. Bankruptcy Court for the Southern District of Florida.



**IN WITNESS WHEREOF** the parties have executed this Agreement as a deed the day and year first before written.

**SIGNED** for and on behalf of
**PEAK HOTELS AND RESORTS GROUP, LIMITED.**

By _____

Name: Jacqueline Calderin, solely in her capacity as
Title: Chapter 7 Trustee
Address: 501 Brickell Key DR, Suite 300, Miami, FL 33131
Email: jcal eccleagal.com
Tel: 305-722-2002
Fax: _____

In the presence of:

_____
Witness Name *(please print in Block Capitals)* Esbelia Jimenez

_____

**SIGNED** for and on behalf of
**FFP (BVI) Limited**

By

_____

In the presence of:

_____
Witness Name *(please print in Block Capitals)*

_____

**SCHEDULE**

**Part 1**

**The Services**

FFP shall provide the following services to the Company:

**1.   Registered Office**

The maintenance of the registered office of the Company at the offices of FFP including the display, at all times, of the name of the Company in satisfaction of the Company's obligations under the law.

**2.   Company Secretary**

The services of Company Secretary, where engaged.

**3.   Statutory Records and Registers**

The maintenance, at FFP's offices, of:-

3.1   the minute books of the Company containing the certificate of incorporation, a copy of the Articles, the undertaking as to tax issued by the Governor in Council (if any), the statutory registers maintained pursuant to paragraphs 3.2 to 3.4 below, copies of all annual returns and other filings made with the Registrar and all other documentation received at the registered office, from time to time, which would ordinarily be contained in the minute books including, without limitation, copies of all notices, minutes and resolutions of meetings of the Directors and/or Members, all letters of resignation from Directors or Officers, instruments of transfer, cancelled share certificates, powers of attorney and financial statements (if any);

3.2   the registers of Directors and Officers containing the name, address, date of appointment and date of resignation of each Director and Officer, respectively;

3.3   the register of Members containing the name and address of each Member, the number of Shares held, the amount paid in respect of each Share, any number allocated to each Share, the date of registration of the issue or transfer of each Share and the name of any applicable transferee; and

3.4   the register of mortgages and charges containing details of each mortgage and charge specifically affecting property of the Company including, without limitation, a short description of the property affected, the amount of the charge created and the name of the mortgagee or person entitled to such mortgage or charge.

3.5   Financial Records required to be kept pursuant to section 98 of the BCA (Financial Records) at the registered office address.

3.6   Such information as is necessary to be kept regarding the beneficial ownership of the Company, such details to be specified in legislation yet to be enacted in the British Virgin Islands.

## 4. Returns to the Registrar

Subject to receipt by FFP of all relevant documents, information and instructions, the submission to the Registrar of:-

4.1 all filings and returns required by the Law including, without limitation, such filings with respect to any amendment to the Articles (including any change to the Company's name, its authorised share capital or the location of its registered office), the appointment to or resignation/removal from office of any Director and/or Officer, any change in the particulars relating to any Director and/or Officer and the passing by the Members of any special resolution;

4.2 an annual return, in accordance with the Law, duly executed by or on behalf of the Company; and

4.3 such filing and/or registration fees as may be prescribed pursuant to the Law, from time to time, as applicable to the Company in respect of any filings or returns made or to be made including, without limitation, any annual registration fee payable to maintain the Company in good standing in the register of companies of the British Virgin Islands, provided that, without prejudice to any other term of this Agreement, FFP shall not be required to make any such payment out of its own funds and shall be entitled to require that sufficient funds be delivered to it by, or on behalf of, the Company to allow each such payment to be made.

## 5. Payments on Account

Any monies received by FFP on behalf of the Company may, at the sole discretion of FFP, be used firstly to settle outstanding fees payable to FFP or any affiliate of FFP prior to such amounts being used to settle fees with the Registrar.

## 6. Information

The provision, as soon as may reasonably be procured by FFP, from time to time, to the Company, its Directors, Officers and Members (as the case may be) of information in connection with all substantive matters necessary to maintain the Company in good standing pursuant to the Law.

## 7. Communications

FFP shall use all reasonable endeavours to forward to the Company all correspondence and other communications addressed to the Company by such method as it considers appropriate. FFP shall not be liable to the Company for the late receipt by the Company of any such correspondence and other communications which FFP receives on behalf of the Company from third parties and of details of all correspondence or other communications received at the registered office of the Company relating to the affairs of the Company.

## 8. Other Services

FFP shall provide the Additional Services (as defined in clause 2 of this Agreement) at the cost shown in part 2 of the Schedule.

**Part 2**

**FFP's Remuneration**

1. In consideration for the provision by FFP to the Company of the Services, the Company shall pay to FFP the following fees:-

   The Services                                                                 US$5,000 per year (or part
   year)

2. The first payment of the annual fee pursuant to paragraph 1 above shall be due and payable on the Commencement Date and shall be equal to the annual fee for the period from the Commencement Date to the end of the Accounting Period then in effect and each subsequent payment shall, subject as hereinafter provided, be due and payable in advance on 1 January of each year. The annual fee will include up to four hours of time charged in connection with the statutory duties of FFP in relation to the Services provided to the Company under this Agreement.

3. In the event that FFP is requested to provide Services for an existing British Virgin Islands registered entity, the following fees will be applied:-

   3.1  subject to the entity's circumstances fees will also be charged on a time spent basis at the hourly rate of US$500 per hour in addition to the administration fee charged above and are to be charged at FFP's discretion; and

4. In the event of FFP receiving instructions to provide Additional Services (as defined in clause 2 of this Agreement) to the Company, the Company agrees to pay to FFP such additional fees which shall be charged on a time spent basis at the hourly rate of US$500 per hour. Any additional fees calculated pursuant to this clause shall be payable by the Company in arrears at the end of the month in which they were incurred.

5. In the event of the termination of this Agreement, the annual fee paid or payable in respect of the Accounting Period in which termination occurs shall be pro-rated and FFP shall refund any sum due by it to the Company as soon as reasonably practicable after the date of termination. In addition, FFP in its sole discretion may charge the following fees where termination is not at the request of FFP:

   5.1  a service fee of US$1,000 in respect of dealing with the transfer of the registered office of the Company;

6. Unless otherwise agreed in writing between the Company and FFP, within 30 days of each anniversary of this Agreement the parties shall negotiate in good faith with a view to determining whether, and if so, by how much, the fees thereafter payable to FFP pursuant to this Agreement should be decreased or increased.

7. The Company shall reimburse FFP, on demand, in respect of all expenses and imposts whatsoever (including, without limitation, registration and filing fees, charges, taxes, duties and telephone, facsimile, E-mail, telex, postage, photocopying and stationery expenses) properly incurred by  FFP on behalf of the Company or otherwise in the performance of its obligations

under this Agreement and FFP shall be entitled to make provision in each invoice issued to the Company, from time to time, for such expenses and imposts.

8. In the event of the Company breaching its obligations pursuant to clause 3.3 of the Agreement, an additional fee of US$500 shall become immediately due and payable by the Company to FFP for processing and submitting to the Registrar the late payment of the annual registration fees provided always that the terms of this paragraph are without prejudice to clause 3.3.

9. FFP reserves the right to charge interest on a daily basis on any sums 30 days past due and payable by the Company at a rate not exceeding the rate charged from time to time by Fidelity Bank (Cayman) Limited or such other bank in the Cayman Islands as FFP may from time to time notify in writing to the Company on unauthorised overdrafts.

10. Notwithstanding any other provision of this Agreement, the obligations of the Company pursuant to clause 4 and the terms of this part 2 of the Schedule may be discharged or satisfied by any third party.

The fees set forth above shall be subject to an annual review and are revised annually on 15th January each year to reflect price index increases and market rate changes. FFP shall give the Company not less than 3 months' notice of its intention to increase fees.

# Exhibit "B"

16-10517-scc  Doc 406-5  Filed 08/30/17  Entered 08/30/17 15:55:21  Exhibit E - Motion to Approve Selection of Registered Agent  Pg 27 of 32

EXHIBIT "E"



# Invoice

Peak Hotels and Resorts Group, Limited
Nemours Chambers
Qwomar Complex 4/F
PO Box 3170
Road Town
Tortola VG1110
British Virigin Islands

**Invoice Date:**  20 July 2017
**Invoice #:  BVI-S215**

### Matter

Acting as Registered Agent as per Engagement Letter dated 20 July 2017               5,000.00

**Sub total:**                                                                        **US $     5,000.00**

#### Disbursements:

| | |
|---|---|
| Printing, phone, telecom costs | 150.00 |
| 2016 License Fee | 350.00 |
| 50% Penalty | 175.00 |
| 2017 License Fee | 350.00 |
| 10% Penalty | 35.00 |
| Restoration | 775.00 |
| Appointment of Registered Agent | 100.00 |
| Incoming Wire Transfer Fee | 15.00 |

**Sub total:**                                                                              1,950.00

**Total Amount Due:**                                                                 **US $     6,950.00**

---

**Contact:**
If you have any queries or would like to discuss your
account please contact:

Stephen Briscoe
FFP (BVI) Limited
2nd Floor TICO Building
Wickhams Cay II
Road Town, Tortola
British Virgin Islands, VG 1110

T: +1 284 494 2714
E: stephen.briscoe@ffp.vg

**Bank Details:**
Correspondent Bank:  Bank of New York, Mellon
Address:  225 Liberty Street, New York, NY 10286
SWIFT/BIC CODE: IRVTUS3N
ABA Routing #: 021000018
Account Number: 8901319104

Beneficiary Bank:  VP Bank (BVI) Ltd
Bank Address: 156 Main Street, Road Town, Tortola, BVI
SWIFT BIC CODE:   VPBVVGV1

Beneficiary Account name: FFP (BVI) Limited
Beneficiary Account: 15.203.597

**Invoice due upon presentation**

# Exhibit "C"



1 August 2017

EHRENSTEIN CHARBONNEAU CALDERIN
Attorneys at Law
501 Brickell Key Drive
Suite 300
Miami,
Florida 33131

Dear Sirs,

**Madison Director Services Limited**

We, Kalo, are a leading restructuring and insolvency practice in the Caribbean
with offices in the British Virgin Islands ("BVI") and Grand Cayman.  From these
locations, we cover the whole of the Caribbean, although the majority of our work
involves companies incorporated in these two jurisdictions.

BVI is a developed jurisdiction which regulates its restructuring and insolvency
practitioners and has a bespoke Insolvency Act 2003 (legislation) and Insolvency
Rules 2004 which support the primary legislation.  Our licensed insolvency
practitioners are Stuart Mackellar and Paul Pretlove who have a combined
experience in excess of 50 years and are regulated by the BVI Financial Services
Commission.  Bios are attached.  Both Stuart and Paul are also licensed insolvency
practitioners in the United Kingdom.  Our case load comprises liquidations
(bankruptcies in the USA), receiverships, examinerships, and other forms of
restructuring appointments permitted under our legislation.

Madison Director Services Limited ("Madison") is a wholly owned BVI subsidiary
of Kalo which is used to provide director services in connection with restructuring
and insolvency work with which Kalo's practitioners are involved.  Its directors are
Stuart Mackellar and Paul Pretlove.  BVI allows the appointment of companies as
directors of BVI incorporated companies like many other jurisdictions.  Madison's
Professional Liability Insurance and that of Kalo significantly exceeds the US$5m
minimum required in the BVI jurisdiction and is commensurate with the work
which we carry out.  The cover is provided by a syndicate of insurers headed by

PO Box 4571
Palm Grove House
Road Town, Tortola
British Virgin Islands
VG1110
1 284 393 9600

16-10517-scc  Doc 1406  Filed 08/30/17  Entered 08/30/17 15:55:01  Exhibit
Exhibit E - Motion to Approve Selection of Registered Agent    Pg 30 of 32

Case 17-10504-SJC    Doc 10    Filed 06/08/17    Page 155 of 181    Exhibit "E"
EXHIBIT "E"



**KALOADVISORS.COM**

AXIS Specialty Insurance, a well known insurer rated A+ by Standard & Poor and all our insurers meet our regulator's strict criteria.

Madison has been providing directorship services for some 12 years and its directors have substantial experience in the commercial, restructuring and insolvency areas.  Madison has been appointed as a director in excess of 150 occasions and it is currently appointed in 39 cases.  Madison is a director of companies operating in BVI, Brazil, USA, China, Hong Kong, Ukraine and Russia. Madison has been appointed at the behest of liquidators/bankruptcy trustees, financial institutions and family offices.

If you require any further information about Madison, please contact Stuart Mackellar on +1 284 346 4220 or email smackellar@kaloadvisors.com.

Yours faithfully

Stuart Mackellar
Managing Director



# STUART MACKELLAR
## MANAGING DIRECTOR

Stuart applies three decades of experience to realise value for entity stakeholders through recognized restructuring and insolvency processes, often overseeing complex and contentious cross-border cases. He manages organizations through difficult times by guiding financially stressed entities through reviews, restructurings, and formal insolvencies. An insolvency practitioner with experience on five continents and licensed in both the British Virgin Islands and the United Kingdom, Stuart has a Master of Arts in economics and accountancy from the University of Dundee and is a member of the Institute of Chartered Accountants of Scotland.

## RECENT MAJOR ENGAGEMENTS

» Serves as joint liquidator of the Kingate funds, two Madoff feeder funds that have sustained total losses in excess of $3.5 billion; currently involved in litigation, pursuing recoveries for stakeholders.

» Serves as joint liquidator of the Bank of Antigua, leading multiple cross-border asset recovery strategies.

» Serves as liquidator of many British Virgin Islands companies with interests in Hong Kong, China, and Singapore; currently seeking to recover millions of dollars for stakeholders.

» Serves as liquidator of British Virgin Islands companies with significant interests in Russia and the Commonwealth of Independent States; currently pursuing claims against individuals for misfeasance and recovering misappropriated assets for stakeholders.

» Successfully restructured a five-star resort in Anguilla as joint liquidator of Leeward Isles Resorts Limited; currently managing other hospitality and leisure assets across the Caribbean.

## STUART'S EXPERTISE INCLUDES: Business reviews, wind-down projects, contingency planning, cross-border restructuring, domestic and international insolvency appointments

Case 17-10516-JJC  Doc 406-5  Filed 08/30/17  Page 255 of 81
EXHIBIT "E"



# PAUL PRETLOVE
## MANAGING DIRECTOR

Paul applies his offshore asset-tracing and fraud investigation experience to assist stakeholders in achieving financial recovery through formal insolvency appointments and complex cross-border litigation. During more than 15 years in the insolvency profession in the British Virgin Islands, the Cayman Islands, and the United Kingdom, he has overseen the tracing and recovery of assets from the United States, Hong Kong, mainland China, Singapore, Panama, Russia, and Switzerland. Paul is a fellow of the Association of Chartered Certified Accountants and a licensed insolvency practitioner in both the British Virgin Islands and the United Kingdom.

## RECENT MAJOR ENGAGEMENTS

» Served as joint liquidator of two British Virgin Islands registered Madoff feeder funds, pursuing extensive and complex cross-border litigation on behalf of investors that suffered multibillion-dollar losses.

» Advised US court-appointed receivers of listed entities in securing and recovering assets held through companies in the British Virgin Islands, Hong Kong, and mainland China, effecting control through various directorship appointments.

» Served as liquidator of a British Virgin Islands company with significant interests in Russia; pursued funds misapplied through Swiss accounts as part of misfeasance claim.

» Led investigations into a transfer of proceeds of crime to Mauritius; bankruptcy of the convicted fraudster resulted in a multimillion-pound recovery for the bank.

» Liquidated the treasury function of a multinational milk and dairy producer with losses of more than $10 billion.

» Liquidated corporate offshore vehicle for hedge fund requiring litigation against fund manager; scheme of arrangement applied to alter the permissible method of distribution due to a disputed net asset value.

**PAUL'S EXPERTISE INCLUDES: Cross-border asset tracing and recovery, regulatory enforcement, commercial and shareholder disputes, contentious director and trustee appointments, solvent liquidations**

# Exhibit "F"

# NYS Department of State

## Division of Corporations

## Entity Information

The information contained in this database is current through August 8, 2017.

Selected Entity Name: AMAN RESORTS GROUP LIMITED
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | AMAN RESORTS GROUP LIMITED |
| **DOS ID #:** | 4842074 |
| **Initial DOS Filing Date:** | OCTOBER 29, 2015 |
| **County:** | NEW YORK |
| **Jurisdiction:** | BRITISH VIRGIN ISLANDS |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
AMAN RESORTS GROUP LIMITED
122 E. 42ND STREET, SUITE 2100
NEW YORK, NEW YORK, 10168

**Registered Agent**
NONE

This office does not record information regarding
the names and addresses of officers, shareholders
or directors of nonprofessional corporations except
the chief executive officer, if provided, which
would be listed above. Professional corporations
must include the name(s) and address(es) of the
initial officers, directors, and shareholders in the

initial certificate of incorporation, however this
information is not recorded and only available by
viewing the certificate.

**\*Stock Information**

|  # of Shares  |  Type of Stock  |  $ Value per Share  |
|---|---|---|
| | No Information Available | |

\*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| OCT 29, 2015 | Actual | AMAN RESORTS GROUP LIMITED |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in
New York State. The entity must use the fictitious name when conducting its activities or business in
New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results  New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS
Homepage  |  Contact Us

## DECLARATION OF MICHAEL FAY

I, Michael J. Fay QC, under penalty of perjury pursuant to 28 U.S.C. § 1746, make the following declaration:

Qualifications to provide Expert Evidence

1. I am a partner at Advocates BVI in the British Virgin Islands.

2. I am admitted as a Barrister, and as Queen's Counsel, in the British Virgin Islands. My qualifications to provide expert evidence on the laws of British Virgin Islands are as follows:

    a. I was educated at Nottingham Law School, England where I obtained an LLB in 1988.

    b. I then attended the Inns of Court School of Law in London where I obtained the degree of Utter Barrister in June 1989.

    c. I was called to the Bar in England & Wales in July 1989.

    d. I practiced as a barrister from chambers at 5 Fountain Court, Birmingham and 11 New Square, Lincoln's Inn from 1989 to 1996.

    e. In 1996, I relocated to the British Virgin Islands and was admitted as a Barrister of the Eastern Caribbean Court - British Virgin Islands.

    f. I spent approximately 2 years in the Turks & Caicos Islands during 1999 to 2001 - I was admitted as an Attorney in the Turks & Caicos Islands in 1999.

    g. I continued to practice British Virgin Islands law on a part time basis whilst I was in the Turks & Caicos Islands, and made several trips back to the British Virgin Islands to appear in the High Court, and the Court of Appeal, during that period.

    h. I returned to full time practice in the British Virgin Islands in 2001. I was the Vice-President of the BVI Bar Association from 2006 to 2008.

    i. I am also admitted as a Barrister of the Eastern Caribbean Court in Anguilla and in St. Kitts & Nevis - I occasionally appear in the Courts in Anguilla and in St. Kitts & Nevis as an advocate instructed by a firm practicing in the respective jurisdiction.

    j. In July 2011, I was appointed to act as a Deputy High Court Judge of the Eastern Caribbean Supreme Court. An appointment as a deputy High Court Judge is not a full-time appointment, but allows the Chief Justice to appoint lawyers to sit as a High Court Judge on a temporary part-time basis.

    k. On 18 March 2013, I was appointed as one of Her Majesty's Counsel Learned in the Law. This appointment is normally shortened to "Queen's Counsel" and the designation "QC" now appear after my name.

    l. In 2016, I was appointed as the Chairman of the British Virgin Islands Financial Services Appeal Board (the "FSAB"). The FSAB is a statutory body that hears appeals against decisions made by the Financial Services Commission in the British Virgin Islands.

    m. In November 2016, I was appointed to act as a Deputy Judge of the Court of Appeal of the Eastern Caribbean Supreme Court. As in the case of an appointment as a deputy High Court Judge, an appointment as a Deputy Judge of the Court of Appeal is not a full-time appointment, but allows the Chief Justice to appoint lawyers to sit as Judges in the Court of Appeal on a temporary part-time basis.

n.  My practice is predominantly corporate law, dispute resolution and trusts. I was a member of the BVI Government Company Law Review Committee.

Purpose of Declaration

3.  I make this Declaration regarding the service of the following documents (the "Documents") on Peak Hotels and Resorts Group Ltd ("PHRG"):

    a.  Form 5 Involuntary Petition

    b.  Summons to Debtor in Involuntary Case.

Confirmation of Service of Documents at Registered Office of PHRG

4.  I confirm that:

    a.  on 25 April 2017, I carried out a search of the public records of PHRG filed at the Registry of Corporate Affairs in the British Virgin Islands;

    b.  the search revealed that:

        i.   PHRG was incorporated in the British Virgin Islands pursuant to the provisions of the BVI Business Companies Act 2004 (the "BVIBC Act");

        ii.  PHRG was struck off the Register of Companies but had not yet been dissolved[1];

        iii. the Registered Office of PHRG is located at Nemours Chambers, Road Town, Tortola, British Virgin Islands;

        iv.  the Registered Office of PHRG is located at the offices of its Registered Agent.

    c.  at 3:30 pm on 25 April 2017, I served the Documents, under cover of a letter dated 25 April 2017 (the "Service Letter") on PHRG at its Registered Office.

    d.  The Registered Agent acknowledged receipt of the Service Letter and the Documents by signing and returning copies of each of them.

    e.  Copies of the Service Letter and the Documents are attached hereto marked MJF 1.

Expert Evidence as to Service of Documents

5.  The following provisions of the BVIBC Act are relevant:

    Section 101

    (1) *Service of a document may be effected on a company by addressing the document to the company and leaving it at, or sending it by a prescribed method to*

        (a) *the company's registered office; or*

        (b) *the office of the company's registered agent.*

    Section 215

    (1) *Where a company has been struck off the Register, the company and the directors, members and any liquidator or receiver, may not*

        (a) *commence legal proceedings, carry on any business or in any way deal with the assets of the company;*

        (b) *defend any legal proceedings, make any claim or claim any right for, or in the*

---

1 Section 216 of the BVIBC Act provides that where a company has been struck off continuously for a period of seven years, it is dissolved with effect from the last day of that seven-year period.

*name of, the company; or*

    *(c)  act in any way with respect to the affairs of the company.*

*(2) Notwithstanding subsection (1), where a company has been struck off the register, the company, or a director, member, liquidator or receiver thereof, may*

    *(a)  make application for restoration of the company to the Register;*

    *(b)  continue to defend proceedings that were commenced against the company prior to the date of the striking-off; and*

    *(c)  continue to carry on legal proceedings that were instituted on behalf of the company prior to the date of striking-off.*

*(3) The fact that a company is struck off the Register does not prevent*

    *(a)  the company from incurring liabilities, or*

    *(b)  any creditor from making a claim against the company and pursuing the claim through to judgement or execution,*

*and does not affect the liability of any of its members, directors, officers or agents.*

6.  I have assumed for the purposes of this Declaration that the proceedings in the United States Bankruptcy Court were commenced on 24 April 2017 when the 'Form 5 – Involuntary Petition' states that it was filed in the United States Bankruptcy Court.

7.  It follows that as a matter of the laws of the British Virgin Islands:

    a.  the service of the Service Letter and the Documents at the Registered Office of PHRG on 25 April 2017 was good service of the Documents on PHRG.

    b.  the fact that PHRG was struck of the Register of Companies, but not yet dissolved, on 24 April 2017 when the proceedings were commenced in the United States Bankruptcy Court:

        i.  does not mean that the service on PHRG was ineffective.  The service was effective on 25 April 2017 notwithstanding the prior striking off of PHRG;

        ii.  means that none of PHRG, its directors, members, nor any liquidator or receiver of PHRG, are permitted to defend the proceedings in the United States Bankruptcy Court without PHRG being successfully restored to the Register of Companies.

## 28 U.S.C. § 1746 DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 30 August 2017 in Massachusetts.

_____
Michael J. Fay QC

3

# MJF 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                                     CASE NO.: 17-15041 AJC
Peak Hotels and Resorts Group, Ltd.              Involuntary Chapter 7
Alleged Debtor,

_____/


## CERTIFICATION OF SERVICE


I, Joel M. Aresty, certify that on April 25, 2017 this summons and a copy of the involuntary petition was served on the alleged debtor Peak Hotels and Resorts Group, Ltd. In this case, by:

    Personal Service: By leaving the process with debtor or with an officer or agent of debtor at:
.

        Registry
        Peak Hotels and Resorts Group Ltd
        Company Number 1808788
        Nemours Chambers
        Road Town, Tortola
        British Virgin Islands


    Papers were hand delivered by Advocates BVI Ritter House 2/F P  PO Box 11 Road Town, Tortola British Virgin Islands. BVI Registered Agent of Peak Hotels and Resorts Group Ltd has acknowledged receipt on the face of the document; and a copy is attached.


    Under penalty of perjury, I declare that the foregoing is true and correct

                    JOEL M. ARESTY, P.A.
                    Attorneys for Petitioning Creditor
                    HIGH-DEF ZONE, INC.
                    309 1st Ave S
                    Tierra Verde, FL 33715
                    Fax: 1-305-723-7893
                    Phone: (305) 904-1903
                    Aresty@Mac.com
                    By:/s/ Joel M. Aresty, Esq
                    Fla. Bar No. 197483



**Advocates BVI**

**Ritter House 2/F – PO Box 11**

**Road Town, Tortola**

**British Virgin Islands**

Ref: MJF 2017/00021-0030

25 April 2017

Peak Hotels and Resorts Group Ltd
Company Number 1808788
Nemours Chambers
Road Town, Tortola
British Virgin Islands

BY HAND

Dear Sirs

Proceedings in the United States Bankruptcy Court

We enclose by way of service the following documents:

1. Form 5 Involuntary Petition

2. Summons to Debtor in Involuntary Case

Please acknowledge receipt by signing and returning the attached copy of this letter.

Yours faithfully

Advocates BVI

*Received by*
*Laetitia Martin*
*Intertrust*
*3:30*
*25/Apr/2017*

B5 (Official Form 5) (12/07)

## FORM 5. INVOLUNTARY PETITION

| United States Bankruptcy Court<br><br>Southern District of Florida | INVOLUNTARY<br>PETITION |
|---|---|

| IN RE (Name of Debtor - If Individual: Last, First, Middle)<br><br>**Peak Hotels and Resorts Group, Ltd** | ALL OTHER NAMES used by debtor in the last 8 years<br>(Include married, maiden, and trade names.) |
|---|---|
| Last four digits of Social-Security or other Individual's Tax-ID No./Complete EIN<br>(If more than one, state all.) | |

| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>**1500 Bay Road 1582S<br>Miami Beach, FL 33139** | MAILING ADDRESS OF DEBTOR (If different from street address)<br><br>**Registrar Company Number 1808788<br>Nemours Chambers<br>Road Town, Tortola<br>BRITISH VIRGIN ISLANDS** |
|---|---|
| COUNTY OF RESIDENCE OR<br>PRINCIPAL PLACE OF BUSINESS<br>**Miami-Dade** | |

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses)

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED
■ Chapter 7    ☐ Chapter 11

### INFORMATION REGARDING DEBTOR (Check applicable boxes)

**Nature of Debts**
(Check one box)
Petitioners believe:
☐ Debts are primarily consumer debts
■ Debts are primarily business debts

**Type of Debtor**
(Form of Organization)
☐ Individual (Includes Joint Debtor)
■ Corporation (Includes LLC and LLP)
☐ Partnership
☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

_____

**Nature of Business** (Check one box)
☐ Health Care Business
☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51)(B)
☐ Railroad
☐ Stockbroker
☐ Commodity Broker
☐ Clearing Bank
■ Other

| **VENUE** | **FILING FEE** (Check one box) |
|---|---|
| ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐ A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | ■ Full Filing Fee attached<br><br>☐ Petitioner is a child suport creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached.<br>*[If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.]* |

### PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER
### OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| | | |
| Relationship | District | Judge |
| | | |

| **ALLEGATIONS**<br>(Check applicable boxes) | COURT USE ONLY |
|---|---|

1. ■ Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).

2. ■ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.

3.a. ■ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;

or

3.b. ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

Name of Debtor    **Peak Hotels and Resorts Group, Ltd**

B5 (Official Form 5) (12/07) - Page 2                                    Case No.

## TRANSFER OF CLAIM

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents evidencing the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| X **/s/ Balji Minhas** | X **/s/ Joel M. Aresty**                        April 24, 2017 |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                              Date |
| **High-Def Zone, Inc.**                April 24, 2017 | **Joel M. Aresty** |
| Name of Petitioner                    Date Signed | Name of Attorney Firm (If any) |
| Name & Mailing          **Balji Minhas** | **309 1st Ave S** |
| Address of Individual   **215 McNair Circle,** | **Saint Petersburg, FL 33715** |
| Signing in Representative **Northampton, PA 18067** | Address |
| Capacity | Telephone No.    **305-904-1903** |

X _____ (signature) _____

**Balji Minhas**
_____
Name of Petitioner                         Date Signed
**04-24-2017**

Name & Mailing
Address of Individual
Signing in Representative
Capacity

X _____
Signature of Attorney                      Date

_____
Name of Attorney Firm (If any)

_____
Address
Telephone No. _____

X _____
Signature of Petitioner or Representative (State title)

_____
Name of Petitioner                    Date Signed

Name & Mailing
Address of Individual
Signing in Representative
Capacity

X _____
Signature of Attorney                      Date

_____
Name of Attorney Firm (If any)

_____
Address
Telephone No. _____

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| **High-Def Zone, Inc.**<br>**215 McNair Circle,**<br>**Northampton, PA 18067** | **business debts** | **150,029.76** |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims<br>**150,029.76** |

_____0_____  continuation sheets attached

16-10517-sCaseD1oc1150741-AJCFileddD8/33/17FileEnt0e4/r2e5/08/3107 a1g5e 15:5724 Exhibit
Service letter and documents served    Pg 6 of 7
MJF 1



Form CGFI5  (10/10/14)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 17–15041–AJC**

**Chapter: 7**

**In re:** *(Debtor(s) name(s) used by the debtor(s) in the last 8 years, including married, maiden, and trade)*

Peak Hotels and Resorts Group, Ltd
Registrar Company Number 1808788
Nemours Chambers
Road Town, Tortola
BRITISH VIRGIN ISLANDS,

## SUMMONS TO DEBTOR IN INVOLUNTARY CASE

**To the above named debtor:**

A petition under title 11, United States Code was filed against you in this bankruptcy court on **April 24, 2017**, requesting an order for relief under chapter 7 of the Bankruptcy Code (title 11 of the United States Code).

**YOU ARE SUMMONED** and required to file with the clerk of the bankruptcy court a motion or answer to the petition within 21 days after the service of this summons. A motion to convert by the debtor in an involuntary chapter 7 proceeding shall be deemed a consent to entry of an order for relief under the chapter to which the case is being converted (Local Rule 1013–1(B)). A copy of the petition is attached.

Address of the clerk:
**US Bankruptcy Court**
**301 North Miami Avenue, Room 150**
**Miami, FL 33128**

At the same time, you must also serve a copy of your motion or answer upon the petitioner's attorney.

Name and Address of Petitioner's Attorney:
Joel M. Aresty
309 1st Ave S
Saint Petersburg, FL 33715

If you make a motion, your time to answer is governed by Federal Rules of Bankruptcy Procedure 1011(c).

If you fail to respond to this summons, the order for relief will be entered.

**Dated: 4/25/17**

**CLERK OF COURT**
By: Nilda Catala
Deputy Clerk

*Page 1 of 2*

# CERTIFICATION OF SERVICE

I, _____ (name), certify that on _____ (date), I served
this summons and a copy of the involuntary petition on _____ (name), the
debtor in this case, by:

☐ Mail Service: Regular, first class United States mail, postage fully pre–paid, addressed to:

☐ Personal Service: By leaving the process with debtor or with an officer or agent of debtor at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified
mail addressed to the following officer of the debtor at:

☐ Publication: The debtor was served as follows: [Describe briefly]

☐ State Law: The debtor was served pursuant to the laws of the State of
_____, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that
I am, and at all times during the service of process was, not less than 18 years of age and not a party to
the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date: _____    Signature: _____

| Print Name: | | |
|---|---|---|
| Address: | | |
| City: | State: | Zip: |

*Page 2 of 2*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.    17-15041-AJC

In re:                                                                    CHAPTER:    7
Peak Hotels and Resorts
Group Ltd (Debtor)

## **AFFIDAVIT**

Before me personally appeared RUSSELL B. ADLER, who after first being placed under

oath, swears, or affirms as follows:

1.    My name and firm address are:

    a.  Name:        RUSSELL B. ADLER

    b.  Address:      8201 Peters Road Suite 1000 Plantation FL 33324

    c.  Law Firm:    Law Offices of Russell B Adler, PA

2.    I am an attorney licensed to practice law in Florida since 1986 and the
President of the Law Offices of Russell B Adler, PA.

3.    I am a member of the Federal and Bankruptcy Bars in and for the Southern
District of Florida.

4.    I have personal knowledge as to the facts and circumstances stated herein.

5.    That although I have a law degree, I spend a majority of my time operating
private or public business, as well as financial consulting for other businesses.

6.    That I know Mr. Omar Amanat and was paid a retainer/fee; by Mr. Amanat
for representation of Peak Hotels and Resorts Group, LTD., (hereinafter
"Peak") in January 2014.

1

7.  That in 2014, Mr. Amanat requested I review a real-estate transaction for Peak, including a contract for the purchase of some audio/visual equipment from High Def Zone.

8.  That simultaneous with this engagement, I was also working for a family office on Miami Beach, evaluating various technologies for investment.

9.  That shorty after my meeting with Mr. Amanat, my time requirements at family office significantly increased, as we acquired a set of European patents.

10. That the aforementioned patent acquisition required travel to Scotland and England, as part of the due diligence before investing in the project.

11. That as a result of my travels and prior commitments, I was unable to timely reconnect with Mr. Amanat and continue my representation of Peak.

12. Thereby I ended up retaining a portion of Peak's funds which were not expended during my representation.

13. That several months ago, Mr. Amanat made a specific inquiry, in reference to my representation back in 2014, of Peak.

14. Thereinafter a review of my records indicated my firm had not performed any additional work for Peak, after the initial consultation.

15. That based upon my aforementioned discontinuation of my representation, I still retained an unused portion of Peak's retainer.

16. That Mr. Amanat requested I refund the balance of Peaks retainer.

17. Thereby I had a check issued and sent to the Trustee.

*AFFIANT FURTHER SAYETH NOT*

X

**RUSSELL B. ADLER**
*Affiant/Defendant*

Sworn to (or affirmed) and subscribed before me,
the undersigned authority, on ___August 28, 2017___.

Personally known _____

Produced identification ___FL DL___

Type of ID produced ___DriverLicense___

/S/ _____

Notary Public, Deputy Clerk, or other authority.

NAME: ___Angela Paulino___

Commission No. ___FF081505___

My Commission Expires: ___1-19-2018___

ANGELA PAULINO
Notary Public - State of Florida
My Comm. Expires Jan 19, 2018
Commission # FF 081505

3